UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO, an individual,<br><br>                                    Plaintiff,<br><br>v.<br><br>DANIEL JAFFURS, et. al. ,<br><br>                                    Defendants. | Case No.:  16cv1709-JAH (NLS)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS [Doc. Nos. 32, 37]** |

**INTRODUCTION**

Plaintiff, Jason Toranto, originally filed a complaint on July 1, 2016, and filed a First Amended complaint ("FAC") on August 15, 2016, for conspiracy in restraint of trade (claim 1), monopoly (claim 2), bad faith professional review (claim 3), retaliation (claims 4 and 5), defamation (claim 6), violation of the Labor Code (claim 7), tortious interference with prospective economic advantage (claim 8), and unfair competition (claim 9).  He names Daniel Jaffurs, Amanda Gosman, The Regents of the University of California, Rady Children's Hospital-San Diego, Rady Children's Specialists, Rady Children's Medical Staff, Children's Hospital of Orange County ("CHOC") and CHOC Medical Staff as defendants. Plaintiff alleges Defendants conspired to engage in and engaged in illegal,

retaliatory, defamatory and anti-competitive conduct against Plaintiff, a pediatric plastic and craniofacial surgeon. See Doc. No. 21.

Defendant CHOC and CHOC Medial Staff ("CHOC Defendants") filed an answer to the FAC on August 31, 2016. See Doc. 29. Rady Children's Hospital-San Diego, Rady Children's Specialist of San Diego, Rady Children's Medical Staff and Gosman ("Rady Defendants") filed a motion to dismiss the FAC on September 1, 2016. See Doc. No. 32. On September 13, 2016, The Regents filed a motion to dismiss the FAC and a joinder in the co-defendants' motions to dismiss, and Jaffurs filed a motion to dismiss the FAC. See Doc. Nos. 36, 37. On October 14, 2016, the Rady Defendants and Defendant Jaffurs filed separate motions to strike ("anti-SLAPP motions"). See Doc. No. 41, 42. Thereafter, Defendant The Regents filed a notice of joinder in the motions to strike and Defendant Jaffurs filed a notice of joinder in the Rady Defendants' motion to dismiss. See Doc. Nos. 43, 45. On October 24, 2016, Plaintiff voluntarily dismissed The Regents from the action without prejudice. See Doc. No. 48.

On October 28, 2016, Plaintiff filed an application seeking leave to conduct discovery relevant to Defendants' anti-SLAPP motions and to continue the hearing and dates to file his opposition. See Doc. No. 49. In light of the application, the Court vacated the hearing date and briefing schedule. See Doc. No. 51. Plaintiff's application for leave to conduct discovery was referred to the Honorable Nita L. Stormes, United States Magistrate Judge.

Plaintiff filed a response to Defendant Jaffurs' motion to dismiss and the Rady Defendants' motion to dismiss on November 2, 2016. See Doc. Nos. 58, 59. Defendants filed replies in support of their motions. See Doc. No. 61, 62. Thereafter, the Court vacated the hearing date on the motions to dismiss. See Doc. No. 63.

On November 23, 2016, Judge Stormes issued an order denying Plaintiff's request not to stay general discovery and granting his request to conduct limited, specific discovery with respect to the claims raised in the anti-SLAPP motions. See Doc. No. 64. On January 23, 2017, Defendant filed an application seeking an order setting the motions to dismiss

2

and anti-SLAPP motions for hearing which Plaintiff opposed. <u>See</u> Doc. Nos. 65, 66. The Court denied the motion. <u>See</u> Doc. No. 67.

On February 3, 2017, Judge Stormes held a status conference regarding discovery and issued an order, following the conference, lifting the stay on discovery and setting a scheduling order for discovery relating to the anti-SLAPP motions. <u>See</u> Doc. No. 71. Plaintiff filed a motion to compel which Judge Stormes granted. <u>See</u> Doc. No. Judge Stormes also set a briefing schedule on the pending motions to dismiss and anti-SLAPP motions. <u>See</u> Doc. No. 77. Defendant Jaffurs and the Rady Defendants objected to Judge Stormes' order granting the motion to compel and requested this Court reverse Judge Stormes' order. <u>See</u> Doc. Nos. 81. The parties briefed the issue upon order of the Court. <u>See</u> Doc. Nos. 84, 85, 86, 87.

On May 2, 2017, Plaintiff filed an application seeking an order vacating the briefing schedule and hearing date on the anti-SLAPP motions pending the resolution of Defendant's objections. <u>See</u> Doc. No. 88. The Rady Defendants opposed the application. <u>See</u> Doc. No. 89. This Court granted Plaintiff's application and vacated the briefing schedule and hearing date for Defendants' anti-SLAPP motions. Thereafter, the Court vacated the hearing on Defendants' motion to dismiss and took the motions under submission without oral argument. <u>See</u> Doc. No. 97.

## LEGAL STANDARD

The Rady Defendants and Defendant Jaffurs seek dismissal of the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) tests the sufficiency of the complaint. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984); <u>see</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. <u>Robertson</u>, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations,"

3

he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

//

//

4

**I. Rady Defendants' Motion to Dismiss**

Defendants move to dismiss all causes of action asserted against them, namely, the first, second, third, sixth, eighth and ninth claims. Defendants argue (A) the state law causes of action are premature, (B) Plaintiff fails to allege sufficient facts to support a claim for conspiracy in restraint of trade, (C) Plaintiff fails to allege sufficient facts to support a claim for monopoly, (D) the cause of action for bad faith professional review is not viable, (E) Plaintiff fails to allege sufficient facts to support a claim for defamation, (F) Plaintiff fails to allege sufficient facts to support a claim for tortious interference with prospective economic relations, and (G) Plaintiff fails to allege sufficient facts to support a claim for unfair competition.

**A. Premature**

Doctors must exhaust available administrative remedies and succeed in setting aside the decision denying or withdrawing privileges in a *mandamus* action prior to initiating suit against the hospital and individuals involved in the decision. See Mir v. Little Co. of Mary Hosp., 844 F.2d 646 (9th Cir. 1988); Westlake Community Hospital v. Superior Court of Los Angeles County, 17 Cal.3d 465 (1976).

Defendants argue Plaintiff's state law causes of action are premature because he failed to exhaust administrative remedies. Defendants contend Plaintiff only alleges his application for privileges has been presumptively denied. They maintain, if the application is ultimately denied, Plaintiff must seek relief through an administrative hearing, and after the administrative process is completed, he must successfully have the decision set aside in a *mandamus* action before bringing a tort action for damages. Because he does not allege any facts to show a final decision was reached or that he complied with the administrative process, they argue, the state law causes of action, bad faith professional review, defamation, tortious interference with prospective economic relations and unfair competition, are premature and must be dismissed.

In opposition, Plaintiff contends he is not required to exhaust his administrative remedies because he was not provided a reason for his rejection or an opportunity to respond and, thereby, was denied basic procedural protections to which he was entitled when his application was presumptively denied. Even if he were required to exhaust administrative remedies, Plaintiff argues, he is excused from doing so because any pursuit would be inadequate and futile. He maintains, at the time his opposition was filed, over a year had passed since his application and nine months since it was presumptively denied, and he has received no adequate explanation for the presumptive denial and no opportunity to respond. Any further attempts to exhaust the remedies would, therefore, be futile. Additionally, he maintains pursuit of administrative remedies would result in irreparable harm because complex pediatric craniofacial plastic surgery procedures must be performed regularly for a surgeon to maintain qualifications to perform them, and Defendants' administrative process has harmed the health and safety of patients with longer wait times and higher costs.

In reply, Defendants argue Plaintiff's claims do not fall under any exception to the exhaustion requirement. Defendants contend Plaintiff cannot allege his application was denied because his application is still pending. They maintain the presumptive denial demonstrates the peer review process has begun and he has not been denied a fair procedure. Even if Plaintiff could allege presumptive denial entitled him to relief, he is still required to bring a writ of mandate to challenge the decision. Additionally, Defendants argue the administrative remedies available are not inadequate or futile because he has not received a final disposition and could possibly receive privileges. They also argue he has adequate remedies after a decision is made and he could provide services to children at other hospitals at which he has privileges.

Plaintiff alleges he received a call from the chair of Rady Children's department of surgery, and was told his application for admitting privileges would presumptively be denied and Rady Children's failed to grant him an interview or hearing despite repeated requests. FAC ¶¶ 33, 87, 88, 94. He further alleges he was advised he would be

6

presumptively reported to the California Medical Board if he did not withdraw his application. Id. ¶ 87. Plaintiff did not withdraw his application and, instead, supplemented it in March and July 2016. Id. ¶¶ 90, 91, 93. Defendants contends the peer review process is ongoing and, therefore, Plaintiff has failed to exhaust his administrative remedies, and, can only do so when he receives a denial and is successful in a *mandamus* action. Plaintiff maintains he is not required to exhaust prior to bringing a tort action pursuant to the exception in Westlake. The court in Westlake held that a hospital that denies a doctor privileges without basic procedural protection to which he is entitled can be immediately sued in a tort action. 17 Cal.3d at 478. Plaintiff's allegations that Defendants denied him a hearing or interview after being informed his application was "presumptively denied" and threats to report him to the Medical Board if he does not withdraw his application demonstrate he was denied basic procedural protections. As such, Plaintiff is not required to exhaust the administrative remedies prior to filing suit. Additionally, the court in Westlake specifically rejected the same argument raised by Defendants here, that, under these circumstances, Plaintiff must still obtain *mandamus* relief prior to filing suit. While the court determined that a doctor must initially succeed in a *mandamus* action when a hospital excludes or dismisses a doctor pursuant to quasi-judicial proceedings, it found the hospital's conduct in dismissing the doctor without basic procedural protections was not "undertaken pursuant to a quasi-judicial proceeding." Id.

