UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO,<br><br>                        Plaintiff,<br><br>v.<br><br>DANIEL JAFFURS, et al.,<br><br>                       Defendants. | Case No.: 16cv1709-JAH (NLS)<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 6**<br><br>**[ECF No. 153]** |

      Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 6, wherein Plaintiff Jason Toranto ("Dr. Toranto") asks the Court to compel Defendants Rady Children's Hospital-San Diego ("Rady Children's) and Rady Children's Medical Staff ("RCMS") (collectively, "Rady") to produce certain documents responsive to Plaintiff's Requests for Production to RCMS (Set Two). ECF No. 153. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to compel.

**I.**     **RELEVANT FACTUAL BACKGROUND**

      In his First Amended Complaint ("FAC"), Plaintiff alleges nine causes of action against several defendants, including against Rady. ECF No. 21. Dr. Toranto is a pediatric plastic and craniofacial surgeon who sought to obtain privileges to perform surgery at Rady Children's. *Id.* ¶¶ 1, 6. He alleges that Defendant Daniel Jaffurs ("Dr. Jaffurs") conspired with Defendant Amanda Gosman ("Dr. Gosman") to spread false

1

information about him in order to prevent him from obtaining employment as a pediatric craniofacial plastic surgeon in San Diego and to prevent him from receiving fair consideration of his application for privileges at Rady Children's. *Id.* ¶¶ 3-5, 7.

He further alleges that Rady was an active participant in this combined effort to prevent him from obtaining privileges. *Id.* ¶ 86. Dr. Toranto first submitted his application for privileges in late October 2015. *Id.* ¶ 81. He alleges that he received a call from Rady, informing him that his application would be "presumptively denied" on January 6, 2016. *Id.* ¶ 87. At that point in time, he alleges that he had not been granted any interviews or hearings that would have given him an opportunity to be heard. *Id.* ¶ 88. He alleges that he requested information from Rady regarding the basis for the adverse determination and an opportunity to be heard but was not granted an interview and only told the concern was "behavioral." *Id.* He also alleges that thereafter, he submitted two sets of supplemental information to Rady, including many letters of support that detailed both his credentials and Dr. Jaffurs's allegations against him, but Rady never granted him an interview or hearing. *Id.* ¶¶ 91-93. He filed this lawsuit on July 1, 2016.

Subsequently, Rady granted and conducted the first interview of Dr. Toranto on November 28, 2016. ECF No. 155-3 at A1-A10. At the conclusion of that interview, Dr. Toranto was told the following:

[redacted].

*Id.* at A-10. The "next steps" stated "[redacted]" *Id.* Dr. Toranto was subsequently informed on March 26, 2017 that Rady was "[redacted]." *Id.* at B-12. In addition, he was told that

2

16cv1709-JAH (NLS)

██████████████████████████████████████████████████████████
████████████████████████████" *Id.*

According to the privilege log provided by Rady, the third party reviewer was retained around May 22, 2017. ECF No. 153-3 at C-15. An initial report appears to have been completed on September 12, 2017. *Id.* Thereafter, some additional records were transmitted by Dr. Daniela Carvalho and another report generated in December 2017. *Id.*

Subsequently, as indicated in the minutes of a January 18, 2018 meeting of Rady's Medical Staff Executive Committee, Dr. Chiang reported that "████████████
██████████████████████████████████████████████████████████
██████████████████████████████████" ECF No. 155-1 at B-2. In particular, the "████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████." *Id.* at B-3. At this meeting, Dr. Toranto was granted limited privileges. *Id.*

The parties now bring this discovery dispute to seek the Court's guidance on two matters: (1) whether documents relating to the third party review of Plaintiff's medical cases are protected by the attorney-client privilege and work product doctrine, and (2) whether an email sent from Dr. Gosman to Dr. Jaffurs is protected by the attorney-client privilege and/or joint defense privilege.

