UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>DANIEL JAFFURS, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 16cv1709-JAH (NLS)<br><br>**REDACTED ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 5**<br><br>**[ECF No. 150]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 5, wherein Plaintiff Jason Toranto ("Dr. Toranto") asks the Court to compel Defendant Daniel Jaffurs ("Dr. Jaffurs") to produce certain documents responsive to Plaintiff's Requests for Production to Jaffurs (Set Two). ECF No. 150. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel.

**I.     RELEVANT FACTUAL BACKGROUND**

In his Second Amended Complaint ("SAC"), Plaintiff alleges nine causes of action against several defendants, including Dr. Jaffurs. ECF No. 169. The crux of the complaint is that Dr. Jaffurs allegedly made false and defamatory statements about Dr. Toranto that prevented him from being hired at the Children's Hospital of Orange County ("CHOC") and that Dr. Jaffurs conspired with Defendant Amanda Gosman ("Dr.

Gosman") to prevent Dr. Toranto from obtaining privileges at Rady Children's Hospital ("Rady's") in San Diego.

The present motion relates to discovery requests propounded in Plaintiff's Requests for Production (Set Two) to Dr. Jaffurs. These were served on March 7, 2017 and Dr. Jaffurs responded on April 10, 2017. ECF No. 150 at 1. At issue are four of the Requests for Production and a dispute over some of Dr. Jaffurs's redactions for privilege in his production.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Both discovery and Rule 26 are intended to provide parties with "efficient access to what

2

16cv1709-JAH (NLS)

is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

### III. DISCUSSION

#### a. Request for Production No. 18

**Request for Production No. 18** seeks the following documents:

> All DOCUMENTS mentioning, referring or relating to Dr. Jason Toranto.

ECF No. 150 at 3. The parties represent that Plaintiff has agreed to narrow the scope of this request to only those documents where Plaintiff is "substantively discussed." *Id.*

The dispute on this request centers on what type of documents it covers. Plaintiff argues that Dr. Jaffurs has limited his production to only email, but there is evidence that he uses other forms of communication, including extensively via text messages. ECF No. 150 at 3. Because the crux of this case focuses on what Dr. Jaffurs communicated to others about Dr. Toranto, Plaintiff argues that this request is "of the highest relevance" and is proportional to the needs of the case. *Id.*

In response, Dr. Jaffurs claims that he has already produced many text messages to

Plaintiff, including text messages between him and other "key" players in the litigation: with Defendant Gosman, Dr. Maria Minon, Dr. Paul Lubinsky, Dr. Raj Vyas, Dr. Mustafa Kabeer, Dr. Garrett Wirth, and Dr. Greg Evans. *Id.* at 4-5. In light of what has already been produced, Dr. Jaffurs argues that the request to search all his text messages is too burdensome, as it would require a manual search to look for all messages that mention Dr. Toranto's name. *Id.* Dr. Jaffurs suggests that a more efficient way to proceed with this request would be to take Dr. Jaffurs's deposition and specifically ask him whom he recalls sending text messages to regarding Dr. Toranto. *Id.* at 6.

There is merit to what both Plaintiff and Defendant Jaffurs argue. The communications are indeed relevant and Dr. Jaffurs does not dispute that he communicates extensively using text messages—as such, the Court finds that some discovery into his text messages is appropriate under Rule 26. However, Dr. Jaffurs has already produced many of his text messages with the important players in this case. And at this stage of the litigation, the Court believes the parties should have conducted enough discovery for Plaintiff to have some knowledge about who else Dr. Jaffurs may have been communicating to about him.

Accordingly, the Court will **GRANT IN PART** this request. In order to alleviate some of the burden on Dr. Jaffurs, Plaintiff is to provide a list of up to 10 individuals for whom Dr. Jaffurs must produce any text messages that are responsive to this request. Whether Plaintiff wishes to do this before or after Dr. Jaffurs's deposition is left to his discretion. However, the Court cautions Plaintiff to be mindful of the case schedule and Plaintiff should extend professional courtesy in providing this list early enough such that Defendant Jaffurs has sufficient time to comply and the parties to resolve any possible issues that arise. Within 14 days of Plaintiff providing this list to Defendant Jaffurs, he is to provide the responsive text messages to Plaintiff.

