UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO,<br><br>        Plaintiff,<br><br>v.<br><br>DANIEL JAFFURS, et al.,<br><br>        Defendants. | Case No.: 16cv1709-JAH (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE MOTION TO COMPEL**<br><br>**[ECF No. 180]** |

Before the Court is Plaintiff's *ex parte* motion to compel the Regents of the University of California ("Regents") to produce certain documents in response to a subpoena served on the University of California, San Diego ("UCSD"). ECF No. 180. UCSD filed an opposition to the motion, and Plaintiff filed a reply. ECF Nos. 191, 194. Upon consideration and for the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion.

### I.  BACKGROUND

In his Second Amended Complaint ("SAC"), Plaintiff alleges nine causes of action against seven defendants. ECF No. 169. Plaintiff alleges that Defendant Daniel Jaffurs ("Dr. Jaffurs") conspired with Defendant Amanda Gosman ("Dr. Gosman") and the other Rady defendants to prevent him from obtaining privileges at Rady Children's Hospital ("Rady Children's") in San Diego.

On May 24, 2017, Plaintiff served a document subpoena on Regents, seeking documents from both UCSD and the University of California, Irvine ("UCI"). ECF No. 180-1, Ex. A. UCI employs Dr. Jaffurs, and used to employ Plaintiff. UCSD employs Dr. Gosman and certain other physicians Plaintiff argues are relevant to this case.

Dr. Jaffurs moved to quash the subpoena (ECF No. 98), which the Court granted in part and denied in part. ECF No. 100. However, the Court stayed the document production pending Judge Houston's ruling on another issue raised in a prior discovery dispute regarding whether the "peer review privilege" applied to this case. *See* ECF Nos. 77, 81, 82, 83. After the order issued, it appears that counsel for Plaintiff and counsel for UCSD held a meet and confer and corresponded over email regarding the scope of documents to produce. ECF No. 180-1, Ex. C. However, no documents were produced at that time, in accordance with the stay.

Judge Houston ruled on the "peer review privilege" issue on March 21, 2018, effectively lifting the stay. ECF No. 108. On the same day, Plaintiff's counsel emailed counsel for Regents to let her know of the decision. ECF No. 180-1, Ex. C. During this time, counsel for Regents had moved firms, and during the move, it appears certain documents were put into storage, including the ones collected in response to this subpoena. *Id.*

Documents were produced to Plaintiff on April 17, 2018. ECF No. 180 at 1. However, upon review, Plaintiff found that the only documents from UCI were produced and no documents from UCSD were produced. *Id.* Plaintiff reached out to counsel for Regents who stated she would look into the issue. *Id.*; ECF No. 180-1, Ex. D.

Plaintiff's counsel claims that counsel for Regents told him that there was a second box of documents that may have been lost. ECF No. 180 at 5. Counsel for Regents then went to collect documents from UCSD again, and requested that Plaintiff's counsel provide her a list of potential custodians who may have responsive documents, which Plaintiff's counsel did. *Id.* at 5-6; ECF No. 180-1, Ex. E. Plaintiff's counsel claims, however, that counsel for Regents miscommunicated to UCSD about what documents to

search for so the visit did not result in the collection of appropriate documents. ECF No. 180 at 6. Plaintiff's counsel states that he subsequently met with counsel for Regents again, and despite counsel stating that UCSD was cooperating, UCSD failed to produce any further documents. *Id.* at 6-7.

## II. **DISCUSSION**

Plaintiff and UCSD agree that there are three categories of documents for which UCSD was to search and produce documents. The Court will address each category in turn.

### A. Documents Regarding Plaintiff and his Application to Rady's Children

The first category of documents at issue in this dispute relate to Plaintiff Toranto. The specific relevant requests in the subpoena were:

> 2. All DOCUMENTS mentioning, referring or relating to Dr. Jason Toranto.
>
> 4. All DOCUMENTS constituting, referring or relating to COMMUNICATIONS between GOSMAN and any other person or entity concerning Dr. Jason Toranto.

