UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO,<br><br>                       Plaintiff,<br><br>v.<br><br>DANIEL JAFFURS, et al.,<br><br>                      Defendants. | Case No.: 16cv1709-JAH (NLS)<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 8**<br><br>**[ECF No. 211]** |

     Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 8, wherein Plaintiff Jason Toranto ("Plaintiff") asks the Court to compel Defendant Daniel Jaffurs ("Dr. Jaffurs") to respond to certain requests contained in his Requests for Production (Set Four). ECF No. 211. Plaintiff opposes this motion, arguing that the requests in question do not seek relevant information and are too broad and unduly burdensome. *Id.* Upon consideration and for the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel.

### I.    BACKGROUND

     In his Second Amended Complaint ("SAC"), Plaintiff alleges nine causes of action against several defendants, including Dr. Jaffurs. ECF No. 169. The crux of the complaint is that Dr. Jaffurs allegedly made false and defamatory statements about Dr. Toranto that prevented him from being hired at Children's Hospital of Orange County

1

("CHOC") and that Dr. Jaffurs conspired with Defendant Amanda Gosman ("Dr. Gosman") to prevent Dr. Toranto from obtaining privileges at Rady Children's Hospital ("Rady's") in San Diego.

The present motion relates to discovery requests propounded in Plaintiff's Requests for Production (Set Four) to Dr. Jaffurs. These were served on August 17, 2018 and Dr. Jaffurs responded on September 20, 2018. ECF No. 211 at 1. At issue are six of the Requests for Production.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Once the propounding party establishes that the request seeks relevant information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (requiring defendants "to carry heavy burden of showing why discovery was denied").

"The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Both discovery and Rule 26 are intended to provide parties with "efficient access to what

is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the burden or expense outweighs the likely benefits. *Id.* How and when to so limit discovery, or to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," remains in the court's discretion. Fed. R. Civ. P. 26(c)(1).

### III. DISCUSSION

#### a. Request for Production No. 56

This request seeks the following documents:

> All DOCUMENTS, including COMMUNICATIONS with any PERSON, regarding any attempt by YOU to be hired by the CHOC FOUNDATION, any consideration by the CHOC FOUNDATION to hire YOU, and any decision by the CHOC FOUNDATION with respect to hiring YOU.

Plaintiff explains that he seeks these documents from Dr. Jaffurs because they are relevant to Dr. Jaffurs's claim that his statements about Plaintiff's competency and character to CHOC were neutral statements, made without personal animus or an ulterior motive. ECF No. 211 at 2-3. Plaintiff points to certain documents already produced during this litigation that he believes suggest that Dr. Jaffurs was interested in being hired

by the CHOC Foundation[1] himself. *Id.* In addition, Plaintiff argues that this information is also relevant to Dr. Jaffurs's claims of limited immunity under the California Civil and Government Codes, as those do not apply when a person is acting outside his scope of employment or in bad faith when assisting in the physician's evaluation. *Id.* at 4-5. Plaintiff has agreed to limit the timeframe of the documents he seeks to 2013 to the present. *Id.* at 5.

Dr. Jaffurs's primary argument against this request is that Plaintiff has not shown that he and Dr. Jaffurs ever competed for the same position at CHOC and without such a showing, the information sought by this request is baseless. *Id.* at 6. In addition, Dr. Jaffurs claims that the only time he pursued a role with the CHOC Foundation was in Fall 2015 and offered to produce documents relevant to that, but Plaintiff refused. *Id.* at 7.

The Court finds that this request does target relevant information for the reasons that Plaintiff stated. Simply because the two physicians did not pursue the same position at the same time does not definitively rule out the possibility that Dr. Jaffurs may have had an ulterior motive in making the statements about Plaintiff. If Plaintiff is able to establish through documents that Dr. Jaffurs had a continual interest to pursue employment with the CHOC Foundation, that could potentially establish a basis for why Dr. Jaffurs may be motivated to prevent another physician who can perform similar surgeries from being hired at CHOC.[2] By the same vein, the Court finds it appropriate to not limit the production to only 2015 as Dr. Jaffurs suggests—a continual pattern may be relevant information to Plaintiff's theory so it is appropriate to have a broader temporal

---

[1] Plaintiff uses the term "CHOC Foundation" in his request and in the motion, while Dr. Jaffurs explains that there is no entity called the "CHOC Foundation" that hires physicians and it would actually be the CHOC Pediatric Subspecialty Faculty ("CHOC PSF") that would do such hiring. ECF No. 211 at 5. Regardless, it appears both parties know what the target of this request is and the Court will use the term "CHOC Foundation" to refer to that entity.

