UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO,<br><br>                      Plaintiff,<br><br>v.<br><br>DANIEL JAFFURS, et al.,<br><br>                      Defendants. | Case No.: 16cv1709-JAH (NLS)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS AGAINST THE REGENTS OF THE UNIVERSITY OF CALIFORNIA (UNIVERSITY OF CALIFORNIA, SAN DIEGO)**<br><br>**[ECF No. 231]** |

Before the Court is Plaintiff's motion for sanctions against the Regents of the University of California ("Regents") based on the failure to produce documents pursuant to a subpoena served on the University of California, San Diego ("UCSD") and the corresponding court order compelling production. ECF No. 231. Regents filed an opposition, and Plaintiff filed a reply. ECF Nos. 237, 242. Upon due consideration and for the reasons stated below, the Court **GRANTS IN PART** the motion for sanctions.

### I.     BACKGROUND

In his Second Amended Complaint ("SAC"), Plaintiff alleges nine causes of action against several defendants. ECF No. 169. The crux of the complaint is that Defendant

1

Daniel Jaffurs allegedly made false and defamatory statements about Plaintiff (Dr. Toranto) that prevented him from being hired at Children's Hospital of Orange County and that Dr. Jaffurs conspired with Defendant Amanda Gosman to prevent Dr. Toranto from obtaining privileges at Rady's Children Hospital ("Rady's").

On May 24, 2017, Plaintiff served a document subpoena on UCSD. ECF No. 180-1, Ex. A. UCSD employs Dr. Gosman and certain other physicians Plaintiff argues are relevant to this case. Dr. Jaffurs moved to quash the subpoena (ECF No. 98), which the Court granted in part and denied in part. ECF No. 100. However, the Court stayed the document production pending Judge Houston's ruling on another issue raised in a prior discovery dispute regarding whether the "peer review privilege" applied to this case. *See* ECF Nos. 77, 81, 82, 83. Judge Houston ruled on the "peer review privilege" issue on March 21, 2018, effectively lifting the stay. ECF No. 108.

Some documents were subsequently produced to Plaintiff, but Plaintiff believed that the production was incomplete and eventually brought a motion to compel to this Court on the issue. ECF No. 180. On September 26, 2018, the Court granted in part and denied in part that motion to compel. ECF No. 203. Relevant to this motion, the Court found that UCSD had a duty to search for and produce communications (including emails) from its employees regarding Plaintiff. *Id.* at 4. The Court noted that the parties had started this process, where Plaintiff provided a list of potential custodians, and ordered the parties to meet and confer further to complete the discovery. *Id.* at 5-6. An auxiliary issue was raised in that motion, regarding UCSD's claim that emails on its server were "inaccessible" after a set period of time. The Court ordered UCSD to identify a person most knowledgeable regarding its email system and whether any archives and/or back-up tapes exist and to make him or her available to answer any questions, should any arise during the parties meet and confer process. *Id.* at 7. If it turned out that some data would truly be irretrievable, regardless of cost and effort, the Court ordered UCSD to declare so in a sworn statement. *Id.*

Plaintiff now brings the instant motion, seeking sanctions against Regents for failing to comply with the Court's order on the motion to compel.

## II. LEGAL STANDARD

The subpoena previously served on UCSD was pursuant to Federal Rule of Civil Procedure 45, which permits a party to serve a subpoena on a non-party requesting production of documents. Fed. R. Civ. P. 45(1)(D). Under Rule 45, the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

Civil contempt has two purposes: to compel a party to obey a specific and definite court order and to compensate the party seeking compliance for the injuries that resulted from the noncompliance. *Baker v. Ensign*, No. 11-CV-2060-BAS WVG, 2014 WL 3058323, at *10 (S.D. Cal. July 3, 2014). To establish civil contempt, the moving party has the burden of showing by clear and convincing evidence that the nonparty violated a specific and definite order of the court. *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). Then, the burden shifts to the nonparty to demonstrate that it took every reasonable step to comply, and to articulate reasons why compliance was not possible. *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). In considering whether reasonable steps were taken, the court may consider the history of noncompliance and the failure to comply despite the pendency of a contempt motion. *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 857 (9th Cir. 1992). "Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense." *Id.* at 856.