This Court finds Plaintiff's action is not barred for failure to exhaust administrative remedies. As such, Defendants' motion to dismiss the state law claims as premature is denied.

**B. Conspiracy in Restraint of Trade**

Plaintiff's first claim for relief asserts a violation of Section 1 of the Sherman Act. Section 1 prohibits "[e]very contract, combination. . .or conspiracy, in restraint of trade or commerce among the several States, or with foreign nationals." 15 U.S.C. § 1. To state a claim under Section 1 of the Sherman Act, a plaintiff must allege "not just ultimate facts but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy

7

among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." <u>Kendall v. Visa U.S.A., Inc.</u>, 518 F.3d 1042, 1047 (9th Cir. 2008).

Defendants argue Plaintiff fails to allege a conspiracy in restraint of trade because the FAC does not properly allege a conspiracy or agreement, Plaintiff fails to allege facts to support an unreasonable restraint of trade, they have the unilateral right to deny Plaintiff privileges and Plaintiff fails to state facts to support an antitrust injury.

**1. Conspiracy**

Defendants argue Plaintiff fails to properly allege a conspiracy because Section 1 of the Sherman Act requires a contract, combination or conspiracy between two or more legally distinct persons. They maintain the relationships between the Rady Defendants demonstrate they are a single entity, and, thus, legally incapable of concerted action. They further maintain the allegations of the FAC make clear the Rady Defendants acted as agents of each other. Defendants further argue Dr. Gosman cannot conspire with the Rady Defendants because she is an employee of Rady Children's Specialists of San Diego and an employee cannot conspire with her employer. They also contend the FAC alleges she and the Rady Defendants acted as agents of each other.

Additionally, Defendants argue the FAC contains no allegations that support any specific discussion between Gosman and any other person related to the Rady Defendants, and there are no specific facts supporting the content of the conspiratorial exchanges between Defendants Gosman and Jaffurs.

In opposition, Plaintiff argues he sufficiently alleges a conspiracy. Plaintiff contends the FAC makes clear that each of the Rady entities is a separate and distinct corporate entity and the Rady foundation is Gosman's only employer. Plaintiff further argues the issue of whether the various Rady Defendants are a single entity is fact specific and cannot be decided in a Rule 12(b)(6) motion. Even if the Rady Defendants and Gosman cannot conspire among themselves, Plaintiff contends the FAC clearly alleges the conspirators

8

include Jaffurs, who is not affiliated with the Rady Defendants. Plaintiff maintains the FAC contains numerous specific facts creating a reasonable inference that Defendants engaged in a conspiracy to deny him privileges at Rady Children's.

In the FAC, Plaintiff alleges Defendant Jaffurs, the chief of plastic surgery of the CHOC medical staff and an employee of University of California, Irvine ("UCI"), made false and defamatory statements about Plaintiff to the Rady Defendants and in concert with Gosman, "who was eager to conspire. . .because in 2015 she became the sole pediatric craniofacial plastic surgeon at Rady Children's" and she viewed Plaintiff as a competitive threat. FAC ¶¶ 5, 38, 39. He also alleges Gosman is a surgeon and chief of plastic surgery at Rady Children's Hospital, and chief of the Rady Medical Staff and an employee of Rady Children's Specialists. Id. ¶¶ 40-42. Additionally, Plaintiff alleges Defendant Rady Children's Hospital is a California corporation that grants privileges for the performance of medical services through the Rady Children's Medical Staff, a separate unincorporated association composed of physicians and other healthcare providers whom provide medical services to Rady Children's Hospital; Rady Children's Specialists is an unincorporated medical practice foundation closely affiliated with Rady Children's and UCSD who jointly employ the majority of the physicians who have privileges at Rady Children's Hospital; The Regents is a California corporation that governs the University of California systems and jointly with Rady Children's Specialists employs the majority of physicians who have admitting privileges at Rady Children's Hospital. Id. ¶¶ 11-15, 40. The FAC also alleges "[a]ll of the Rady Children's Defendants acted as the agent of each other. Id. ¶ 43.

Additionally, Plaintiff alleges Defendant Jaffurs "commenced an outrageous and vicious campaign against [Plaintiff]" when Plaintiff sought employment at CHOC, including making false and defamatory statements to multiple persons, telling several physicians Plaintiff refused to accept Hispanic and low-income patients, taunting Plaintiff with hostile emails, attempting to prohibit Plaintiff from seeking patients at outpatient clinics, and entering an operating room several times to harass Plaintiff as Plaintiff was performing surgeries. Id. ¶ 70. The FAC also alleges Jaffurs wrote to Plaintiff telling him

Plaintiff was not hired by CHOC at Jaffurs' request. Id. ¶ 72. Further, Plaintiff alleges Jaffurs and Gosman made contact, and combined and conspired to prevent him from obtaining privileges at Rady Children's. Id. ¶ 80. The FAC specifically alleges Gosman improperly shared information contained in Plaintiff's confidential application with Jaffurs including the names of physicians whom Plaintiff listed as references and Jaffurs submitted a letter to Rady Children's that disparaged and attacked those physicians. Id. ¶ 82. The FAC also alleges Gosman used her influence to prevent Plaintiff from receiving fair consideration, and both Gosman and Jaffurs made defamatory statements with the intent to professionally harm Plaintiff and prevent him from obtaining employment and privileges. Id. ¶¶ 83, 84, 85.

While the allegations surrounding the relationships between the various Rady Defendants and Gosman suggest an agency relationship which supports Defendants arguments of a single entity, considering the facts in the light most favorable to Plaintiff, Plaintiff clearly alleges an agreement and conspiracy between Gosman and Jaffurs, two distinct individuals. Accordingly, Plaintiff sufficiently alleges a conspiracy to support his claim for conspiracy in restraint of trade claim.

**2. Unreasonable Restraint of Trade**

Section 1 of the Sherman Act prohibits agreements that unreasonably restrain trade. Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc., 875 F/2d 13696, 1373 (9th Cir. 1989). Reasonableness is evaluated under either *per se* analysis or the rule of reason. Id. The *per se* rule applies to a practice that "facially appears to be one that would always or almost always tend to restrict competition and decrease output." National Collegiate Athletic Association v. Board of Regents of Univ. of Oklahoma, 468 U.S. 85, 100 (1984). Restraint is presumed unreasonable for practices subject to the *per se* rule. Id. Other practices are subject to a rule of reason analysis which requires injury to competition in the relevant market. Alliance Shippers, Inc. v. Southern Pacific Trasp. Co., 858 F.2d 567, 570 (9th Cir. 1988).

Defendants contend there is no plainly anti-competitive agreement restraining trade here, so Plaintiff is required, under the rule of reason, to demonstrate anti-competitive harms of the alleged agreement do not outweigh the pro-competitive benefits. Defendant maintains Plaintiff attempts to circumvent this burden by alleging Defendants engaged in a conspiracy to exclude him from Rady Children's Hospital. Even if a conspiracy existed, they argue, it does not restrain trade and Plaintiff's narrow identification of competition and conclusory allegations of wait times and costs leave out other competitive markets in Southern California. They contend Plaintiff fails to allege any agreement that would restrain trade of pediatric craniofacial plastic surgery in Southern California.

Citing Summit Health, Ltd v. Pinhas, 500 U.S. 322 (1991), Plaintiff maintains a conspiracy to exclude a physician from a hospital through misuse of the peer review process is an illegal agreement in restraint of trade. Plaintiff further contends the definition of the relevant market is a question of fact that should not be decided in a 12(b)(6) motion. Plaintiff contends the geographic market defined in the FAC, which spans two large Counties is not facially unsustainable, particularly when the Ninth Circuit has recognized far smaller relevant geographic markets.

To the extent Plaintiff asserts Summit Health holds the misuse of the peer process is subject to the per se rule, the Court disagrees. The Court in Summit Health addressed whether a claim alleging a conspiracy among members of a peer review committee to abuse the process and deny the plaintiff access to the relevant market has a sufficient nexus to interstate commerce to support federal jurisdiction. 500 U.S. at 333. Plaintiff's allegations do not suggest Defendants engaged in "manifestly anticompetive" conduct to support a per se analysis. Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877, 886 (2007). As such, the rule of reason analysis is appropriate and requires Plaintiff to allege the "relevant market." See Newcal Industries, Inc. v. Ikon Office Solution, 513 F.3d 1038, 1044 (9th Cir. 2008). The "relevant market" need not be alleged with specificity and will survive a 12(b)(6) motion to dismiss unless it is facially unsustainable. Id. at 1045.