II. **DISCUSSION**

　　a. **Documents Relating to Third Party Review**

Plaintiff argues that he seeks documents relating to the third party review of his medical cases as responsive to Requests for Production ("RFP") 14 and 15 to RCMS.[1]

---

[1] RFP 14 requests "All DOCUMENTS mentioning, referring or relating to Dr. Jason Toranto." ECF No. 153-3 at D-23. RFP 15 requests "The complete credentialing file on Dr. Jason Toranto, including but not limited to all COMMUNICATIONS with any person or entity regarding Dr. Toranto's application for privileges at RADY CHILDREN'S." *Id.* at D-24.

Rady does not appear to dispute the relevance of the documents that he seeks, but argues that they should be shielded from discovery by the attorney-client privilege and work product doctrine.

### i.  Legal Standards

The attorney-client privilege protects confidential communications between a client and his or her attorney for the purposes of obtaining legal advice. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). The party asserting the privilege must establish: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* at 1071 n.2 (quoting *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)). This privilege may "extend to communications with third parties who have been engaged to assist the attorney in providing legal advice" but if the "advice sought is not legal advice," the privilege does not apply. *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The party asserting the attorney-client privilege has the burden of establishing the existence of the privilege. *In re Grand Jury Investigation*, 974 F.2d at 1070-71.

The work product doctrine also may protect certain documents from discovery. To qualify for work product protection, documents must (1) "be 'prepared in anticipation of litigation or for trial'" and (2) "be prepared 'by or for another party or by or for that other party's representative.'" *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004). Courts distinguish between two types of documents: single purpose documents and dual purpose documents. Single purpose documents are documents that are prepared "*exclusively* in anticipation of litigation" and serve no other purpose. *Id.* (emphasis added). On the other hand, dual purpose documents are those that are not prepared exclusively for litigation but also for another purpose. *Id.* For example, to show compliance with environment regulations in *In re Grand Jury Subpoena*, 357 F.3d at 907,

or an appraisal as required under treasury regulations as in *United States v. Richey*, 632 F.3d at 562. Such dual purpose documents will be extended work product protection, *i.e.* deemed to be prepared "in anticipation of litigation," if "in light of the nature of the document and the factual situation of the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907. This standard "does not consider whether the litigation was a primary or secondary motive behind the creation of a document" but rather "considers the totality of the circumstances and affords the protection when the document was created because of anticipated litigation, and would not have been created in substantially the same form but for the prospect of that litigation." *Id.* at 908. Identical to the attorney-client privilege, the party asserting the work product doctrine bears the burden of proving that it applies. *In re Grand Jury Investigation*, 974 F.2d at 1071.

### ii. Discussion

Plaintiff argues that the third party review was conducted in order to provide a medical evaluation of Dr. Toranto's technical skills in connection with his then-pending application for privileges at Rady Children's, not to assist with this litigation. ECF No. 153 at 6. As evidence, Plaintiff argues that Rady treated the credentialing process as separate and apart from the litigation. Plaintiff states that when he was finally offered an interview, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ECF No. 155-3 at E-34. Rady responded and stated the following: "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" *Id.* In addition, Plaintiff points to the notes from the November 2016 interview, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* ECF No. 155-3 at A10. Accordingly, Plaintiff argues that documents related to the third party review process are not protected under the attorney client privilege because the review did not assist in providing *legal* advice, but was for providing medical advice regarding Rady's evaluation of Dr. Toranto's application for

5

privileges. ECF No. 153 at 7. Similarly, Plaintiff argues that such documents are also not protected under the work product doctrine because they were created for the credentialing process, not this litigation. *Id.*

Rady argues that Plaintiff's view of the purpose of the review is too narrow. Rady argues that these documents are privileged and protected by the work product doctrine because the third party review was initiated based on the advice of Angela Vieira, counsel for RCMS. ECF No. 153-2 ¶ 4. Rady argues that Ms. Vieira regularly gives input on evaluations of applicants and the peer review process, and provides legal advice and direction as to committee evaluation of physicians. *Id.* at ¶¶ 4-5. Specifically, in Dr. Toranto's case, Rady states that she retained the third party reviewer, remained in consultation with him, and that while the result of the review was communicated to the Credentials Committee, the report was never submitted. *Id.*

Plaintiff disputes this characterization of Ms. Vieira's involvement, pointing to the November 2016 interview notes as evidence that it was the Committee, not Ms. Vieira, who is seeking the review as part of the credentialing process. *Id.* at 7-8. Plaintiff argues in addition that even if Ms. Vieira was involved, it is not clear that an attorney's recommendation for a third party review is sufficient to privilege the resulting documents. *Id.* at 8.