While the crux of this dispute appears to be about the text messages, Plaintiff phrases his request for relief from the Court to include "all documents (text messages, instant messages, letters, memoranda, etc.)." ECF No. 150 at 4. Defendant Jaffurs's

4

objection focuses only on text messages. *Id.* at 4-6. To the extent there is a dispute about these other forms of "documents," the Court orders the following. For documents that are searchable (akin to email), Defendant Jaffurs shall produce any documents that "substantively discuss" Dr. Toranto. For documents that may not be easily searchable (akin text messages), Defendant Jaffurs shall produce responsive documents only between him and the individuals for whom he is producing text messages—in other words, the 7 "key" players as identified in the motion (*see* ECF No. 150 at 5) and the list of up to 10 individuals that Dr. Toranto provides.

### b. Request for Production No. 20

**Request for Production No. 20** seeks the following documents:

> All DOCUMENTS reflecting, referring or relating to any criticism or attack YOU have made against any other physician.

ECF No. 150 at 6.

Plaintiff argues that this request seeks documents regarding Dr. Jaffurs's "practice and pattern of attacking surgeons whom he perceives as a competitive threat, or against whom he harbors personal animus." ECF No. 150 at 7. Plaintiff points out that the Court previously ordered produced certain documents related to another physician, Mike Sundine, that may have shown such behavior by Dr. Jaffurs. *See* ECF No. 139 at 5.

Defendant Jaffurs argues that this request, as written, is vague as to what would be considered a "criticism" or "attack." ECF No. 150 at 8. He argues that this is exacerbated because of his position as a surgeon and faculty member because it is his job to provide feedback to others and about others. *Id.* Defendant also argues that this request may encompass peer review protected information about other physicians, and that there are privacy concerns about revealing confidential information about other physicians. *Id.*

The Court agrees that, as a general matter, the information targeted by this request may be relevant to Plaintiff's claims about Dr. Jaffurs's pattern of behavior. However, as written, the request is too broad. Dr. Jaffurs is correct that in his position, he may be

5

expected to give reviews and criticism to and about other physicians within the scope of his employment. Such criticism would not necessarily show any animus towards the physician in question, but simply reflect Dr. Jaffurs's opinions as to that physician's skills and patient care. Thus, the Court **DENIES IN PART** this request as it pertains to documents involved in the feedback process at University of California, Irvine ("UCI")/Children's Hospital of Orange County ("CHOC"), including for the morbidity and mortality conferences, and in the peer review process about other physicians.

The Court will **GRANT IN PART** this request and permit some more limited discovery into any documents, outside those involved in the feedback or peer review processes, that illustrate an attack on a physician that goes beyond a professional criticism and may reflect potential personal animus or a personal vendetta. An example may be the email that the Court ordered produced in its May 24, 2018 order, where Dr. Jaffurs discussed Mike Sundine. ECF No. 139 at 5, Email 3. Any privacy concerns that Dr. Jaffurs has raised may be alleviated by the Protective Order in place in this case. Dr. Jaffurs may further redact personal or sensitive information that is contained in any responsive documents.

### c. Request for Production No. 22

**Request for Production No. 22** seeks the following documents:

> All DOCUMENTS mentioning, referring or relating to any investigation, disciplinary action, demotion, loss of administrative responsibilities or suspension of YOU by any hospital or health care organization.

ECF No. 150 at 9. Thus, this request essentially seeks information about Dr. Jaffurs's professional record and any adverse investigations and actions taken against him.

As Defendant Jaffurs points out, an almost identical request was made in a subpoena to UCI that the Court quashed.[1] ECF No. 150 at 11. The Court stated in its previous order that this information sought did not have any connection to Dr. Toranto's antitrust and conspiracy claims and therefore, was overbroad and sough irrelevant information. ECF No. 100 at 8. The Court did note that Dr. Toranto could renew this request, if information revealed during discovery made Dr. Jaffurs's professional history relevant to the claims or defenses in this case. *Id.*

Plaintiff argues that Dr. Jaffurs's professional history is relevant to the defamation claim because if his record shows similar or worse behavioral or clinical issues that he alleged about Dr. Toranto, that would go to show that his statements about Dr. Toranto were more likely made with malice. ECF No. 150 at 9-10. Plaintiff argues that the Court's previous ruling did not consider the connection to the defamation claim but rather, only the antitrust and conspiracy claims. *Id.* at 10 n.3. In additional, Plaintiff argues that ███████████████████████████████ puts Dr. Jaffurs's record at issue due to the discrepancy between this result and Dr. Jaffurs's statements about Dr. Toranto. *Id.* at 10.