ECF No. 180-1, Ex. A at 5-6. UCSD claims that it has no communications to produce. Plaintiff, on the other hand, refutes this statement because he claims he has communications in his possession that would be responsive to these requests, which UCSD did not produce. The parties' briefing on this category of documents raises several issues, which the Court will below.

#### i. The Scope of the Requests

First, there appears to be a discrepancy between the parties' views as to the scope of these requests. According to Plaintiff, in the subsequent meet and confers, UCSD agreed to produce documents and communications regarding Plaintiff *and* his application for privileges at Rady Children's. ECF No. 180 at 3. In its filings, UCSD seems to believe that it agreed to produce "emails reflecting communications regarding Jason Toranto, M.D.'s application to Rady Children's Hospital." ECF No. 191 at 2.

To the extent UCSD is considering responsive only documents regarding his application, this interpretation is too narrow. The requests are broadly worded and the Court has already previously ruled on Requests 2 and 4, overruling UCSD's objections at that time and compelling production. *See* ECF No. 100 at 7-8. Furthermore, Plaintiff submitted communications between his counsel and counsel for Regents that suggest the scope was not so limited either during the meet and confer process. *See* ECF No. 180-1, Ex. F at 31 (template email separately listing documents and communications regarding "Jason Toranto" and "Jason Toranto's application for privileges at Rady Children's").

### ii. Emails of UCSD's Employees

Second, one of the primary disputes is whether UCSD collected emails from its employees that may be responsive to these requests. In its opposition, UCSD submitted a declaration stating that: (1) "UC San Diego does not have any documents or communications between Amanda Gosman and any other individual or entity regarding Jason Toranto;" and (2) "UC San Diego does not have possession of any e-mails regarding Jason Toranto's application to Rady Children's Hospital." ECF No. 191-2 at ¶¶ 2, 7. However, based on these statements, Plaintiff argues that it is unclear whether UCSD searched the emails of any of its employees—who Plaintiff claims is within UCSD's control.

The Court agrees that work emails of employees falls under the scope of the subpoena. Federal Rule of Civil Procedure 45 governs discovery of third-parties by subpoena and is subject to the same scope of discovery as a party. Like under Rule 34 pertaining to parties, Rule 45 also requires a third-party to produce all discovery documents or things responsive to a request that are in the third-party's "possession, custody, or control." Fed R. Civ. P. 45(a)(1)(A)(iii). Current employees are considered to be within that party's "possession, custody, or control" and a party is under an affirmative duty to seek documents from them. *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) ("[A] party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably

4

available to it from its employees, agents, or others subject to its control.") (internal quotations and citations omitted); *Meeks v. Parsons*, No. 03cv6700-LJO-GSA, 2009 WL 3003718, at *4, 2009 U.S. Dist. LEXIS 90283, at *11-12 (E.D. Cal. Sept. 18, 2009) (party "cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control") (internal citations and quotations omitted).

Thus, UCSD has a duty to search for responsive communications from its employees. UCSD does not state in is opposition whether it has done this. However, it does state—in the context of communications from Dr. Gosman to others regarding Dr. Toranto—that "[i]f such documents exist, they would be in the possession of Amanda Gosman and/or the other individual entity." ECF No. 191-2 at ¶ 2. Amanda Gosman is an employee of UCSD, and this statement suggests that UCSD considers her emails, even her email address associated with UCSD, to be in her "possession" and not in the possession of UCSD. This is not consistent with the cases that hold employee documents within the "possession, custody, or control" of the company. *A. Farber & Partners*, 234 F.R.D. at 189; *Meeks*, 2009 WL 3003718, at *4.

To the extent that UCSD has not, it needs to search the work email addresses of individuals potentially having responsive documents. A reasonable inquiry involves, "at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the [party] potentially possessing responsive information, and to account for the collection and subsequent production of the information to [the requesting party]." *A. Farber & Partners*, 234 F.R.D. at 189 (quoting *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987)). It appears that Plaintiff and UCSD began this process during meet and confers—Plaintiff sent UCSD a list of potential custodians of responsive documents (ECF No. 180-1, Ex. E at 28) and provided a draft template email to send to them (ECF No. 180-1, Ex. F at 31-32)—but the process was not

5

16cv1709-JAH (NLS)

completed. The Court leave the details on how to complete this process up to Plaintiff and UCSD, and **ORDERS** them to meet and confer on how to complete this discovery.