[2] The Court, of course, makes no statements or expresses any opinions about what Dr. Jaffurs's motives are—these are all possibilities that may be proved true or untrue based on documents and other evidence.

4

scope. Accordingly, the Court will **GRANT IN PART** the motion to compel for this request for production, limited to the time frame from 2013 to the present.

### b. Requests for Production Nos. 57, 58, 59

These requests seek the following documents:

> **57**: YOUR tax returns for the years 2014 to the present.
>
> **58**: YOUR personal income statements for the years 2014 to the present.
>
> **59**: Any and all mortgage applications, loan applications, credit applications, or other documents reflecting YOUR actual or anticipated earnings from YOUR professional medical practice from 2014 to the present.

Plaintiff argues that these documents are relevant because, for the punitive damages that he seeks under his state law claims, he must offer evidence to the jury as to Dr. Jaffurs's financial condition to be considered in determining the punitive damages award. ECF No. 211 at 8-9. In addition, Plaintiff argues that such information would also be relevant to disgorgement of wrongfully obtained income. *Id.* at 9. Finally, he argues that this information is also relevant as evidence of lost income, as a component of compensatory damages, because Dr. Jaffurs is a similarly situated physician performing similar procedures during the same time period. *Id.* at 10.

Dr. Jaffurs opposes the production of these document at this time. *Id.* at 12. He argues that because there is no finding of liability yet, the relevance of such information does not outweigh his right to privacy as to his personal financial records. *Id.* He suggests that the appropriate approach would be to bifurcate liability and damages, and defer production of this information until then. *Id.* Alternatively, he requests that the Court defer production until at least a ruling on dispositive motions, which may determine whether punitive damages or disgorgement theories will be permitted at trial. *Id.* at 13-14.

The parties do not dispute that where a plaintiff states a claim for punitive damages, a defendant's financial information is relevant. *See, e.g.*, *Baykeeper v. Kramer*

5

*Metals, Inc.*, No. CV073849DDPFMOX, 2009 WL 10671577, at *3 (C.D. Cal. Feb. 27, 2009) (stating that "it is firmly established that a detailed inquiry into the size of defendant's business and financial worth is relevant to the determination of punitive damages" and further listing cases); *LL B Sheet 1, LLC v. Loskutoff*, No. 16CV02349BLFHRL, 2016 WL 7451632, at *1 (N.D. Cal. Dec. 28, 2016) ("Information related to a defendant's current net worth and financial condition is 'clearly relevant to the issue of punitive damages.'"); *Bakersfield Pipe & Supply, Inc. v. Cornerstone Valve, LLC*, No. 1:14-CV-01445 - JLT, 2016 WL 3538251, at *4 (E.D. Cal. June 29, 2016) ("[A] defendant's 'financial information is relevant' where a plaintiff states a claim for punitive damages.").

The majority of federal courts, in these cases, permit pre-trial discovery of such financial information, without requiring Plaintiff to first "establish a prima facie case on the issue of punitive damages." *Echostar Satellite LLC v. Viewtech, Inc.*, No. 07CV1273 W (AJB), 2009 WL 10672432, at *2-3 (S.D. Cal. July 11, 2009) (explaining that the prima facie case "applies to the admissibility of evidence of financial status, not its discoverability"); *see also LL B Sheet 1*, 2016 WL 7451632 at *2-3 ("the majority of federal courts to have considered this issue have declined to postpone the disclosure of financial condition and net worth information"); *Charles O. Bradley Trust v. Zenith Capital, LLC*, No. C-04-2239 JSW(EMC), 2005 WL 1030218, at *3 (N.D.Cal. May 3, 2005) (listing cases); *Baykeeper*, 2009 WL 10671577 at *3 (similarly listing cases); *Zuniga v. W. Apartments*, No. CV 13-4637 JFW JCX, 2014 WL 2599919, at *4–5 (C.D. Cal. Mar. 25, 2014).