## III. DISCUSSION

The Court will first address the issue of whether, to date, Regents is in compliance with the previous court order, or there remains further discovery to compel. After, the Court will turn to the appropriateness of monetary sanctions.

//
//
//

### a. Compliance with the Court's Order
#### i. Emails Regarding Jason Toranto

Plaintiff contends that Regents has failed to comply with the part of the Court's September 26 order where the Court ordered production of emails of UCSD employees regarding Plaintiff. ECF No. 203 at 4-5. The Court noted that Plaintiff had already provided a list of potential custodians and drafted a template email to start this process but UCSD never sent it out to any of the custodians. *Id.*; ECF No. 180-1, Ex. E at 28. The list included 16 named individuals and UCSD employees who were members of 4 of Rady's teams/committees.[1] *Id.* The Court ordered the parties to meet and confer and complete the production. ECF No. 203 at 5.

The exhibits submitted by the parties show that after Plaintiff first started to correspond with Regents on this issue, the first email production was made on October 24, 2018. ECF No. 237-1, Ex. A. Plaintiff's counsel subsequently inquired about which custodians were included in the production. ECF No. 231-2, Ex. B. On November 7, 2018, Regents confirmed that the production included emails from 4 of the named individuals and provided reasons that emails for 3 other named individuals were not searched.[2] ECF No. 231-2, Ex. C. Plaintiff's counsel subsequently asked for a complete list of all individuals contacted, and on November 19, 2018, Regents confirmed that was the full list. *Id*, Exs. D, E. Then, on November 26, 2018, Regents produced an

---

[1] The named individuals were: Amanda Gosman, Ralph Holmes, Daniela Carvalho, Cynthia Cardiel, George Chiang, Marek Dobke, Irvin Kaufman, Samuel Lance, Anne Wallace, Mark Talamini, Lupita Nuno, David Brenner, Marilyn Jones, Don Kikkawa, Bobby Korn, and Hal Metzer. The team/committees listed were the Rady's plastic surgery/craniofacial team, the Rady's Credentialing Committee, the Rady's executive Committee, and the Rady Well-Being Committee.

[2] Regents produced documents from Marek Dobke, Samuel Lance, Daniela Carvalho, and George Chiang. Regents stated that Ralph Holmes no longer worked for UCSD, Cynthia Cardiel was never an employee, and refused to contact Amanda Gosman as she is a separately represented Defendant in this case.

employment contract regarding Samuel Lance and in the same email, informed Plaintiff that his original list "included several names of individuals not employed by UCSD" and that the physicians contacted "were those in the plastic surgery department, or named by you in your email." ECF No. 237-2, Ex. B. The next day, Plaintiff's counsel responded, naming 7 other named individuals[3] from the original list who appeared to still work for UCSD, and asked why they were not contacted. ECF No. 231-2, Ex. H. Plaintiff states that Regents never responded to this inquiry before this motion was filed on December 11. ECF No. 231 at 6.

After the motion was filed, on December 17, 2018, Regents produced to Plaintiff another set of emails, this time including those of 7 individuals, and explained that 3 others did not have emails and she was still waiting to hear back on one other individual.[4] After receiving this production, Plaintiff's counsel followed up with Regents regarding the committees that were on his original list. ECF No. 242-2, Ex. A. This is the last email in front of the Court as to communications on this issue.

Thus, at this juncture, it appears the only issue that remains is with regards to the UCSD employees that are part of 4 teams/committees identified by Plaintiff. There does not appear to be any statement from Regents addressing these committees in any of the correspondence in front of the Court, but for the first time in its opposition, Regents states that "[w]hile plaintiff's counsel demanded that The Regents somehow find out who is on a committee at Rady's, as reflected above, the two hospitals are not affiliated and The Regents has no other way to determine who is on another company's committee, and

---

[3] Plaintiff's counsel inquired about Anne Wallace, Lupita Nuno, David Brenner, Marilyn Jones, Don Kikkawa, Bobby Korn, and Hal Meltzer, stating that they appeared to still work for UCSD according to website profiles.