In the FAC, Plaintiff alleges the anti-competitive conduct has harmed patients in the relevant market and the plastic surgery department at Rady Children's Hospital is among the worse for patient wait times. FAC ¶ 8, 29. He further alleges presumptively denying him privileges wrongly deprives children, babies and their families of physician choice and also prolongs their waits in San Diego and Imperial Counties. Id. Additionally, he asserts Defendants conspired to deny him entry into the market for pediatric craniofacial plastic surgery services in San Diego and Imperial Counties, and, are preventing highly complex pediatric craniofacial plastic surgery from being available to all children in San Diego and Imperial Counties. Id. ¶¶ 100, 102. He alleges his skills and techniques could reduce post-operative stays, and thereby reduce medical costs. Id. ¶ 101.

The Court finds no facial or other defect in Plaintiff's relevant market. Therefore, the FAC's allegations surrounding the relevant market survives the motion to dismiss.

### 3. Unilateral Right to Deny Plaintiff Privileges

Citing Leegin, Defendants argue they have the unilateral right to decide with whom to do business, and the terms and conditions of its business arrangements without violating Section 1.

In opposition, Plaintiff argues Defendants do not have a right to unilaterally deny him privileges. He contends the case cited by Defendants involved retail pricing policies by manufacturers for their retailers. Relying on Sadeghi v. Sharp Memorial Medical Center Chula Vista, 221 Cal.App.4th 598 (2013), Plaintiff maintains the peer review process for physicians seeking admitting privileges exists to protect the health and welfare of the people of California and competent practitioners from being barred for arbitrary or discriminatory reasons, and the unwarranted denial of privileges denies a physician a property interest connected to his livelihood.

The only case cited by Defendants in support of their contention addresses manufacturer's ability to set suggested resale prices and to refuse to deal with retailers that do not follow those prices. They cite to no case suggesting a plaintiff may not assert a claim against a defendant for the allegedly arbitrary denial of privileges that results in a

restraint of trade.  Accordingly, Defendant's motion to dismiss based upon its unilateral power to deny privileges is denied.

### 4. Antitrust Injury

To state a claim under section 1 of the Sherman Act, a plaintiff must allege facts showing he was "harmed by the defendant's anti-competitive contract, combination or conspiracy, and that this harm flowed from an 'anti-competitive aspect of the practice under scrutiny.'"  Brantley v. NBC Universal, Inc., 675 F.3d 1192, 1197 (9th Cir. 2012) (quoting Atlantic Richfield Company v. USA Petroleum Co., 495 U.S. 328, 334 (1990).

Defendants contend because Plaintiff fails to plead sufficient facts to support a plausible claim under Section 1, none of Plaintiff's alleged injuries flow from Section 1.

Plaintiff argues the facts in the FAC sufficiently demonstrate an antrust injury.  He maintains he alleges Defendants' unlawful conduct caused him to be denied procedurally fair consideration of his application for admitting privileges, thus causing him to be restrained from practicing his medical specialty anywhere in San Diego or Imperial Counties.  Additionally, Plaintiff maintains he also alleges Defendants' exclusionary conduct resulted in longer patient wait times and higher costs, and prevented certain "highly complex pediatric craniofacial surgery procedures from being available at all" in San Diego and Imperial Counties because Plaintiff is an expert in certain procedures that Gosman does not perform.  Pla's Opp. at 13 (citing FAC ¶ 102).

In reply, Defendants argue Plaintiff presents no facts to support his own injury let alone an injury to competition.  They contend he cites no case law to support the position that staffing decisions affecting a single hospital can result in antitrust injury.  Instead, they contend Plaintiff merely states excluding him from the market has prevented highly complex pediatric craniofacial surgery procedures from being available at all and Defendants' conduct has resulted in longer patient wait times and higher costs.  They maintain the allegations are conclusory, and only opinions of Plaintiff.  They further maintain the allegations are based upon Plaintiff's incorrect description of the relevant market.  Defendants further argue the FAC contains no allegations that other competing

hospitals in the alleged geographic market have been prevented from establishing facilities to serve patients.

In the FAC, Plaintiff alleges Defendants Jaffurs and Gosman conspired to prevent him from obtaining privileges to suppress competition to Gosman's professional and economic benefit. FAC ¶ 96. He further alleges the Rady Defendants agreed to support Defendant Gosman because the revenue Defendant Gosman would otherwise generate for them would be diverted to Plaintiff if he were granted privileges. Id. ¶ 97. He further alleges, as a result of the conspiracy, "the public has been deprived of free and open competition in pediatric craniofacial plastic surgery services at Rady Children's and in San Diego and Imperial Counties, and there are longer patient wait times and longer post-operative patient hospital stays and higher payer costs. Id. ¶¶ 100, 101. Plaintiff also alleges his skills and techniques as a pediatric craniofacial plastic surgeon could potentially reduce post-operative length of hospital stays, resulting in reduced medical costs. Id. ¶ 102. Additionally, Plaintiff alleges the conspiracy prevents highly complex pediatric craniofacial plastic surgery procedures from being available to all children of San Diego and Imperial Counties. Id. ¶ 102.

Contrary to Defendants' contention, Plaintiff does more than merely recite bare legal conclusions. He includes factual allegations demonstrating injury to competition sufficient to "raise a reasonable expectation that discovery will reveal evidence of an injury to competition." Brantley, 675 F.3d at 1198 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556). Plaintiff sufficiently alleges antitrust injury.

**C. Monopoly**

Plaintiff seeks relief for violation of Section 2 of the Sherman Act in his second claim for relief. To state a claim for monopolization in violation of Section 2 of the Sherman Act, a plaintiff must allege facts showing the defendants "(1) possessed monopoly power in the relevant market, (2) willfully acquired or maintained that power through exclusionary conduct and (3) caused antitrust injury." MetroNet Services Corp. v. Quest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004).

14

Defendants argue Plaintiff fails to state a claim for monopolization because he fails to allege a relevant market, monopoly power, exclusionary conduct and facts to support antitrust injury.

**1. Relevant Market**

Claims under Section 2 of the Sherman Act require a definition of the relevant market. Thurman Industries, Inc. v. Pay'N Pak Stores, Inc., 875 F.2d 1369, 1373 (9th Cir. 1989). Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim. Tanaka v. University of Southern California, 252 F.3d 1059, 1063 (9th Cir. 2001). "The term 'relevant market' encompasses notions of geography as well as product use, quality, and description." Ortiz v. S. Peter's Community Hosp., 861 F.2d 1440, 1446 (9th Cir. 1988) (Citing Moore v. James H. Matthews & Co., 550 F.2d 1207, 1218 (9th Cir. 1977)). Determination of the relevant market is generally a factual inquiry. Id. However, a claim may be dismissed if the relevant market definition is facially unsustainable. Newcal, 513 F.3d at 1045.

Defendants contend Plaintiff identifies the relevant product/service market as pediatric plastic and craniofacial surgery, and identifies the relevant geographic market as San Diego and Imperial counties. Assuming the relevant product/service market is appropriate, Defendants argue Plaintiff fails to allege a relevant geographic market. Specifically, Defendants argue Plaintiff does not plead any facts to support the conclusion that San Diego and Imperial Counties are the only areas where buyers of pediatric plastic and craniofacial surgery would travel to obtain such specialized services. They maintain nothing in the FAC supports the notion that Los Angeles County, Orange County, Riverside County and San Bernardino County should not be included in the geographic market.

Plaintiff maintains the question of the relevant geographic market does not turn on whether a patient would either obtain the surgery in San Diego and Imperial Counties or go without, as suggested by Defendants, but whether patients in San Diego and Imperial Counties would tolerate a small but significant nontransitory increase in price by the Rady

pediatric craniofacial plastic surgery group. Plaintiff maintains this is a question of fact that implicates complicated issues of insurance coverage and in-network benefits versus out-of-network benefits, and cannot be resolved at the pleading stage. He contends the question before the Court is whether a geographic market of San Diego and Imperial Counties is "facially" sustainable, and argues the relevant market defined in the FAC clears this low threshold.

Plaintiff defines the relevant market as pediatric and craniofacial surgery medical services in San Diego and Imperial Counties. FAC ¶¶ 110, 113. For purposes of the motion to dismiss, Defendants do not challenge the product market. They argue Plaintiff fails to plead facts to support the identified geographic market. "The relevant geographic market is the 'area of effective competition' defined in terms of where buyers can turn for alternative sources of supply." Moore, 550 F.2d at 1218. It must "correspond to the commercial realities of the industry and be economically significant" and may be limited to a single metropolitan area. Brown Shoe Co. v. United States, 370 U.S. 294, 366 (1962). These determinations are factual in nature and are better tested by a summary judgment motion or at trial. Newcal, 513 F.3d at 1045. At this stage, the Court need only determine whether the market is facially sustainable. The Court finds no fatal legal defect in Plaintiff's alleged market of San Diego and Imperial Counties.

**2. Monopoly Power**

Defendants argue Plaintiff suggests the Rady Defendants have 100% of the market power by artificially narrowing the geographic market. They further argue the FAC is silent as to any barriers to entry erected by the Rady Defendants to prevent the practice of pediatric plastic and craniofacial surgery throughout San Diego and Imperial Counties.