After due consideration of the parties arguments and relevant case law, the Court finds that Rady has not met its burden to show that either the attorney-client privilege or work product doctrine protects the documents related to the third party review from discovery.

First, as to the attorney-client privilege, this privilege only extends to protect communications between an attorney and a client where legal advice is sought. *In re Grand Jury Investigation*, 974 F.2d at 1071 n.2. Rady has not put forth any evidence of what *legal* advice was being sought in any communications between Ms. Vieira and the third party reviewer. As far as the Court can tell, the advice being sought from the third party reviewer was medical advice regarding whether he saw any issues with the way that

Dr. Toranto handled certain of his cases. "If the advice sought is not legal advice . . . then the privilege does not exist." *Richey*, 632 F.3d at 566 (finding that communications between an attorney and the appraiser he hired to appraise an easement in connection with a tax issue were not made "for the purpose of providing legal advice"). Rady has not pointed to any legal advice that the third party reviewer was purportedly providing or even what legal advice Ms. Vieira may have provided to her client Rady based on anything the third party reviewer said. The third party reviewer's conclusion was passed to the credentialing committee, who made the decision to grant privileges at least partially based on it. As the *Richey* case itself indicates, where the advice sought is not of a legal nature, the fact that an attorney may have ordered the outside consultation, as the attorney did in *Richey*, is of no moment.

It is a closer question whether the work product doctrine applies to the third party review documents, but the Court finds that the situation here falls on the side of the line for no protection. The third party review documents at issue here are dual purpose documents. They clearly serve the purpose of providing medical information to the credentialing process. However, because there was pending litigation at the time the review was introduced and conducted, there is likely some litigation use for the documents as well. Therefore, they should be analyzed under the "because of" test, as outlined in *In re Grand Jury Subpoena*.

For such dual purpose documents, courts examining this issue seem to draw a line at whether it can be said that there is an "independent purpose . . . truly separable from the anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 909. In *In re Grand Jury Subpoena*, the court contrasted two cases to illustrate the dichotomy: *In re Special September 1978 Grand Jury*, 640 F.3d 49 (7th Cir. 1980) with *United States v. Frederick*, 182 F.3d, 496 (7th Cir. 1999). The court distinguished the two cases, explaining the protection found applicable in *In re Special September 1978 Grand Jury* but not in *Frederick*, because the accountant's worksheets at issue in *Frederick* were part of a tax return preparation and that was a "separable purpose from litigation preparation."

*In re Grand Jury Subpoena*, 357 F.3d at 909. On the other hand, the Board of Election reports documents at issue in *In re Special September 1978 Grand Jury* were compiled by lawyers and "necessarily created in the first place because of the pending litigation." *Id.* Applying this distinction, the Ninth Circuit found that the environmental documents in question in *In re Grand Jury Subpoena* were protected. *Id.* at 910. In that case, the EPA had warned the client that it was under investigation for violation of federal waste management laws. *Id.* at 904. The client hired an attorney, who in turn hired the environmental consultant to assist him in preparing a legal defense. *Id.* Seeking to avoid litigation, the client turned over several documents prepared by the consultant to the EPA, pursuant to an information request from the EPA and an Administrative Consent Order between the client and the EPA. *Id.* Even though these documents served another non-litigation purpose—*i.e.*, they were prepared and submitted in compliance with the information request and the Administrative Consent Order—the court held them protectable because "their litigation purpose so permeates any nonlitigation purpose that the purposes cannot be discretely separated from the factual nexus as a whole." *Id.* at 910.