Defendant Jaffurs responds that the focus of the defamation claim focuses on whether the statements made about Dr. Toranto were false or not, and that Dr. Jaffurs's professional record is not relevant to that inquiry. *Id.* at 12-13. As to the ███████ ███████████, Dr. Jaffurs argues that it does nothing to make his record relevant because other evidence in discovery has corroborated his statements about Dr. Toranto, thereby eliminating the discrepancy alleged by Dr. Toranto. *Id.* at 11-12.

The Court finds that Plaintiff has not presented any convincing reason to modify its previous ruling or find that the information sought in this request is relevant and

---

[1] Plaintiff's Request for Production No. 10 to UCI sought "All DOCUMENTS regarding, referring or relating to any investigation, disciplinary action, demotion or loss of administrative responsibilities or suspension of JAFFURS by YOU or any hospital or health care organization." ECF No. 98-1 at 9.

7

proportional to the defamation claim. Dr. Jaffurs's professional record is not sufficiently relevant to the defamation claim to be proportional to the needs of this case. Upon review of the defamation claims in the SAC (*see* ECF No. 149 at ¶¶ 73, 86, 90, 92, 98, 100, 101, and 104), the Court believes that evaluation of the veracity of the statements therein does not require bringing Dr. Jaffurs's professional reputation into the equation. Furthermore, the Court does not find that ▉▉▉▉▉▉▉▉ evidence does anything to make Dr. Jaffurs's professional record relevant—even prior to this evidence being produced during discovery, Dr. Toranto already pointed to plenty of evidence as to his positive professional history that rebuts Dr. Jaffurs's statements about him. *See, e.g.*, ECF No. 169 at ¶¶ 48-59; ECF No. 21 at ¶¶ 45-56. Accordingly, in line with its previous order, the Court **DENIES** Plaintiff's motion to compel as to this request for documents related to Dr. Jaffurs's professional record.

### d. Request for Production No. 25

**Request for Production No. 25** seeks the following documents:

> All DOCUMENTS reflecting, referring or relating to any effort to withhold, not pay, or otherwise limit remuneration for any physician or physicians providing call coverage at CHOC.

ECF No. 150 at 13.

Plaintiff alleges that one of the ways that Dr. Jaffurs retaliated against him was to force him to take additional call at CHOC without compensating him. ECF No. 169 at ¶ 70(d). Plaintiff argues that discovery has revealed that Dr. Jaffurs referenced and mischaracterized these issues to Rady's. *Id.* at 14. Specifically, he points to a document produced by Rady Children's Medical Staff, which stated:



[REDACTED]

ECF No. 152-1 at ¶ 15. Plaintiff argues that this request is narrowly tailored to obtain documents related to this allegation and that Dr. Jaffurs was not truthful when he made these statements about the call issue.

Defendant Jaffurs counters that he has already produced emails about Dr. Toranto's call stipend at CHOC, his requests for increased call stipend, and his complaints that the call stipend was not on par with what neurosurgeons received. ECF No. 150 at 14. Defendant Jaffurs has also produced his communications with CHOC employees about the call stipend. *Id.* In light of these already produced documents, Dr. Jaffurs argues that this request is too broad and not proportional because the statements that Dr. Jaffurs made are about the disagreement between him and Dr. Toranto on the amount of call stipend Dr. Toranto received—not generally about call stipends at CHOC or negotiation of those call stipends. *Id.* at 14-15.

The Court agrees with Defendant Jaffurs that documents related to the call stipend of other physicians are not relevant to the defamation issue, because the statements at issue there center around Dr. Toranto's call stipend, the actions he took with regards to his call stipend, and his communications with Dr. Jaffurs regarding the same. It appears that the relevant documents to this issue have already been produced. However, as Plaintiff points out, he also alleges that Dr. Jaffurs retaliated against him by forcing him to take additional call at CHOC without compensation, contributing to a hostile work environment. ECF No. 169 at ¶ 70(d). In Plaintiff's retaliation claim, he alleges that Dr. Jaffurs retaliated by creating the hostile work environment. *Id.* at ¶ 164. As to his claim that he was retaliated against by being forced to take more call without compensation, the documents requested here may have some relevance. For example, if there were many responsive documents showing that other physicians were also taking call without pay, this would affect Dr. Toranto's allegation that his experience with the same was due to retaliation against him versus general hospital policy. Accordingly, the Court **GRANTS**

9

**IN PART** this request. The Court will order Defendant Jaffurs to produce documents responsive to this request only during the timeframe for which Dr. Toranto worked for UCI/CHOC.[2]