### iii. Emails UCSD Claims are Inaccessible

The final issue in dispute between Plaintiff and UCSD is with regards to the emails that UCSD contends are no longer "accessible." UCSD claims that it does not have access to e-mail communications between its physicians and any other individuals older than six months, unless those communications were otherwise saved. ECF No. 191-2 at ¶ 5. Plaintiff counters that this statement is not credible, given that UCSD is a major research university who would likely have the need to access emails from more than six months ago. ECF No. 194 at 6. Plaintiff believes that even if UCSD removes older emails, such emails must be accessible at least through an archive or back-up tapes. *Id.*

Electronically stored information is discoverable under the same relevance standards of Rule 26, "regardless of their present format and level of accessibility." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 229 (S.D. Cal. 2015) ("Per the Rules' plain text, for accessible or inaccessible ESI to be discoverable, the relevance test set in Rule 26(b) must be satisfied."). "Inaccessible" information is generally defined as "backup tapes and erased, fragmented or damaged data." *Id.* at 239. The *Bridgeport* case described that in most cases, "'inaccessible' simply means that expenditure of resources required to access the contents is itself unreasonable." *Id.* Normally, in such cases, courts will order production as long as relevance is met, but will consider shifting the cost of production to the requesting party depending on several factors. *Id.* at 237-38 (listing factors). However, "if a party converts into an inaccessible format data that it should have reasonably foreseen would be discoverable material at a time when it should have anticipated litigation, then it should not be entitled to shift the costs of restoring and searching the data." *Id.* at 241 (citing *Quinby v. WestLB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006)).

It is unclear from UCSD's filing what it means when it claims that emails older than six months are "inaccessible." Regardless, the Court finds that at least some

discovery into these older emails is appropriate under these circumstances. To the extent any older emails that may be responsive can be retrieved through a back-up tape, archive, or other similar access, they should be retrieved and produced. Plaintiff's application to Rady Children's occurred more than six months ago and any communications regarding the same is relevant to this case. Finding relevance met, the Court will not impose any cost-shifting for the production because UCSD should have been on reasonable notice to maintain this information. The original subpoena to UCSD was served on June 6, 2017 (ECF No. 180-1, Ex. A at 2) and even though production was stayed, the Court ruled on the motion to quash the subpoena on July 10, 2017 (ECF No. 100). Plaintiff represents that he has in his possession at least some responsive emails "throughout the past several years to show that if UCSD had properly search for such communications in any given six-month window, they would have found some of them." ECF No. 194. This, at the very least, calls into question whether UCSD maintained access to documents that may have been responsive even after it had notice of the subpoena. Alternatively, if by "inaccessible," Regents truly means that the data is irretrievable, regardless of cost and effort, it must declare so in a sworn statement and Plaintiff may seek alternative relief at that time, if appropriate and justified.

Accordingly, Plaintiff's motion to compel regarding this category of documents is **GRANTED**, consistent with the above rulings. The parties are ordered to meet and confer regarding the protocol to complete this discovery. UCSD shall identify a person most knowledgeable regarding its email systems and whether any archives and back-up tapes exist and must make him or her available to answer any questions, should any arise during the parties meet and confer.

**B. Documents Regarding the Recruitment and Hiring of Samuel Lance**

Though the parties agree that Plaintiff requested information regarding the hiring of Samuel Lance, there is some disagreement as to the scope of this request. Plaintiff states that he is seeking information regarding the position filled by Samuel Lance, such as information showing (1) how and when UCSD decided it had a need for such a

position; (2) how and when UCSD posted or advertised the position; (3) when Lance applied to Rady/UCSD; (4) who asked or encouraged him to apply; (5) what was said to Lance about the need for an additional craniofacial surgeon; and (6) when the decision was made to hire Lance. ECF No. 180 at 8. Plaintiff is not seeking confidential information such as his personnel file. *Id.*

UCSD, on the other hand, characterizes this request as seeking documents reflecting efforts to recruit a pediatric plastic and craniofacial surgery position. ECF No. 191. Its position is that Samuel Lance was hired straight from his fellowship, so there are no documents specific to recruitment of a pediatric plastic and craniofacial surgery position. *Id.* at 3-4; ECF No. 191-2 at ¶ 4.