The Court also overrules Dr. Jaffurs's privacy objection, because, again, courts have routinely found that such information can be adequately protected by the protective order. *See, e.g.*, *Echostar Satellite LLC*, 2009 WL 10672432 at *3 ("[W]hile Defendants do have an interest in non-disclosure and confidentiality of its financial records, this interest can be adequately protected by a protective order."); *Bakersfield Pipe & Supply*,

2016 WL 3538251 at *5 (overruling privacy objection because "Defendant's concerns regarding privacy may be addressed by [a] protective order").

Dr. Jaffurs urges the Court to postpone production at this time, similar to the outcome in *Brooks v. Motsenbocker Advances Devices, Inc.*, No. 07cv773-BTM (NLS), 2008 WL 2446205 (S.D. Cal. June 13, 2008), where the production of financial information was stayed pending the result of summary judgment motions if the issue of punitive damages remained relevant. However, unlike this action, that case was a diversity action. *See Baykeeper*, 2009 WL 10671577 at *5 (a federal question case that distinguished *Brooks* because in federal question cases, "the law of privilege is governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience"). Moreover, in *Brooks*, there was at least a pending motion for summary judgment, suggesting that the punitive damages issue may be decided, whereas the motion for filing dispositive motions in this case is not for several more months. Thus, the Court declines to apply *Brooks* to the instant case.

However, despite finding above that such information is relevant and its production should not be postponed, the requests which seek financial information back to 2014 are too broad. Generally, information about a defendant's past financial information is not relevant to the claim of punitive damages. *Ritchie v. Sempra Energy*, No. 10CV1513-CAB (KSC), 2014 WL 12639317, at *8 (S.D. Cal. July 11, 2014) ("A request for non-current financial information is irrelevant to a punitive damages determination.") (quoting *Equal Emp't Opportunity Comm'n v. Ca. Psychiatric Transitions*, 258 F.R.D. 391, 395 (E.D. Cal. 2009)); *Vieste, LLC v. Hill Redwood Dev.*, No. C-09-04024 JSW DMR, 2011 WL 855831, at *3 (N.D. Cal. Mar. 9, 2011) ("Discovery of Defendants' net worth and financial condition should be limited to information about each defendant's current assets and liabilities, given that 'past earnings and net worth cannot reasonably lead to relevant information on the issue of punitive damages.'"). Courts have typically held that 2 years of financial information is sufficient. *Ritchie*, 2014 WL 12639317 at *8; *Vieste*, 2011 WL 855831, at *3; *LL B Sheet 1, LLC*,

2016 WL 7451632 at 3; *Zuniga*, 2014 WL 2599919 at *5; *S. Cal. Housing Rights Ctr. v. Krug*, 2006 WL 4122148, at *2 (C.D. Cal. Sept. 5, 2006).

Accordingly, the Court will **GRANT IN PART** the motion to compel for these requests and order production only for the time period beginning in January 2017.

### c. Request for Production No. 60

This request seeks the following documents:

> All DOCUMENTS sufficient to show every instance in which YOU have referred a patient to Dr. Michael Sundine, including the dates of such referrals. (Personal identifying patient information, including names, can be redacted or de- identified.)

Plaintiff argues that this request seeks relevant information because his complaint alleges that Dr. Jaffurs held a personal vendetta against Dr. Sundine, requested Plaintiff's help in damaging Dr. Sundine's career, and retaliated against Plaintiff when he refused to do so. ECF 169 at ¶ 66. During discovery, an email from Dr. Jaffurs to Dr. Gosman was produced, stating the following: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." ECF No. 213-1. Plaintiff argues that this email must be about Sundine because there are a limited number of surgeons practicing cleft surgeries in Orange County and Dr. Sundine is the only one that fits the description in the email. ECF No. 211-2 at ¶¶ 3-5. Thus, Plaintiff argues that this request seeks information about what referrals Dr. Jaffurs actually has sent to Sundine, and would go towards showing the veracity of Dr. Jaffurs's statement and ultimately, as evidence of his credibility. ECF No. 211 at 15-16.