[4] Regents produced documents from Marilyn Jones, Anne Wallace, Mark Talamini, David Brenner, Bryan Clary, Gaby Haddad, Marek Dobke and stated it was awaiting documents from Guadalupe Nuno. Regents stated that Bobby Korn, Don Kikkawa, and Hal Meltzer did not have responsive emails.

who may also happen to have privileges at UC San Diego, other than by sending a request to the physicians associated with UC San Diego, which was done." ECF No. 237 at 4. Plaintiff counters Regent's position, arguing that there was no evidence presented through the discovery process that any inquiry was made to all physicians associated with UCSD about whether they were on the relevant committees, and that the relationship between UCSD and Rady's is actually so intertwined that it would not take much effort for UCSD to determine the membership of the Rady's committees and teams. ECF No. 242 at 6-7.

In framing this issue, the Court finds it useful to focus on what discovery was actually ordered in its September 26 order—the requests for production in question related to documents, including emails, relating to Plaintiff and his application for privileges. ECF No. 203 at 3. The Court found that responsive emails from UCSD's current employees were to be considered in the "possession, custody, or control" of UCSD, and therefore needed to be searched and produced. *Id.* at 4-5. The Court reiterated that "[a] reasonable inquiry involves, at a minimum, a reasonable procedure to distribute discovery requests to all employees and agents of the [party] potentially possessing responsive information, and to account for the collection and subsequent production of the information to [the requesting party]." *Id.* at 5 (citation omitted). Thus, the original list provided by Plaintiff was a means for the parties to identify potential custodians who might have relevant emails to facilitate this broader discovery—the list was not in the actual text of any discovery request propounded by Plaintiff.

Against this background, the Court's previous order placed an obligation on Regents to produce emails from its current employees related to Plaintiff. As such, Regents cannot use the justification that it may not know the identity of its employees who are on the named Rady's teams/committees to relieve itself of the obligation—the obligation is on Regents to find and produce all relevant emails from any employee. And notably, Regents does not argue that physicians who would be on those committees

would definitively have no relevant documents.  Thus, the Court finds that Regents has not fully complied with its previous order and will order further compliance.

In its opposition, Regents stated that it "has no other way to determine who is on another company's committee, and who may also happen to have privileges at UC San Diego, other than by sending a request to the physicians associated with UC San Diego, which was done." ECF No. 237 at 4.  This statement is perplexing, because if it was done, it would appear that Regents should have the information regarding which of its physicians were on the committees.  Regardless, if this was done, the Court **ORDERS** Regents to provide Plaintiff with the information about what physicians were contacted, when they were contacted, what committees they were asked about, and what physicians responded in the affirmative about any of the committees inquired about, **within 7 days** of this order.  If any physicians responded in the affirmative regarding any committee, Regents must either confirm any responsive documents from those physicians were produced already or produce responsive documents from those physicians **within 14 days** of this order.

If this was not done, then Regents is still under court order to complete this discovery in some other manner.  Plaintiff suggests that Regents should be able to determine the membership of the committees with reasonable effort.  If Regents finds that this is a preferable way to complete this discovery, it should provide Plaintiff with a list of all physicians that are UCSD employees who are on any of the committees/teams identified by Plaintiff **within 7 days** of this order.  Then, Regents is ordered to produce relevant documents from these identified individuals **within 14 days** of this order.  Alternatively, if Regents truly cannot identify the members of the committees with reasonable effort, then it may determine an alternate way to complete this discovery.  Conceivably, at the extreme, Regents could ask every employee to run a search for emails to Plaintiff.  In this scenario, Regents is ordered to initiate a meet and confer with Plaintiff **within 7 days** of this order, to jointly develop an alternative plan for completing

this discovery. Regents must execute on the plan developed such that documents can be produced **within 14 days** of this order.

### ii. Sworn Declaration Regarding Accessibility

Plaintiff also argues that the Court's order required Regents to provide a sworn declaration from a person most knowledgeable because some data from its email servers are truly irretrievable. Regents disputes that this was required and regardless, states that it has complied by providing the declaration.