Plaintiff contends, pursuant to the direction of Newcal, the Court should look to the geographic market actually alleged in the FAC for purposes of a 12(b)(6) motion. He argues Defendants do not dispute their monopoly power in the geographic market as defined in the FAC. Plaintiff also alleges the practice of pediatric craniofacial plastic surgery is viable only for medical facilities dedicated to pediatric patients and Rady

16

Children's is the only hospital serving San Diego and Imperial Counties that offers the practice environment necessary for pediatric craniofacial plastic surgery. Additionally, he maintains, all three major hospital systems in San Diego refer all pediatric craniofacial plastic surgery candidates to Rady Children's.

Monopoly power is "the power to control prices or exclude competition." United States v. Grinnel Corp., 384 U.S. 563, 571 (1966) (quoting United States v. E.I. du Pont De Nemours& Co., 351 U.S. 377, 399 (1956)). Defendants' challenge to Plaintiff's allegations of monopoly power are based upon their argument that the alleged geographic market is improper. As discussed above, Plaintiff's identified market is facially sustainable, and Plaintiff clearly alleges Defendants have 100% of the market within San Diego and Imperial counties. Accordingly, Plaintiff sufficiently alleges monopoly power to state a claim for monopolization.

**3. Exclusionary Conduct**

"Anticompetitive conduct is behavior that lends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." Cascade Health Solutions v. PeaceHealth, 515 F.3d 883, 894 (9th Cir. 2008).

Defendants contend Plaintiff appears to allege Defendants used a conspiracy as the exclusionary device to monopolize the relevant market. Defendants maintain the conspiracy theory fails for many of the same reasons it argues the conspiracy claim fails under Section 1 including: (1) the Rady Defendants are part of a single entity, incapable of conspiring with one another under antitrust laws; (2) Dr. Gosman was an employee and/or agent of the Rady Defendants, and therefore, cannot conspire with the Rady Defendants for antitrust purposes; and (3) there are no factual allegations to support any conspiratorial communications between Dr. Gosman and the Rady Defendants. Defendants also maintain Plaintiff alleges different participants for the conspiracy of the Section 2 claim and Defendant Jaffurs had no involvement in the Section 2 claim. Defendants argue this difference calls into question the plausibility of both conspiracy theories.

17

Plaintiff argues the FAC contains numerous factual allegations that, taken as true, sufficiently allege a conspiracy among Jaffurs, Gosman, and the Rady defendants to deny Plaintiff procedurally fair consideration of his application for privileges at Rady Children's and alleges that Gosman and the Rady defendants acted with the specific intent to monopolize, and sets forth their economic rationale for doing so. Plaintiff further argues Defendants misread the FAC and/or misapprehend the Sherman Act. He maintains he alleges a single conspiracy among all Defendants who assisted with Defendants Jaffurs' and Gosman's coordinated efforts to have his application for privileges denied. He contends all Defendants are included in the first claim for relief because Section 1 of the Sherman Act prohibits restraint of trade. Additionally, he contends the second claim for relief details how Gosman and the Rady defendants conspired to maintain their monopoly on pediatric craniofacial plastic surgery in the relevant market. He maintains Defendant Jaffurs is not named in that claim because, athough he is one of the primary actors behind the conspiracy, he is not the monopolist. Plaintiff argues the first and second claims do not allege two separate and independent conspiracies, but rather set forth separate causes of action arising from the same conspiracy.

A review of the FAC supports Plaintiffs contention that he seeks two separate causes of action, restraint of trade and monopoly, against different defendants based upon the same conspiracy. As discussed above in section I.B.1., Plaintiff sufficiently alleges a conspiracy amongst the various defendants.

## 4. Antitrust Injury

Defendants contend Plaintiff has not alleged any facts to show consumer welfare has been harmed. Additionally, they contend, Plaintiff fails to plead facts supporting a plausible claim under Section 2 and, therefore, none of his alleged injuries flow directly from that provision of the antitrust laws. Thus, Defendants argue, Plaintiff has not suffered antitrust injury under Section 2 and the second claim for relief must be dismissed.

Plaintiff maintains he alleges Defendants' exclusionary conduct prevents certain highly complex pediatric craniofacial surgery procedures from being available at all in San

Diego and Imperial Counties because he is an expert in certain procedures that Gosman does not perform, and their exclusionary conduct has resulted in longer patient wait times and higher costs. Taken as true, he argues, these factual allegations show harm to competition.

In reply, Defendants argue Plaintiff's mere frustration to gain access to a hospital does not amount to an antitrust injury. Defendants also argue Plaintiff's allegations of longer patient wait times and higher costs are nothing more than conclusory allegations without any factual support and are based on Plaintiff's incorrect description of the relevant market.

As discussed in section I.B.4. above, Plaintiff's factual allegations sufficiently plead antitrust injury.

**D. Bad Faith Professional Review**

Defendants seek dismissal of Plaintiff's claim for the alleged violation of California Business & Professions Code 809.05 arguing there is no separate right for civil remedies. They further contend, even if a viable cause of action did exist, any attempt to invoke this section is premature because Plaintiff only alleges his privileges have presumptively been denied.

Plaintiff argues Defendants provide no authority for their contention that a physician cannot bring a civil claim to enforce rights included in section 809. Plaintiff contends section 809 expressly recognizes that physicians are harmed by peer review that is not conducted fairly, and provides the right to a review process that is not arbitrary or capricious and a specific procedure to safeguard the rights of physicians. He maintains the legislation provides for administrative remedies but does not provide a means to enforce the rights contained therein. Citing Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, (9th Cir. 1997), he argues, a private right of action may be implied because it is needed to protect the purpose and assure the effectiveness of section 809. Plaintiff contends he alleges sufficient facts to support a claim for relief for violation of section 809.

In reply, Defendants argue Plaintiff misrepresents <u>Jacobellis</u> and the Restatement test to artificially create an implied private right of action. They contend there is no support for a private right of action under section 809, and plaintiff has provided no authority to show otherwise. They also contend the legislative history confirms the intent of the statute was to provide minimum statutory procedural rights and protections to physicians subject to adverse action in a peer review system.

In <u>Jacobellis</u>, the Ninth Circuit found that "California courts have implied a private right of action where such a right was necessary to enforce a statute that was intended to protect the aggrieved party." 120 F.2d at 174 (citing <u>Faria v. San Jacinto United School Dist.</u>, 50 Cal.App.4th 1939 (1996). The court determined that the Restatement test for deciding whether a private right of action could be implied is useful in cases where the statute evidences a legislative intent to provide a right to a class of persons and "in the absence of the concerns avoided by the <u>Moradi-Shalal</u> court." <u>Id</u>. at 175. According to the court, the California Supreme Court in <u>Moradi-Shalal v. Fireman's Fund Ins. Cos.</u>, 46 Cal.3d 287 (1988), looked to the text of the statute, legislative analyst and counsel reports, alternative methods of enforcement, adverse consequences of implying a private cause of action and analytical difficulties defining the scope of the cause of action when finding the statute provided no private right of action. <u>Id</u>. at 174. In determining the Earthquake Insurance Act had a private cause of action in <u>Jacobellis</u>, the Ninth Circuit noted that the Earthquake Insurance Act differed from the statute addressed in <u>Moradi-Shalal</u>, the Unfair Practices Act, in that the text of the Unfair Practices Act provided for administrative enforcement while the Earthquake Insurance Act did not provide any administrative remedies. <u>See</u> <u>Id</u>.

Section 809 is the statutory scheme providing a peer review system to preserve high standards for the practice of medicine. Cal. Bus. & Prof. Code § 809(2)(3). It recognizes "[p]eer review that is not conducted fairly results in harm to both patients and healing arts practitioners by limiting access to care" and defines the minimum due process requirements of the process. § 809(a)(4); <u>Unnamed Physician v Board of Truestees of Saint Agnes</u>

20

Medical Center, 93 Cal.App.4th 607, 622 (2001). The legislation provides administrative remedies. Accordingly, a private right of action is not necessary to enforce the statute. Looking to the guidance provided by the Ninth Circuit in Jacobellis, the Court finds no implied private right of action in section 809.

**E. Defamation**

Defendants argue plaintiff's allegations supporting his claim for defamation are devoid of the requisite specificity and are privileged.

**1. Specificity**

To state a claim for defamation, a plaintiff must allege "intentional publication of a statement of fact that is false, unprivileged, and has natural tendency to injure or which causes special damage." Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999). "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." Id.

Defendants argue Plaintiff alleges Defendants forwarded, conveyed, or repeated Defendant Jaffurs' false and defamatory statements but fails to identify which of Jaffurs' statements were forwarded, conveyed, or repeated, which Defendant allegedly made the statements, to whom these statements were made, when these statements were made, and the context of the statements. Thus, they argue, the allegations lack the specificity required to support a defamation cause of action.

Plaintiff argues Defendants contention that he must plead defamation with a high degree of specificity is wrong. He maintains a plaintiff need only allege the substance of the defamatory statement. He further maintains he alleges both libel and slander with sufficient specificity. He contends he identifies the alleged statement, a publication, and defamatory meaning and that each Defendant repeated the statements to others. Plaintiff also maintains he need not identify the specific third person to whom the allegedly defamatory statement was directed and he sufficiently alleges Defendants' wrongful conduct began in approximately July 2015, and continued at least into early 2016.