Applying this framework to the facts of this case, the third party review serves a separate enough purpose, apart from the litigation. The credentialing process started when Dr. Toranto submitted his application for privileges to Rady, months before the litigation was filed. And as Dr. Toranto points out, it does appear that Rady treated the credentialing process as separate and apart from the litigation. This situation is, therefore, different from *In re Grand Jury Subpoena*, where the documents were prepared *for litigation* but then used for another purpose too, and therefore the litigation purpose was found to "permeate" the creation of the documents. Here, whatever litigation purpose these third party review documents may serve is not so intertwined with the credentialing purpose.

Rather, the interplay between the third party review and litigation is more akin to the cases that have found no protection because the two purposes were sufficiently

separable. *See Richey*, 632 F.3d at 568 (finding that third party appraisal was submitted as part of tax return and there was no evidence that the appraisal work file would have been prepared differently absent the prospect of litigation); *Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1105-07 (N.D. Cal. 2016) (documents in question had the business purpose of being prepared to aid in business negotiations and the employees would have undertaken the same analysis and engaged in the same communication even if litigation was not anticipated); *Viasat, Inc. v. Space Sys./loral, Inc.*, No. 12-CV-0260-H (WVG), 2013 WL 12061801, at *6 (S.D. Cal. Jan. 14, 2013) ("Documents related to the negotiations of the Purchase Agreement and documents concerning MDA's evaluations of SS/L's business operations" are not protected because they "would have been created in essentially similar form during MDA's acquisition of SS/L, whether or not Defendants were involved in the instant litigation with Plaintiffs."); *Minden Air Corp. v. Starr Indem. & Liab. Co.*, No. 3:13-CV-00592-HDM, 2015 WL 419031, at *2-3 (D. Nev. Jan. 30, 2015) (no work product protection because the "primary if not exclusive" purpose of third party involvement was to ascertain the extent of hull damage to the aircraft and any work product characterization of the retention was "clearly secondary"). Similar to these cases, the retention of the third party reviewer was for the primary purpose of evaluating the soundness of Dr. Toranto's treatment history and Rady has put forth no evidence that the review and/or report would have been conducted or written any differently if not for the litigation.

Furthermore, in the work product context, Ms. Vieira's involvement is not conclusive that these documents should be protected either. In *Phoenix Technologies*, the court rejected a similar argument that documents should be protected because "in-house counsel provided 'continual' legal advice and direction regarding the [] dispute," finding that this involvement "does not automatically denote that a document is entitled to protection." 195 F. Supp. 3d at 1105. Noting that in-house attorneys act like integral players in both the legal matters as well as business decision and activities, the court found that, at best, in-house counsel's involvement supported the inference that

documents were dual purpose documents, to be evaluated under the "because of" framework as enunciated in *In re Grand Jury Subpoena*. *Id.* Thus, whatever involvement Ms. Vieira may have had in retaining the third party reviewer supports only analyzing this case under the "because of" standard, as the Court has done above. Moreover, in *Phoenix*, the court noted that the attorney provided only general and vague representations about her involvement and never identified "a single document for which she provided instruction, review, or comment." *Id.* at 1106. The court noted that "[l]ack of attorney involvement in documents 'is a useful sign, in conjunction with other indicators, that they are not protected work product.'" *Id.* Ms. Vieira's level of involvement is described here in similarly generic and vague terms. *See* ECF No. 153-2 at ¶ 5, ECF No. 153-1 at ¶ 5.

Accordingly, the Court finds that Rady has failed to meet its burden to show that the third party review documents are protected under with attorney client privilege or by the work product doctrine.

### b. Email from Dr. Gosman to Dr. Jaffurs

The second dispute that the parties raised in this joint determination of discovery dispute relates to an email between Drs. Jaffurs and Gosman. ECF No. 153 at 11. The email was produced but included a redaction for attorney-client privilege in the middle of the email. The parties dispute whether this section of the email was properly withheld as privileged.