### e. Redactions in Text Messages Between Drs. Jaffurs and Gosman

The last issue that the parties raise to the Court in their joint motion relates to text messages that were produced between Drs. Jaffurs and Gosman. ECF No. 150 at 15. Within these documents, 42 separate text messages were redacted on the basis of joint defense or attorney client privilege. *Id.* Plaintiff requests that the Court perform an *in camera* review of the 42 redacted text messages to confirm if privilege had been appropriately invoked. *Id.*

Plaintiff argues that the *in camera* review is necessary because the text messages are between doctors, with no attorney included, raising questions as to if they are indeed privileged. *Id.* at 16. In addition, Plaintiff argues that the review is needed in light of what he characterizes as a pattern of misrepresentations and concealment by Defendant Jaffurs during discovery. *Id.* at 16-17.

As Defendant points out, "*in camera* review is only appropriate if the party moving for inspection presents evidence that supports a reasonable belief that *in camera* review may establish that the privilege does not apply." *Silicon Storage Tech., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 5:13-CV-05658-LHK, 2015 WL 4347711, at *5 (N.D. Cal. July 15, 2015); *see also United States v. Zolin*, 491 U.S. 554, 574-75 (1989) (holding that "before a district court may engage in *in camera* review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that [the privilege may not apply]"). Even if the showing is made, the Court still has discretion to

---

[2] The Court leaves it up to the parties to determine the exact dates covered, but according to the Complaint, believes it should be around October 2013 to July 2015.

ultimately order or deny *in camera* review based on the "facts and circumstances of the particular case." *Silicon Storage Tech., Inc.*, 2015 WL 4347711, at *5.

Here, the redacted text messages fall into two groups—two messages are dated January 23, 2016 and the rest of the redacted messages all are after April 2017. ECF No. 152-1 at G1-G15. As to the two messages that are dated January 23, 2016, this litigation was not initiated by Dr. Toranto until July 2016. A joint defense privilege can only protect those communications if the following is established: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (*citing In re Mortgage Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997)). The exception may apply prior to the commencement of litigation but there must be some evidence that the communication was made "in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012). The Court previously held in its order on Joint Discovery Dispute No. 6 that there was insufficient evidence of such an agreement between Drs. Jaffurs and Gosman prior to litigation. ECF No. 165 at 12-13. Similarly here, Dr. Jaffurs has not put forth any further evidence of such a written or unwritten agreement. He only states that the parties entered into a joint defense agreement "at the outset of litigation in 2016" but these two messages predate the date of the initial complaint by several months. *See* ECF No. 150-2 at ¶ 7. Thus, finding that Defendant Jaffurs has not established that these two text messages are protected by the joint defense privilege, the Court **ORDERS** him to produce them.

As to the other text messages that post-date the date of the complaint, Defendant Jaffurs has represented that he and Dr. Gosman entered into a joint defense agreement "at the outset of litigation in 2016." The rest of the text messages are in 2017—the earliest being April 2017—so were presumably sent well after the joint defense agreement was in place. The Court does not find that Plaintiff has put forth sufficient evidence that

supports a reasonable belief these text messages may not be privileged.  With a joint defense agreement in place, the joint defense privilege can apply to communications between the parties, even without an attorney, as long as they are designed to further that common legal interest.  *See, e.g.*, *Youngevity Intl., Inc. v. Smith*, 16-CV-704 BTM (JLB), 2017 WL 4227025, at *6 (S.D. Cal. Sept. 22, 2017) (finding that an email forwarded from one party to another party reflecting counsel advice was protected under the joint defense privilege); *see also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("Participants in a joint or common defense or individuals with a community of interests 'may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney.'"). Plaintiff's argument regarding the alleged misbehavior of Defendant Jaffurs as to other discovery does not constitute evidence that would show privilege was inappropriately asserted in this instance.  Moreover, upon review of the text message that were produced, Defendant Jaffurs produced certain messages related to this litigation but that were not reflective of counsel advice or designed to further any common legal interest— suggesting that Defendant Jaffurs did not attempt to inappropriately apply the privilege in a blanket fashion.  *See, e.g.*, ECF No. 152-1 at G11, G16.  According, the Court **DECLINES** to order *in camera* review of the text messages sent after July 1, 2016.

//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the reasons as set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel regarding the above requests. Unless otherwise specified above, where the Court has ordered production, it must take place within 14 days of this order.

**IT IS SO ORDERED.**

Dated: August 6, 2018

Hon. Nita L. Stormes
United States Magistrate Judge