The Court finds that the information that Plaintiff seeks is relevant to his case. Plaintiff alleges that he was told by Dr. Gosman that Rady/UCSD had enough craniofacial coverage and that they were not looking for anyone at that time. ECF No. 169 at ¶ 80. If Lance was hired for craniofacial coverage, information regarding his hiring and position may be relevant to the issue of whether Rady/UCSD did indeed have sufficient coverage, as Plaintiff was informed. Thus, documents reflecting this information, if they exist, should be produced.

It is not clear from UCSD's opposition whether it searched for all the potentially responsive documents. To the extent that UCSD's position is that this request is specifically targeting a "pediatric plastic and craniofacial surgery position" and it has no responsive documents because there was never such an open position since Lance was hired directly from his fellowship, the request is not so narrow. The text of the actual subpoena seeks "All DOCUMENTS constituting, referring or relating to COMMUNICATIONS from 2015 and 2016 regarding the recruitment and hiring of Samuel Lance." ECF No. 180-1, Ex. A at 6. Even if the parties subsequently narrowed this request, Plaintiff's counsel submitted a declaration stating he believed an agreement was reached for UCSD to produce documents regarding the "recruitment and hiring for the position filled by Samuel Lance." ECF No. 180-1 at ¶ 14.

Accordingly, the Court **GRANTS** the motion to compel as to this category of documents. UCSD shall search for responsive documents, not limited specifically to recruitment of a "pediatric plastic and craniofacial surgery position," but for the position that Samuel Lance was hired. Consistent with above, this shall include searching for emails from the relevant UCSD employees. The parties may meet and confer to discuss the most efficient way to search for responsive documents.

**C. Market Analysis Documents**

The last category of documents that Plaintiff seeks are for "market analysis" documents regarding the pediatric craniofacial and plastic surgery practices in Southern California. Plaintiff claims that counsel for UCSD agreed to produce these documents and that she stated that she had seen these exact documents. ECF No. 180-1 at ¶ 13. However, in its opposition, counsel for UCSD now states that the documents she remembered seeing were for another case, unrelated to this matter. ECF No. 191 at 3. UCSD claims that it searched for responsive documents and found nothing. *Id.* at 3; ECF no. 191-2 at ¶ 3.

Despite UCSD's representation that it has no responsive documents, Plaintiff argues that UCSD should be compelled to give further information regarding whether its declarant is the proper custodian for responsive documents should they exist and how the search was conducted. ECF No. 194 at 8. Plaintiff argues that this is proper in light of UCSD's failure to conduct adequate searches on the previous categories of documents. *Id.*

The Court does not find that a further order to compel is warranted here. Given UCSD's statement, made under the penalty of perjury, that no responsive documents exist, Plaintiff has not put forth sufficient reason for the Court to doubt that. Counsel for Regents stated that UCSD "usually has 'Market Analysis Research' when they are hiring a specialist," but "not always." ECF No. 180-1, Ex. C at 22. Further, as UCSD states, Lance was hired from his fellowship, so it is unclear whether there was ever an open position for a specialist specifically that may have triggered such market analysis. While

the Court is compelling UCSD to search for and gather email communications responsive to the other requests discussed above, the market analysis documents are of a different nature. They are not email communications that would need to be collected from custodians or that may have been archived. Thus, issues that may have rendered those searches inadequate would not necessarily affect the search performed here. Accordingly, the Court **DENIES** the motion to compel as to this request.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel documents from UCSD is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: September 26, 2018

Hon. Nita L. Stormes
United States Magistrate Judge