Dr. Jaffurs opposes the request, arguing that the information sought is not relevant to any of Plaintiff's claims in his complaint. *Id.* at 16. Dr. Jaffurs also counters that Plaintiff is only guessing that the statement is about Dr. Sundine and has not verified that

fact with Dr. Jaffurs in deposition. *Id.* at 17. In addition, Dr. Jaffurs points out that Plaintiff has already talked to Dr. Sundine, who claims that he only ever received one referral from Dr. Jaffurs, so he already has that information, rendering this request burdensome. *Id.*

The Court agrees that, while the information sought here may seem removed from the crux of Plaintiff's allegations in his complaint as it pertains to another physician, the information could be useful in showing Dr. Jaffurs's credibility as a witness—something that will be important and central to this case. Thus, the Court finds that this information meets the relevance requirement of Rule 26. In addition, while Dr. Jaffurs argues that Plaintiff can get this information from Dr. Sundine directly, referrals that Dr. Sundine may affirmatively know about from patients does not necessarily coincide with referrals that Dr. Jaffurs may have given to patients for Dr. Sundine, if the patients chose not to follow up. Thus, such information from Dr. Jaffurs is needed to eliminate the potential of surprise to Plaintiff on this issue.

As to proportionality, Dr. Jaffurs had expressed concerns that the request for all referrals may be unduly burdensome, as it forces him to sift through years of documents. However, Dr. Jaffurs does not detail the extent of the burden—for example, it is possible that such referrals may be readily searchable through the use of online patient charts or patient portals or through searching his emails. In addition, the email to Dr. Gosman itself suggests that Dr. Jaffurs likely had certain referrals in mind when he made the statements.

Thus, the Court will **GRANT IN PART** this request and order production on this request by Dr. Jaffurs. To eliminate some of the burden, Dr. Jaffurs may limit the production to those referrals that he can recall making to Dr. Sundine and what is readily searchable from his patient charts and emails, if he wishes. However, the Court expects Dr. Jaffurs to make a good faith effort to produce on this request and cautions that it is in Dr. Jaffurs's benefit to produce more referrals, to show that despite his dislike for Dr. Sundine as a person, he put his personal feelings aside to make referrals that were in the

9

best interest of his patients. Private patient information may be redacted. In addition, Dr. Jaffurs must amend his response to this request to affirmatively state whether he is producing any referrals.

### d. Request for Production No. 61

This request seeks the following documents:

> All DOCUMENTS sufficient to show YOUR employment status from January 2015 to the present, including every entity that employed YOU, in what capacity they employed YOU, and the dates they employed YOU.

Plaintiff argues that this information regarding Dr. Jaffurs's employment is relevant because one of his affirmative defenses is that he is entitled to limited civil liability as a government employee under certain sections of the California Civil and California Government Codes. ECF No. 211 at 4, 18. Plaintiff also argues that Dr. Jaffurs's employment is relevant to his claims against CHOC because the liability theory is primarily based on agency so Dr. Jaffurs's employment status would matter there as well. *Id.* at 18-19. Plaintiff states that he would agree to limit this request to W-2 documents from Dr. Jaffurs during the time period in question in order to alleviate the burden. *Id.* at 19.

Dr. Jaffurs opposes the request because he does not believe it is in dispute that he was employed by the University of California, Irvine ("UCI"), during the relevant time period. *Id.* at 19. He points to evidence already in the case, including a sworn declaration from him in support of another motion and deposition testimony by a CHOC staff member about his employment relationship with CHOC. *Id.* at 19-20. Dr. Jaffurs also argues that the more proper venue for Plaintiff to ask about this is during his deposition, scheduled for November 20, 2018, and that he offered to submit a sworn declaration about his employment status at UCI, which Plaintiff rejected. *Id.* at 20.

The parties make compelling arguments on both sides. On balance, although there is sworn testimony regarding Dr. Jaffurs's employment status from defense witnesses, the Court understands why Plaintiff may seek neutral documentary evidence to support the

same.³ In addition, because Plaintiff has agreed that it would be sufficient for Dr. Jaffurs's to provide only his W-2 statements, the burden of production should be minimal. Accordingly, the Court will **GRANT IN PART** this request, and order Dr. Jaffurs to produce his W-2 statements that cover the relevant time period. Dr. Jaffurs may redact financial information if that information is not relevant to the issues Plaintiff has identified in response to this request. However, if Dr. Jaffurs does have a W-2 to produce from CHOC during this time period, such financial information should not be redacted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel as to the above Requests for Production are **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Dated: November 20, 2018

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
United States Magistrate Judge

---

³ Dr. Jaffurs also points to his faculty profile at the following website: https://www.faculty.uci.edu/profile.cfm?faculty_id=5596. However, this internet website does not necessarily paint the full picture as to his employment status.