The parties are in agreement as to most of the factual background to this issue. After the Court's order, on October 23, 2018, UCSD's counsel arranged a call between Plaintiff's counsel and its person most knowledgeable, Ken Wottge. ECF No. 231 at 3. On the call, Mr. Wottge explained that UCSD's system retains email back-up for 30 days only. *Id.*; *see also* ECF No. 231-2 at A2. However, if a litigation hold is put in place, then a command is issued so that the email would be saved. ECF No. 231 at 3. Thus, Plaintiff argues that what data is truly "irretrievable" may depend on what litigation holds were put into place and when. *Id.*

Subsequent email communications between the parties shed some light into Plaintiff's further efforts to find out more. On November 5, 2018, Plaintiff's counsel emailed Regent's counsel, asking about when litigation holds were issued. ECF No. 231-2 at B9. On November 6, 2018, Plaintiff's counsel requested "a sworn statement from UCSD regarding the irretrievability of documents prior to [date]," noting that the date will depend on when the servers were searched. *Id.* On November 13, 2018, Plaintiff's counsel again asked about the declaration. *Id.* at C12. Plaintiff's counsel followed up again on November 16, November 19, and November 20. *Id.*; *id.* at F23. On November 26, 2018, Regent's counsel responded "I will provide you with a declaration from Ken Wottge, the IT person at UCSD, which will provide you with the same information Mr. Wottge provided to [Plaintiff's counsel on the call]." *Id.* at G28. It does not appear that there were any further communications between the parties on this issue until this instant motion was filed on December 11. After this motion was filed, on December 17, counsel

for Regents again informed Plaintiff's counsel that a declaration from Mr. Wottge was forthcoming and would include the same information as he stated in the previous phone call. ECF No. 237-2 at C81.

The declaration was provided to Plaintiff on December 20. ECF No. 237-2 at D122. The declaration was two pages and contained the following statement regarding the email back-ups: "Presently, our system has retained back-up for our e-mail system for 30 days. The purpose of the back-up is to ensure we can restore functionality to its current, usable state." *Id.* at D124. Mr. Wottge also stated "Individuals can chose [sic] to archive e-mail messages, but there is no way for us (UC San Diego Health Information Security) to search from a centralized point the individual's e-mail archives." *Id.* at D125.

Regents argues that it should not be subject to sanctions because it has now produced the declaration. Furthermore, Regents appears to suggest that it believed that the October 23, 2018 telephone call with Mr. Wottge was sufficient to satisfy Plaintiff and that it was not aware that the declaration would be necessary. On the other hand, Plaintiff reiterates that the declaration was required by the Court's order explicitly and points out that the declaration was not proffered until after he filed this motion. Moreover, Plaintiff argues that the declaration is still unclear as to what exact documents are irretrievable for this case.

As a threshold issue, the Court finds that Regents should have been aware that a declaration is required in this case. The Court's order stated that "if by 'inaccessible,' Regents truly means that the data is irretrievable, regardless of cost and effort, it must declare so in a sworn statement." ECF No. 203 at 7. Mr. Wottge's declaration seems to suggest that at least some emails that would have been responsive are no longer available, given that this litigation has been ongoing for over two years and the retention period is only 30 days. Moreover, even if Regents believed the call with Mr. Wottge was sufficient, the latter communications with Plaintiff's counsel regarding the declaration should have alerted Regents of its obligation to provide the declaration.

9

Upon review of the declaration that has now been provided, the Court agrees with Plaintiff that it is not sufficient. In the Court's September 26, 2018 order, the issue raised was whether any emails that would otherwise be responsive to Plaintiff's discovery requests might be now irretrievable because UCSD systematically deleted emails past a certain deadline.[5] Thus what is central to this issue is what emails—as relevant to this case—may now be irretrievable. While Mr. Wottge's declaration states generally that emails are only kept in the back-up system for 30 days, it is silent as to whether any exceptions may apply to this case. It seems to the Court that at least the following questions need to be answered as related to this issue. First, whether there was a litigation hold issued for this case that would have overridden the 30-day retention policy. Plaintiff states that his counsel was told a hold was issued on June 20, 2018 but was never provided verification. ECF No. 242 at 5 n.5. Second, whether any prior searches were run centrally at a time when certain emails were available and within the 30-day retention policy. If any searches were run, what happened to the documents that produced a hit—whether they were produced or if they are still accessible.