In reply, Defendants argue Plaintiff fails to identify which false statements were repeated by Defendants and to whom the statements were repeated. They contend he alleges no facts showing they were responsible for any publication to other healthcare providers.

The FAC contains numerous conclusory allegations that Dr. Jaffurs made false oral and written statements to Defendant Gosman and other Rady Defendants "relating to [Plaintiff's] profession, to [Plaintiff's] detriment" which he maintains constitute libel and slander *per se*. FAC ¶¶ 153–157, 160–161. However, Plaintiff also alleges Defendant Jaffurs made false written statements to Defendant Gosman relating to Plaintiff's profession, including that Plaintiff "is not fit to operate on children." Id. ¶ 152. He further alleges Defendants "forwarded, conveyed, or repeated" Jaffur's allegedly false and defamatory statements to others and knew the statements were false and failed to take reasonable care to determine the truth or falsity of the statements. Id. ¶¶ 162, 163.

While libel requires pleading the exact words, slander may be alleged by asserting the substance of the defamatory statement. Okun v. Superior Court, 29 Cal.3d 442, 458 (1981). The alleged defamatory statement that Plaintiff was not fit to operate on children is sufficiently specific to state a claim. Plaintiff also alleges Defendant Jaffurs, in concert with Defendant Gosman, made defamatory statements from October 2015 through January 2016. FAC ¶ 84. He further alleges, Defendants Jaffurs and Gosman conspired to spread false information to various physicians. Id. ¶ 85. While Plaintiff fails to allege specifics as to the time and the third parties to whom Defendants repeated the statements, he provides a timeframe and alleges the statements were repeated to other physicians. "Less particularity is required when it appears that defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense." Okun, 29 Cal.3d at 458. Plaintiff's allegations give sufficient notice of the claim for slander to permit the Rady Defendants to prepare a defense. Plaintiff, however, fails to sufficiently allege libel against the Rady Defendants. As such, the motion is granted as to Plaintiff's claims for libel and denied as to his claims for slander.

**2. Privilege**

Defendants argue the statements are privileged under California Civil Code section 47(b). 43.8 and 47(c).

**a. Section 47(b)**

According to section 47(b), a publication or broadcast made "[i]n any (1) legislative proceedings, (2) judicial proceedings, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceedings authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure" is privileged. "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relations to the action." <u>Silberg v. Anderson</u>, 50 Cal.3d 205, 212 (1990).

Defendants argue the alleged statements are privileged under California Civil Code section 47(b) because the California legislature has accorded hospital peer review decisions a status comparable to that of quasi-judicial public agencies whose decisions likewise are reviewable by administrative mandate. They contend the entirety of Plaintiff's lawsuit involves the alleged presumptive denial of privileges at Rady Children's, and therefore, any alleged statements were made as part of the peer review process used to evaluate Plaintiff's application for privileges. They maintain this peer review process must be considered a judicial proceeding, and therefore, any alleged defamatory statements by Defendant Gosman or anyone representing the Rady Defendants during the evaluation of Plaintiff's application for privileges are absolutely privileged under section 47(b).

Plaintiff argues, as a threshold matter, determining whether a defendant is entitled to immunity under Section 47(b) is generally a question of fact. He further argues, even if the Court considers Defendants' fact-based argument now, Defendants are not entitled to immunity under Section 47(b), because defendants have not engaged in the kind of quasi-judicial proceeding that courts have recognized as subject to Section 47(b), and because

23

Gosman's statements were not made in connection with a legitimate peer review process. Plaintiff maintains there was no administrative hearing, much less one conducted in a manner similar to a judicial proceeding, including notice, informal pleading and hearing. Instead, he maintains his application was "screened out." Pla's Opp. at 19. He argues Defendants' cursory screening out of his application, without any legitimate peer review, is not protected activity. He further argues, even if Defendants' conduct could be considered a quasi-judicial process subject to section 47(b), Gosman's unlawful conduct was not entirely related to or connected with that process. He maintains Defendant Gosman's conduct preceded any colorable peer review by several months.

In reply, Defendants argue Plaintiff too narrowly limits the scope and purpose of the litigation privilege. They maintain section 47(b) applies to statements made in the course of, and preparatory to, official proceedings authorized by law. Defendants contend Plaintiff's email inquiring about employment and privileges at Rady Children's, alone, effectively triggers the start of the peer review process. They argue the allegedly defamatory statements are absolutely protected by the litigation privilege of section 47(b), because they were made in connection with an official proceeding that started when Plaintiff emailed Gosman in July 2015.

As discussed above, Plaintiff's allegations demonstrate there have been no quasi-judicial proceedings. It is clear the privilege is not limited to statements made during judicial or quasi-judicial proceedings, and "may extend to steps taken prior thereto, or afterwards." Rusheen v. Cohen, 37 Cal.4th 1048, 1057 (2006). However, "[a] prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration." Action Apartment Association, Inc. v. City of Santa Monica, 41 Cal.4th 1232, 1251 (2007). Plaintiff's allegations support the inference his application was "screened out."

The determination of whether the statements were made to achieve the objects of the quasi-judicial proceedings and have a logical relation to the action is a question of fact not suitable for disposition on a motion to dismiss.

24

### b. Sections 43.8 and 47(c)

Section 43.8 provides immunity for communications made "to aid in the evaluation of the qualifications, fitness, character, or insurability of a practitioner of the healing or veterinary arts." The privilege is qualified and "may be defeated by proof that the person or entity asserting the privilege, when it made the communication, knew the information was false or otherwise lacked a good faith intent to assist in the medical practitioner's evaluation." Hassan v. Mercy American River Hosp., 31 Cal.4th 709, 724 (2003).

Under section 47(c), "a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information" is privileged.

Defendants argue the statements are privileged under California Civil Code section 43.8, because the statements directly concern Plaintiff's qualification for his application for privileges at Rady Children's. They contend Plaintiff has not and cannot show they lacked a good faith intent to aid in Plaintiff's evaluation. Additionally, they contend the allegation that Plaintiff received a call from Dr. Carvalho who told Plaintiff his application was being presumptively denied shows the Rady Defendants and Defendant Gosman were in the process of reviewing Plaintiff's application, and, thus, the alleged defamatory statements fall within the protections of section 43.8.

Defendants also argue the alleged statements are privileged under California Civil Code section 47(c) because the statements were made in the interest of the operation of Rady Children's. Defendants maintain the Rady Defendants and Defendant Gosman, as the Chief of Plastic Surgery at Rady Children's, have a common interest in Plaintiff's application for privileges as a craniofacial plastic surgeon at Rady Children's. Additionally, they contend Plaintiff failed to plead any facts alleging they acted with malice. Instead, they maintain, Plaintiff merely speculates Defendants acted with malice, and, they argue, Plaintiff's conclusory speculation is not supported by any facts. They

25

maintain, if they did make or repeat a statement regarding Plaintiff's job performance with a former employer, it would fall squarely within the scope of common interest under section 47(c).

Plaintiff argues Defendants are not immune under section 43.8 and 47(c) because Defendants' statements were not intended to aid in his evaluation and were made with malice. He maintains section 43.8 provides no immunity if the person asserting the privilege lacked a good faith intent to assist in the evaluation. Plaintiff asserts he extensively pleads Defendants' true intent by alleging Defendant Jaffurs harbored malice toward Plaintiff and viewed Plaintiff as an economic threat to his pediatric plastic and craniofacial surgery practice in Orange County, and Defendant Gosman viewed Plaintiff's arrival as a competitive threat to her status as the sole practicing pediatric craniofacial plastic surgeon at Rady Children's. Thus, he argues, in making the defamatory statements alleged, neither Jaffurs nor Gosman acted with the subjective purpose or goal to assist in Plaintiff's evaluation. Rather, he maintains. Defendant Gosman acted with the purpose of denying him fair consideration of his application for admitting privileges at Rady Children's, and preserving her position as the sole pediatric craniofacial plastic surgeon at Rady Children's. Additionally, the other Rady Defendants similarly acted with the purpose of preventing Plaintiff from obtaining privileges at Rady Children's, to further their economic incentive to exclude physicians who are not employed by the Rady Foundation. Thus, he argues, no defendant acted with the purpose protected by section 43.8.

Plaintiff further maintains sections 43.8 and 47(c) provide only qualified immunities. He contends Defendants are not entitled to immunity under either section 43.8 or 47(c), because they acted with malice, and without reasonable grounds for belief in the truth of their statements. Plaintiff maintains he alleges all Defendants, including the Rady defendants, knew the statements were false, and the evidence available to them proved the statements were false, and he specifically alleges the Rady defendants failed to take reasonable care to determine the truth or falsity of the statements at issue, as they did not contact Plaintiff or the numerous physicians who sent letters to Rady Children's refuting

26

Defendant Jaffurs' statements and offering support to Plaintiff's application for admitting privileges. He argues Defendants' defamatory and anti-competitive purposes, combined with their deliberate falsehoods and false statements made without reasonable grounds to believe them true, take their conduct outside the scope of the qualified protections otherwise provided by sections 43.8 and 47(c).