The email is dated April 25, 2016. ECF No. 155-3 at G-39-G-42. ███████
████████████████████████████████████████████████
███████████████████████████████████████. *Id.* at G-42.
████████████████████████████████████████████████
████████████████████. *Id.* at G-41. Thereafter, there is a portion of the email that was redacted when produced. *Id.* at G-40-G-41. Rady represents that the redaction included an email from its counsel, Ms. Vieira, to Dr. Gosman and Dr. Carvalho. ECF No. 153 at 14. Dr. Gosman then forwards the email, with the redacted portion, back to

1 | Dr. Jaffurs, stating ███████████████████████████████████████
2 | ████████████████████████." ECF No. 155-3 at G-40. ████████████
3 | ████████████████████████. *Id.* at G-39-G-40.

Plaintiff argues that the redacted portion of that email exchange should be produced because whatever attorney-client privilege that may have protected the email has been waived in light of Dr. Gosman forwarding the email to Dr. Jaffurs. Rady responds that the forwarding is protected by the joint defense privilege and even if not, Dr. Gosman does not have authority to waive the privilege on behalf of Rady, the holder of the privilege. The Court will discuss each of these arguments in turn.

### i. Joint Defense Privilege

Attorney-client communications "made in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citation omitted). Any exception to this rule must be construed narrowly to avoid "creating an entirely new privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1128 (9th Cir. 2012).

The "common interest" or "joint defense" doctrine is an exception to the general rule that disclosure of protected material to third parties constitutes a waiver. *Nidec Corp.*, 249 F.R.D. at 578. The common interest doctrine is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (citing *Hunydee v. United States,* 355 F.2d 183, 185 (9th Cir. 1965)). The common interest exception applies when "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (citing *In re Mortgage Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997)). As with other doctrines of privilege, the burden for establishing that the privilege exists rests with the party asserting the privilege. *United States v. Gonzalez,* 669 F.3d 974, 979 (9th Cir. 2012).

The exception is available regardless of whether litigation has actually commenced. *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964). However, there must be "an on-going and joint effort to set up a common defense strategy" for it to apply. *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685 (S.D. Cal. 1996). "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. "Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Id.* An agreement to set up a common defense strategy "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *Gonzalez*, 669 F.3d at 979 (quoting *Continental Oil Co.*, 330 F.2d at 350).

This communication took place in April 25, 2016—over two months before the complaint in this case was filed on July 1, 2016. The only evidence that Rady has put before the Court to evaluate the existence of a joint or common defense is a letter from Dr. Toranto in January 2016, regarding his application for privileges at Rady Children's. In this letter, Dr. Toranto states:



[REDACTED]

ECF No. 155-1 at Exhibit A-1. Dr. Toranto went onto state:

[REDACTED]

*Id.*

Without more, the Court finds that this letter is insufficient to establish that Drs. Gosman/Rady and Jaffurs had formed some joint strategy in pursuit of some common legal interest. Since Rady does not provide a written agreement operative at the time the email was sent, any possible agreement would have to be unwritten and implied from conduct and situation. *Gonzalez*, 669 F.3d at 979. This letter may be evidence of the potential for threat of litigation but it does not separately support the existence of such an unwritten agreement between Drs. Gosman/Rady and Jaffurs. Arguably, the email itself may also be evidence of such a relationship, but the unredacted portion that the Court can see only shows Drs. Jaffurs and Gosman discussing [REDACTED]. There is simply no discussion or allusion to any joint defense effort or strategy. *See Avocent Redmond Corp. v. Rose Elecs., Inc.*, 516 F. Supp. 2d 1199, 1204 (W.D. Wash. 2007) (no joint defense privilege found when party failed to "identify any communication between [the attorneys] and either client or [the third party]'s counsel regarding a joint defense effort or strategy"); *Stevens v. Brigham Young Univ.-Idaho*, No. 4:16-CV-00530-DCN, 2018 WL 2974388, at *21 (D. Idaho June 11, 2018) (no joint defense privilege when affidavit from counsel "fail[ed] to identify when exactly the entities began working together, how they first started communicating, or any other details about the joint defense"). Accordingly, the

Court finds that Rady has failed to meet its burden to establish that the joint defense privilege protects disclosure of the redacted portion of the email.