Thus, the Court **ORDERS** Regents to produce a supplemental declaration—whether from Mr. Wottge or another person knowledgeable on the issues—to provide the following information: (1) the dates any litigation holds were put in place for this case, or if none ever were, to affirmatively state so; (2) the dates and search options used to perform any centralized searches of UCSD's email servers associated with this case, or if no searches were run, to affirmatively state so; (3) if searches were run, whether the documents that produced a hit were produced and/or are still accessible; and (4) provide

---

[5] In the previous motion, Regents represented that the deadline was 6 months, though Mr. Wottge now claims that it is only 30-days. Regents states that what Mr. Wottge says is accurate and explains that the discrepancy arises from "software which has been used by UC San Diego was no longer supported by the manufacturer, and, therefore, e-mails are now only maintained for 30 days." ECF No. 237 at 5 n.1

10
16cv1709-JAH (NLS)

exact dates for which emails related to this case could still be searched centrally.[6] The supplemental declaration shall be provided **within 14 days of this order**.

### b. Monetary Sanctions

Having found that further discovery is needed and that Regents has not fully complied with the Court's previous order, the Court must now determine whether monetary sanctions are appropriate. The Courts finds that the discovery conduct here warrants some monetary sanctions.

At the outset, the Court notes that Plaintiff was forced to file his initial motion to compel in order to have UCSD search for documents. ECF No. 180. After the Court issued an order on that initial motion on September 26, 2018, Regents was under an obligation to produce the documents discussed in the order. It appears that Regents did not communicate with Plaintiff until his counsel finally reached out via email on October 13, 2018. *See* ECF No. 231-2. The Court's previous order explicitly required the parties to meet and confer to jointly determine the best way to complete the discovery that was ordered—this was not even attempted for over two weeks after the Court's order. The reason the Court ordered the meet and confer was precisely so the parties could devise a plan to complete the discovery and to avoid the situation the parties now face—where the discovery has been pending for weeks with no clarity as to what custodians were contacted or what exact searches were run.

The parties were engaged in many email exchanges prior to the filing of this motion and the production of the declaration and additional emails. The efforts expended in these discovery correspondences and meet and confers are unfortunately a necessary expenditure in most contentious litigation, such as this one. However, here, Plaintiff had

---

[6] According to Mr. Wottge's declaration, it seems that individual emails could also be archived by individuals but there is no centralized way to search their archives. The declaration ordered by the Court here focuses on what emails could be searched centrally by UCSD. The custodial search was previously discussed in this order.

11

to take the additional step of filing this motion in order to receive the declaration and additional emails from Regents. And while Regents may argue that the declaration and additional emails were forthcoming, the Court cannot fault Plaintiff for filing the motion, in light of the discovery history related to this subpoena and the schedule in this case—which was quickly moving past fact discovery and into expert discovery.

Furthermore, even after the motion was filed, Regents has not provided to the Court any reason for the delay or explained that it took every reasonable step to complete the discovery in a judicious manner. *See Donovan*, 716 F.2d 1240 (party facing sanctions should demonstrate that it took every reasonable step to comply and to articulate reasons why compliance was not possible). Accordingly, the Court will award some monetary sanctions but, at this time, will limit the sanction to only the fees Plaintiff expended in order to draft and file this motion and the reply.[7] Within **14 days of this order**, Plaintiff shall submit to the Court an itemized bill of the expenses incurred in preparing for and filing this motion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for sanctions is **GRANTED IN PART**.

**IT IS SO ORDERED.**

Dated: February 8, 2019

Hon. Nita L. Stormes
United States Magistrate Judge

---

[7] The Court cautions Regents, however, that because further discovery has been ordered here, any future noncompliance will result in more severe sanctions.