In reply, Defendants argue the alleged statements are privileged because they were made in order to evaluate Plaintiff for staff privileges and Defendants would have a strong interest in receiving such information. They further argue there is nothing in the FAC setting forth facts that the alleged statements were motivated by hatred or ill will towards Plaintiff.

In the FAC, Plaintiff alleges

> Defendants knew the statements to be false, and the evidence available to defendants proved the statements false. Defendants Dr. Gosman, Rady Children's, Rady Foundation, UCSD and Rady Children's Medical Staff failed to take reasonable care to determine the truth or falsity of the statements, as they did not, for example, contact Dr. Toranto or the numerous physicians who sent letters to Rady Children's refuting Dr. Jaffur's statements and offering unconditional support to Dr. Toranto's application for admitting privileges.

FAC ¶ 163.

Plaintiff also alleges Defendant Gosman viewed Plaintiff as a competitive threat to her status as the sole practicing pediatric craniofacial plastic surgeon at Rady Children's and was motivated by her desire to suppress competition in her local market to her benefit. Id. ¶¶ 5, 96, 116. Assuming the truth of Plaintiff's allegations, Defendants knew the statements were false or lacked the intent to assist in the evaluation, and acted with malice. Accordingly, the statements are not privileged under sections 43.8 or 47(c).

**F. Tortious Interference with Prospective Economic Relations**

To state a claim for tortious interference with prospective economic advantage, Plaintiff must allege

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to

disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (2003) (quoting Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal.App.4th 507, 521-22 (1996)).

Defendants argue Plaintiff fails to state a claim for tortious interference with prospective economic relations because Plaintiff did not have a known economic relationship with an identifiable third party, and the Rady Defendants did not engage in any intentional acts designed to disrupt the relationship. Specifically, they argue Plaintiff makes conclusory allegations that an economic relationship was established between Plaintiff and the Rady Defendants or Plaintiff and Dr. Gosman based on speculation. They maintain Plaintiff's allegation that Defendant Gosman's response to his email that there was enough craniofacial coverage at Rady Children's regarding his interest in potentially relocating to San Diego shows that a relationship was not established or intended to be established between Plaintiff and Dr. Gosman or the Rady Defendants. They further maintain Defendant Gosman as an alleged employee or agent of the Rady Defendants, represents the interests of the Rady Defendants and it is nonsensical that the Rady Defendants can engage in an action to disrupt an economic relationship with itself.

Defendants also argue Plaintiff fails to sufficiently allege defamatory statements to support an intentional wrongful act, and without an underlying independent wrongful act this cause of action fails.

Plaintiff fails to address these arguments.

In the FAC, Plaintiff asserts a relationship with Rady Children's that "was likely to have resulted in economic benefit to [Plaintiff]." FAC ¶ 193. However, the other allegations of the FAC contradict the existence of such a relationship. Furthermore, given the allegations that the Rady Defendants were agents of each other, Plaintiff's allegations suggest Defendants interfered with a relationship with itself. Accordingly, Plaintiff fails

to allege a relationship with a third party that the Rady Defendants disrupted. The motion is granted as to this claim.

## G. Unfair Competition Business and Professions Code Section 17200 Claim

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200). To state a claim under the "fraudulent" prong, a plaintiff must allege "members of the public are likely to be deceived" by the defendant's business practice. Schnall v. Hertz Corp., 78 Cal.App.4th 1144, 1167 (2000). The "unlawful" prong "borrows" violations of other laws and makes them independently actionable under the UCL. Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999). An "unfair" business practice is one that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition." Id. at 187.

Defendants argue Plaintiff fails to allege an unlawful, unfair or fraudulent business practice because the alleged violations involve one individual, and does not include any violations affecting anyone other than Plaintiff. Therefore, they argue, Plaintiff fails to allege a business practice that amounts to unfair competition under the UCL. They further argue without a claim upon which to base the UCL claim, the UCL cause of action fails. Additionally, they argue alleged conduct is privileged under sections 47(b) and 43.8 of the California Civil code, and the claim is premature for failure to exhaust administrative remedies.

Plaintiff argues Defendants' contention that he does not sufficiently allege a UCL claim by asserting harm only to him fails because an act may violate section 17200 even if the unlawful practice affects only an individual. Even if he was required to allege harm more broadly, Plaintiff argues, he has done so by alleging Defendants' unlawful actions "injure competition to the detriment of seriously disabled infants and children, and the insurers and government sources of funding that pay for their medical care." Opp. at 23

29

(quoting FAC ¶¶ 8, 29). He also argues section 47(b) does not apply to his claims because it is preempted by federal statutes, it only protects communicative acts not non communicative conduct alleged by Plaintiff and the "screening out" of his application takes the conduct outside the protections of section 47(b). He further argues he has no obligation to exhaust administrative remedies as to his antitrust claims and he is excused from exhausting administrative remedies as to his state law claims.

In reply, Defendants argues because Plaintiffs' Sherman Act, defamation and section 809 claims fails, he fails to allege a predicate business act or practice that is forbidden by law.

As noted by Plaintiff, an unlawful practice that affects only one victim may still violate the UCL. See <u>Blanks v. Shaw</u>, 171 Cal.App.4th 336, 364 (2009). To the extent Defendant is asserting Plaintiff fails to sufficiently allege a claim under the "unfair" prong, the Court finds Plaintiff sufficiently alleges harm to competition. The Court further finds Plaintiff's alleges a predicate act in support of his UCL claim for an unlawful business practice. As discussed above, Plaintiff sufficiently alleges claims under the Sherman Act and for defamation. Additionally, as discussed in section E.2.a., Defendant fails to demonstrate the privilege of section 47(b) applies. Defendant's contention that the UCL claim must be dismissed for failure to exhaust fails as Plaintiff is excused from exhaustion of administrative remedies as discussed above.

**II. Defendant Jaffurs' Motion to Dismiss**

Defendant Jaffurs moves to dismiss the FAC arguing (A) Plaintiff's claims are premature, (B) he is immune from liability as to all the state law claims, (C) the Sherman Act claims are barred and fail to state a claim, (D) the fourth and seventh causes of action have no private right of action, (E) individuals are not liable under Labor Code section 1102.5, (F) the UCL claim is insufficiently pled, and (G) the tortious interference claim fails as a matter of law.

//

//

**A. Premature**

Defendant argues Plaintiff's claims for conspiracy, defamation, tortious interference with prospective economic relations and unfair competition are not ripe because his application is still pending and he has failed to exhaust his administrative remedies. For the reasons discussed in detail above, this Court finds Plaintiff's action is not barred for failure to exhaust administrative remedies. As such, Defendant's motion to dismiss the state law claims as premature is denied.

**B. Immunity Under State Law**

Defendant contends he is immune from suit pursuant to California Civil Code sections 43.8, 47(b), 47(c), and California Government Code sections 821.6 and 822.2.

**1. Sections 43.8, 47(c) and 822.2**

The immunity provided by sections 43.8 and 47(c) are laid out in section I.E.2.b. above and are incorporated by this reference. Under California Government Code section 822.2, "[a] public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice."

Defendant argues he is entitled to the immunity provided by section 43.8 because his statements were made with the intent to aid Rady and CHOC in evaluating Plaintiff's qualifications. Additionally, he argues he is entitled to immunity provided by section 47(c) because his statements were made in the context of employment and peer review credentialing decisions. Defendant contends Plaintiff presents only vague allegations of ill will and malice.

Plaintiff argues the statements at issue were not intended to aid in his evaluation. Plaintiff maintains he pleads Defendant's true intent by alleging Defendant Jaffurs viewed Plaintiff as an economic threat to his practice, and acted out of a deep-seated animosity for Plaintiff with the goal of denying him employment. He further contends he alleges Defendant made false written and oral statements relating to Plaintiff's profession, including that Plaintiff is not fit to operate on children. Plaintiff maintains Defendant acted

with malice, and without reasonable grounds for belief in the truth of the statements at issue.

In the FAC, Plaintiff alleges Defendant perceived him as competitive threat, began making false and defamatory statements to potential employers about Plaintiff, and boasted about destroying Plaintiff's employment opportunity. FAC ¶¶ 2, 3. He further alleges Defendant "continued on his vendetta" by making false and defamatory statements to Rady Children's and The Regents. Id. ¶ 4. The FAC also alleges Defendant developed a deep-seated personal animosity towards Plaintiff when Plaintiff refused to act as an accomplice to Defendant's personal vendettas against other surgeons. Id. ¶¶ 65-66. Additionally, the Plaintiff alleges Defendant made defamatory statements he knew to be untrue to Rady Children's with the intent to professionally harm Plaintiff and Plaintiff obtained letters from other physicians which described Defendant's allegations against Plaintiff as false, unprofessional and having no basis in fact. Id. ¶¶ 84, 92.

Assuming the truth of Plaintiff's non-conclusory allegations, Defendant's statements were knowingly false, made with malice and lacked the intent to assist the peer review or credentialing decisions. As such, the statements are not privileged under sections 43.8, 47(c), and 822.2.