### ii. Corporate Attorney-Client Privilege

The attorney-client privilege applies as well to the situation where the client is a corporation, not an individual. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). However, given that the client is an inanimate entity, courts had historically held that the privilege only covers those individuals in the corporation that can be said to "possess an identity analogous to the corporation as a whole"—the "control" group. *Id.* at 390-391 ("control group" consisting of the "officers and agents . . . responsible for directing the company's actions in response to legal advice"). In *Upjohn*, the Supreme Court extended the privilege to cover certain situations involving lower level employees in a corporate context. The Court noted that, in that context, "it will frequently be employees beyond the control group . . . who will possess the information needed by the corporation's lawyers." *Id.* at 391. Conversely, it is often that the "attorney's advice will also frequently be more significant to noncontrol group members than to those who officially sanction the advice." *Id.* at 392. With this background, the Court held that the privilege also applies to communications between corporate counsel and employees not in the control group made "at the direction of corporate superiors in order to secure legal advice from counsel." *Id.* at 394; *see also United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996).

Once the privilege is established, however, not all employees are able to waive it. "[F]or solvent corporations, the power to waive the attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *see also Chen*, 99 F.3d at 1502. This disparity between who can be covered under the privilege versus who can waive it has been explained as: "This is as it should be so the company can obtain information from its [employees] and 'then control the attorney-client privilege, waiving it when necessary to serve corporate interests." *Gen-Probe Inc. v.*

14

16cv1709-JAH (NLS)

*Becton, Dickinson & Co.*, No. 09-cv-2319-BEN (NLS), 2012 WL 1155709, at *6 (S.D. Cal. Apr. 6, 2012) (quoting *United States v. Graf*, 610 F.3d 1148, 1161 (9th Cir. 2010)); *see also United States v. Lonich*, No. 14-cr-00139 (SI), 2016 WL 1733633, at *5 (N.D. Cal. May 2, 2016) ("The power to waive the privilege, however, belongs not to the employees but 'rests with the corporation's management and is normally exercised by its officers and directors.'"); *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1143 (D. Mont. 2006) ("The government is wrong in arguing that the individual Defendants, none of whom presently hold any position of authority in the corporation, can waive Grace's claim to the attorney-client privilege.").[2]

With this framework in mind, there may be the threshold question of whether Dr. Gosman is to be considered to be in a position of "management," as this would affect whether she could assert or waive the privilege. Ultimately, however, the Court finds that this does not matter as the result is the same either way—Rady has not met its burden to show that the redacted portion is protected under the attorney client privilege.[3]

---

[2] The Court notes that there are other cases that concluded that the application of the privilege and the ability to waive it should coincide. In *Walker v. City of Pocatello*, No. 4:15-CV-00498-BLW, 2017 WL 1138134, at *2 (D. Idaho Mar. 27, 2017), the court held that "any [city] employee who was entitled to the attorney-client privilege . . . may also waive that privilege." *Id.* ("Here, Defendants seem to want to eat their cake and have it too. They want to claim that Smith was entitled to attorney-client privileged information, but could not waive that privilege if she shared the information with Bristow . . . . *Upjohn* does not allow this."). Similarly, in *Jonathan Corp. v. Prime Computer, Inc.*, 114 F.R.D. 693, 699 (E.D. Va. Mar. 18, 1987), the court stated "[l]ogically, a corporation cannot enjoy the benefits of an expanded attorney-client privilege without likewise accepting the consequences that the privilege may well be waived by an employee who is outside of the 'control group.'" The *Jonathan* court reconciled the *Weintraub* case by finding its statement that the privilege can only be waived by officers and directors for solvent corporations as dicta, and characterized the case as only truly addressing "the narrow issue of the control of the attorney-client privilege of a corporation in bankruptcy." *Id.* at 698. While the position of these courts has some logical appeal, the Court declines to adopt their reasoning here in light of the subsequent treatment of *Weintraub* in Ninth Circuit cases like *Chen* and the other district court cases cited above.