## 2. Sections 47(b) and 821.6

The immunity provided by section 47(b) is laid out in section I.E.2.a. Under section 821.6, "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously or without probable cause."

Defendant argues he is entitled to immunity under section 47(b) and section 821.6 because the alleged statements arose during a medical peer review process.

Plaintiff contends Defendant's arguments in support of immunity under sections 47(b) and 821.6 are not appropriate at this stage of the proceedings because entitlement to immunity under these sections is usually a question of fact. Even if the Court considers the arguments, Plaintiff contends Defendant is not protected by section 821.6 because he

did not institute or prosecute anything, and his statements were made to serve his own purposes and out of deep-seated personal animosity towards Plaintiff.  He further contends Defendant is not entitled to immunity under these sections because the defamatory statements were made outside the context of a peer review process and long before peer review began.  Additionally, he argues Defendant continued his wrongful conduct by making false statements to the Rady Defendants after Plaintiff submitted his application outside the kind of formal or quasi-judicial proceeding that courts have recognized as protected.  Plaintiff maintains there has been no such formal or quasi-judicial proceeding, but, instead, the Rady Defendants conducted a cursory screening out of his application.

Defendant argues, in reply, the statements were made in anticipation of or during the peer review process, and therefore, are absolutely protected.  He further argues he acted in his professional capacity as an employee of UCI, so Plaintiff's claim that he was acting to serve his own purposes is not plausible.  Defendant also argues Plaintiff's application has not been screened out because it has not yet been denied.

As discussed above, Plaintiff's allegations demonstrate there have been no quasi-judicial proceedings and the question of whether the statements were made to achieve the objects of a quasi-judicial proceeding is a question of fact not suitable for disposition on a motion to dismiss.

## C. Sherman Act Claim

Defendant argues Plaintiff's Sherman Act Claim fails because he is entitled to Eleventh Amendment immunity and Plaintiff fails to allege evidentiary facts to support his claim.

### 1. Eleventh Amendment Immunity

"The Eleventh Amendment has been authoritatively construed to deprive federal courts of jurisdiction over suits by private parties against unconsenting States."  Seven Up Pete Venture v. Schweitzer, 523 F.3d 948, 952 (9th Cir. 2008) (citing Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996)).  An unconsenting state is also immune from suits brought against a state by its own citizens.  See Tennessee Student Assistance Corp.

33

v. Hood, 541 U.S. 440, 446 (2004). State officials acting in their official capacity enjoy similar immunity under the Eleventh Amendment. Hafer v. Melo, 502 U.S. 21, 25 (1991). However, a suit seeking damages against a state official in his individual capacity is not barred by the Eleventh Amendment. See id.; Blaylock v. Schwinden, 862 F.2d 1352, 1353-54 (9th Cir. 1988).

Defendant maintains Plaintiff alleges he was acting as an employee of The Regents, and, as a public employee, he is entitled to immunity.

Plaintiff argues he sued Defendant Jaffurs in his personal capacity and the allegations show Defendant engaged in vindictive and abusive behavior, and made false and defamatory statements about Plaintiff in the service of both a personal vendetta and an anti-competitive campaign. He maintains his allegations that Defendant is an employee of The Regents, for purposes of pleading the predicate for *respondeat superior*, does not preclude his claim for damages against Defendant in his personal capacity.

In reply, Defendant argues the allegations show he was acting, at all times, within the course and scope of his employment as a Regents employee, and as such, all claims against him should be dismissed under Eleventh Amendment immunity.

Plaintiff alleges Defendant engaged in personal vendettas against surgeons, including Plaintiff. FAC ¶¶ 2, 4, 65, 70. He further alleges Defendant's actions were conducted in his professional capacity as an employee. Id. ¶ 37. The allegations of the complaint demonstrate Plaintiff seeks relief against Defendant in both his official and individual capacities. Defendant is entitled to immunity to the extent the claim is asserted against him in his official capacity. However, the Eleventh Amendment does not bar the claim to the extent it is asserted against Defendant in his individual capacity.

**2. Failure to State a Claim**

Defendant argues Plaintiff fails to allege sufficient facts to demonstrate a conspiracy, antitrust injury, and a plausible market. He further argues the state action doctrine bars the claim.

//

34

### a. Insufficient Facts

The Court thoroughly reviewed the allegations of the FAC and, as discussed in detail above, finds Plaintiff sets forth sufficient allegations demonstrating a conspiracy, antitrust injury and a plausible market to support a claim for violation of the Sherman Act.

### b. State Action Doctrine

Defendant argues the state action immunity from antitrust liability under <u>Parker v. Brown</u>, 317 U.S. 341 (1943) applies to the Sherman Act claims against The Regents and its employees.  Under the state action doctrine, federal antitrust laws do not apply to anticompetitive restraints imposed by the States 'as an act of government.'"  <u>City of Columbia v. Omni Outdoor Advertising, Inc.</u>, 499 U.S. 365, 370 (1991) (quoting <u>Parker</u>, 317 U.S. at 352).  Immunity under <u>Parker</u> applies if (1) "the challenged restraint is 'clearly articulated and affirmatively expressed as state policy'" and (2) the policy is "'actively supervised by the State itself."  <u>California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.</u>, 445 U.S. 97, 105 (1980) (quoting <u>City of Lafayette v. Louisiana Power & Light Co.</u>, 435 U.S. 389, 410 (1978)).

Defendant sets forth no argument in his motion and instead joins in The Regents' argument set forth in its motion to dismiss.[5]  In its motion, The Regents cited to a case out of the Western District of New York in which it found The Regents exempt from federal antitrust laws under the state action doctrine.

Plaintiff contends the state action doctrine does not bar his claims because Defendants' action were not the product of state regulation and the state action doctrine does not protect peer review proceedings from application of antitrust laws.  Specifically, Plaintiff argues Defendants' conduct was not a product of state regulation in that they conducted a sham peer review.  Citing <u>Pinhas v. Summit Health, Ltd</u>, 894 F.2d 1024

---

[5] Because The Regents was dismissed from this action, the motion is no longer pending.

(1989), he further argues the Ninth Circuit has specifically found the judiciary does not actively supervise the peer review process.[6]

In Pinhas, the plaintiff asserted claims under the Sherman Act for the removal of staff privileges at Midway Hospital Medical Center. Id. He appealed the district court's dismissal of his antitrust claim pursuant to the state action doctrine. Id. at 1028. The court concluded the California judiciary does not actively supervise peer review, and, therefore, the state action doctrine did not apply to peer review proceedings. Id. at 1030.

Applying the reasoning and holding of Pinhas, the Court finds the state action doctrine does not bar the Sherman Act claim against Defendant Jaffurs.

**D.  Fourth and Seventh Causes of Action**

Defendant argues Plaintiff's claim for retaliation under California Business and Professions Code sections 510-512, and 2056, and claim for violation of the California Labor Code section 1050 fail because there is no private right of action.

Plaintiff contends the language of section 1050 authorizes civil actions for treble damages.  He further argues there is an implied private right of action under 510 *et. seq.* because the statute's express purpose is to provide protection against retaliation for health care practitioners who advocate for appropriate health care for their patients.  It specifically provides that the penalizing of a health care practitioner for advocating for appropriate care violates that policy and it does not expressly provide a means to enforce the right of those health care practitioners.  Plaintiff also contends courts have recognized claims brought under section 510 by aggrieved physicians.

In reply, Defendant contends Plaintiff abandons his claim under section 2056.  He further argues the cases relied upon by Plaintiff in support of his contention that courts recognize claims brought under section 510 merely assumed, without analysis, that section

---

[6] In his reply, Defendant states Plaintiff does not address the state action doctrine argument and offers no reply to Plaintiff's arguments.

510 could support a private right of action. Even if there is a private right of action, Defendant contends, Plaintiff fails to allege he advocated for medical care to support such a claim.

Defendant appears to abandon his argument that section 1050 does not provide for a private right of action, as he does not address it in his reply. As noted by Plaintiff, California Labor Code section 1054 clearly states, in addition to the criminal penalty provide, "any person or agent or officer thereof, who violates any provisions of section 1050 and 1052, inclusive, is liable to the party aggrieved, in a civil action, for treble damages." Cal. Labor Code § 1054.

Plaintiff fails to address section 2056 in his opposition. Accordingly, the court finds Plaintiff abandons the claim. See Jenkins v. County of Riverside, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did not oppose dismissal in her opposition); Shull v. Ocwen Loan Servicing, LLC, 2014 WL 1404877, *2 (S.D.Cal. 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); Walsh v. Nevada Dept. of Human Resources, 471 F.3d 1033, 1037 (9th Cir. 2006) (Holding that plaintiff forfeited his right to raise an issue on appeal where his opposition to a motion to dismiss failed to address the arguments because plaintiff failed to suggest a continuing interest in pursuing the claim and "effectively abandoned" it.).