[3] Rady seems to suggest that some of the burden rests on Plaintiff. ECF No. 153 at 14 ("Plaintiff has not established that Dr. Gosman is authorized to waiver [sic] the attorney-client privilege in this context."). However, because the attorney-client privilege is to be narrowly construed, "the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party

If Dr. Gosman is not in a sufficient position of management,[4] then under *Upjohn*, communication from her to RCMS's counsel is only protected if it is shown that it was "at the direction of corporate superiors in order to secure legal advice from counsel." 449 U.S. at 394. Subsequent cases in this district have embraced this language as a requirement for the attorney-client privilege of a corporation to cover non-management employees. *See, e.g., Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514-15 (S.D. Cal. 2003) ("In order for the privilege to apply, (1) the communication should have been made for the purpose of securing legal advice; (2) the employee making the communication should have done so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication should have been within the scope of the employee's duties; and (5) the communication should not have been disseminated beyond those persons who need to know the information."); *Newport Pac. Inc. v. Cty. of San Diego*, 200 F.R.D. 628, 633 (S.D. Cal. 2001) ("As a result, Defendants bear the burden of establishing Stocks' status as a 'superior,' operating at County Counsel's request or in the alternative, that the communication was made at the direction of corporate superiors in order to secure legal advice from counsel."); *Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09CV2319 BEN NLS, 2012 WL 1155709, at *2 (S.D. Cal. Apr. 6, 2012) ("[T]he Supreme Court held that a corporation's privilege extends to communications between corporate employees and corporate counsel as long as the communications are 'made at the direction of corporate superiors in order to secure legal advice.'"). Rady has made no such showing of this requirement here. From what the Court can see, █████

---

asserting it" and "[o]ne of the elements that the asserting party must prove is that it has not waived the privilege." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

[4] This appears to be the more likely scenario. Rady's website shows that it has an "Executive Team" made up of seventeen individuals. *See* https://www.rchsd.org/about-us/who-we-are/executive-team/. These individuals hold positions like presidents, CEOs, CAO, COO, CFO, various vice presidents, and chiefs. *Id.* Dr. Gosman is not listed as part of this team.

| | |
|---|---|
| 1 | ██████████████████████████████████████ |
| 2 | ██████████████████████████████████████████ |
| 3 | ██████████████████████████████████████████ |
| 4 | ████. ECF No. 155-3 at G-41. This email presumably gets into the hands of Ms. |

████. ECF No. 155-3 at G-41. This email presumably gets into the hands of Ms. Vieira by a forward from Dr. Gosman. Thus, nothing on the face of the email in front of the Court suggests that Dr. Gosman acted at the direction of counsel. And Rady has not put forth any additional evidence outside of the email that suggests this either. Thus, under this scenario, the email would not be privileged in the first place and must be produced.

On the other hand, if Dr. Gosman is in a sufficient position of management, then under *Commodity Futures Trading Comm'n v. Weintraub*, she has the power to waive the privilege. 471 U.S. at 348. Here, Dr. Gosman forwarded the email to Dr. Jaffurs, with the commentary "████████████████████████████████████████████████████████████████." ECF No. 155-3 at G-40. This email suggests she shared this email with him with the clear intent of sharing its contents and Ms. Vieira's advice. Thus, under this scenario, the email may have been privileged but that privilege was waived when Dr. Gosman forwarded the email to Dr. Jaffurs and must be produced as well.

Accordingly, the Court finds that Rady has not shown that the redacted portion of the email in dispute is protected by a joint defense or common interest privilege or that the email falls under any attorney client privilege protection.

///
///
///
///
///
///
///

### III. CONCLUSION

For the reasons as set forth above, the Court GRANTS Plaintiff's motion to compel regarding the third party review documents and the email discussed above between Dr. Jaffurs and Dr. Gosman. The responsive documents should be produced within 14 days of this order.

**IT IS SO ORDERED.**

Dated: July 24, 2018

Hon. Nita L. Stormes
United States Magistrate Judge