Section 510 *et. seq.* provides protection against retaliation for physicians who advocate for medically appropriate health care for their patients. Cal. Bus. & Prof. Code § 510(a). "Advocating for medically appropriate health care" is defined as:

> to appeal a payor's decision to deny payment for a service pursuant to the reasonable grievance or appeal procedure established by a medical group, independent practice association, preferred provider organization, foundation, hospital medical staff and governing body, or payer, or to protest a decision, policy, or practice that the physician, consistent with that degree of learning and skill ordinarily possessed by reputable physicians practicing according to the applicable legal standard of care, reasonably believes impairs the physician's ability to provide medically appropriate health care to his or her patients.

37

Cal. Bus. & Prof. Code § 510(b). The statute evidences an intent to provide a right to physicians who advocate for medically appropriate health care for their patients and does not provide administrative remedies or other means to enforce the rights recognized therein. The Court further finds Plaintiff sufficiently alleges he advocated for medically appropriate health care by protesting Defendant's "decision and attempts to discredit two competent physicians" that Plaintiff believed "would impair CHOC's ability to provide appropriate health care to its patients." FAC ¶¶ 135, 134.

Accordingly, Defendant's motion to dismiss is granted as to section 2056 and denied as to section 510 *et. seq.* and 1050.

**E. Labor Code Section 1102.5**

Defendant seeks dismissal of Plaintiff's claim for relief under Labor Code section 1102.5. He argues, as an individual, he cannot be liable under section 1102.5 as a matter of law.

In opposition, Plaintiff argues his claim under section 1102.5 is viable because the plain language of the statute imposes individual liability. He maintains no California court has addressed the issue of individual liability since the language of the statute was amended in 2014 to state "any person acting on behalf of [an] employer" may not retaliate. Pla's Opp. at 22. Prior to the amendment, the language of the statute read, an "employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation [of law]." Id. (citing Cal. Labor Code § 1102.5 (effective Jan. 1, 2004 to Dec. 31, 2013)). He contends at least one district court found the statute ambiguous.

Defendant argues, in reply, Plaintiff admits no court has found individual liability in a civil action under section 1102.5.

No California court has addressed the issue of individual liability since the amendment to the language. All district courts, but one, that have addressed the issue have found no individual liability. See Tillery v. Lollis, 2015 WL 4873111 (E.D.Cal. 2015 (Looking to California Supreme Court discussion of language similar to the language of

38

section 1102.5 and finding no individual liability.); <u>Vera v. Con-way Freight, Inc.</u>, 2015 WL 1546178 (C.D.Cal. 2015) (Finding the "statutory text, structure and legislative history all indicate that only employers—no individual employees—are liable for violations of the statute.") <u>Conner v. Aviation Services of Chevron, U.S.A.</u>, 2014 WL 5768727 (N.D.Cal. 2014) (Finding the plaintiff failed to point to any language establishing individual liability and that section 1104 of the Labor Code expressly stated, in all prosecutions under the pertinent chapter, employers are responsible for acts of its manager, officers, agents and employees.). While the court in <u>De La Torre v. Progress Rail Servs. Corp.</u>, 2015 WL 4607730 (C.D.Cal. 2015) found the language ambiguous, it made no determination as to whether the statute permitted individual liability when it remanded the action to state court. This Court is persuaded by the district courts' distillation of the statutory language and, similarly, finds no individual liability under section 1102.5. As such, Defendant's motion is granted as to the claim for retaliation under section 1102.5.

**F. Unfair Competition Claim**

Defendant argues Plaintiff's claim under the UCL is insufficiently pled and fatally vague. Specifically, he argues Plaintiff fails to allege a claim under the unfair prong because he does not allege harm to the victim outweighs any benefit, and he fails to allege a claim under the fraudulent prong because he does not allege conduct that is likely to deceive members of the public. He further argues Plaintiff fails to state a claim under the unlawful prong because he has not identified a pattern or practice of specific unlawful conduct and only asserts harm to himself.

Plaintiff argues he alleges Defendant engaged in unlawful and unfair conduct by violating the Sherman Act, retaliating against Plaintiff, engaging in defamation, violating section 1050 and interfering with Plaintiff's prospective economic relations. Plaintiff also contends an act may violate the UCL even if the practice only affects one victim. Additionally, he contends he alleges Defendant's conduct injured competition to the detriment of seriously disabled infants and children. Plaintiff also maintains he alleges Defendant acted for anti-competitive purposes.

39

In reply, Defendant argues Plaintiff fails to allege how Defendant's conduct in Orange County impacted children in San Diego and fails to allege Defendant worked in San Diego/Imperial counties to permit an inference of anticompetitive motive to keep Plaintiff off Rady Children's staff.

Plaintiff does not address Defendant's contention that he does not assert a claim under the fraudulent prong. Furthermore, there are no allegations the Defendant's conduct is likely to deceive members of the public. See Schnall, 78 Cal.App.4th at 1167.

As stated above, an unlawful practice that affects only one victim may still violate the UCL. Blanks, 171 Cal.App.4th at 364. Additionally, as discussed above, Plaintiff sufficiently asserts violations of the Sherman Act, defamation and retaliation to support a claim under the unlawful prong. The Court also finds Plaintiff alleges Defendant's conduct in making defamatory statements harmed competition. FAC ¶¶ 8, 29. Accordingly, the motion is denied as to the UCL claim under the unfair and unlawful prongs, and is granted under the fraudulent prong.

## G. Tortious Interference with Prospective Economic Relations Claim

Defendant argues Plaintiff's tortious interference with economic relations claim fails because Defendant engaged in protected speech not actionable as defamation. He further argues he fails to state sufficient facts showing a relationship with CHOC or Rady Children's that was harmed by the alleged wrongful conduct. Additionally, Defendant argues Plaintiff sets forth conclusory assumptions to support his claim that he was not hired as a result of Defendant's statements. Defendant also contends Plaintiff fails to allege harm because he resigned from UCI and he still treats patients at CHOC, and Plaintiff's application is still pending at Rady Children's.

In opposition, Plaintiff argues he sufficiently alleges a claim for tortious interference with prospective economic relations. He maintains the FAC alleges he joined the medical staff at CHOC, and thus, had an existing relationship with it when he sought employment with the CHOC Foundation, and, given his relationship with CHOC, he had a reasonable expectation that his relationship with the CHOC Foundation would develop into an

40

employment relationship. He further maintains he alleges Defendant made false and defamatory statements to the CHOC Foundation in order to prevent his employment. Additionally, he maintains he establishes harm by alleging the CHOC Foundation did not hire him.

In reply, Defendant argues his statements to the CHOC Foundation were protected as part of its employment application process and Plaintiff fails to allege Defendant caused the denial of his application. He also contends Plaintiff's presumption that he had some economic relationship with the CHOC Foundation is not plausible.

In support of his claim for tortious interference with prospective economic relations, Plaintiff alleges he was in a relationship with the CHOC Foundation, an entity closely affiliated with CHOC, with whom Plaintiff worked during his employment at UCI. FAC ¶ 183. He further alleges the CHOC Foundation employed many physicians who had admitting privileges at CHOC. Id. Additionally, Plaintiff alleges he entered into employment discussions with the CHOC Foundation in 2015, and Defendant intended to disrupt the relationship between Plaintiff and the CHOC Foundation and made false and defamatory statements to the CHOC Foundation about Plaintiff. Id. ¶¶ 185-187. Plaintiff alleges Defendant disrupted the relationship and Plaintiff was not hired by the CHOC Foundation. Id. ¶¶ 70, 71, 72, 188. He alleges he was harmed because he was unable to continue his medical practice at UCI/CHOC outside the administrative purview of Defendant. Id. ¶ 189.

The Court finds Plaintiff sufficiently alleges a claim for tortious interference with prospective economic advantage against Defendant Jaffurs based upon the relationship with the CHOC Foundation. As discussed above, Plaintiff's allegations based upon economic relations with Rady Children's does not support a claim.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED:

1. The Rady Defendant's motion to dismiss is GRANTED IN PART AND DENIED IN PART.

a. The motion is GRANTED as to Bad Faith Professional Review (Third Claim); Defamation for libel (Sixth Claim); and Tortious Interference with Prospective Economic Relations (Eighth Claim).

b. The motion is DENIED as to Conspiracy in Restraint of Trade (First Claim); Monopoly (Second Claim); Defamation for slander (Sixth Claim); and Unfair Competition (Ninth Claim).

2. Defendant Jaffur's motion to dismiss is GRANTED IN PART AND DENIED IN PART.

a. The motion is GRANTED as to Conspiracy in Restraint of Trade (First Claim) only to the extent it is asserted against him in his official capacity; Retaliation under section 2056 only (Fourth Claim); Retaliation (Fifth Claim); Tortious Interference with Prospective Economic Relations (Eighth Claim) only to the extent it seeks relief based upon a relationship with Rady Children's.

b. The motion is DENIED as to Conspiracy in Restraint of Trade (First Claim) to the extent it is asserted against him in his personal capacity; Retaliation under section 510 *et. seq.* (Fourth Claim); Defamation (Sixth Claim); California Labor Code section 1050 (Seventh Claim); Tortious Interference with Prospective Economic Relations (Eighth Claim) to the extent it seeks relief based upon a relationship with CHOC; and Unfair Competition (Ninth Claim).

DATED: March 20, 2018

_____
JOHN A. HOUSTON
United States District Judge

42