UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO,<br><br>                       Plaintiff,<br>v.<br>DANIEL JAFFURS, et al.,<br><br>                      Defendants. | Case No.: 16cv1709-JAH (NLS)<br><br>**ORDER AWARDING FEES TO PLAINTIFF** |

The Court previously issued an order granting in part Plaintiff's motion for sanctions against the Regents of the University of California ("Regents") based on the failure to produce documents pursuant to a subpoena and the corresponding court order compelling production (*see* ECF No. 203). ECF No. 247. The Court granted limited monetary sanctions and ordered Plaintiff to submit an itemized bill of the expenses. *Id.* at 12. Pursuant to this order, Plaintiff's counsel submitted a declaration regarding the fees and costs incurred. ECF No. 256. Defendants then filed objections to Plaintiff's submission. ECF No. 258. Upon due consideration and for the reasons stated below, the Court awards monetary sanctions against Regents in the amount of $10,400.

## I. Legal Standard

Since the Court has already found that monetary sanctions are warranted, the only question that remains is what amount is appropriate. In the Ninth Circuit, courts

customarily calculate awards for attorneys' fees using the "lodestar method." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The lodestar is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148 n.4 (9th Cir. 2001)); *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008). The lodestar figure is presumptively reasonable, though the court may adjust the lodestar to account for other factors not subsumed within it. *Camacho*, 523 F.3d at 978; *cf. Mendez*, 540 F.3d at 1129 (noting that, though the lodestar rate is presumptively reasonable, "a court may make the adjustments it finds are warranted based on the record before it" such as reducing the award for unnecessarily duplicative work).

"This Circuit requires that courts reach attorneys' fee decisions by considering some or all of twelve relevant criteria set forth in *Kerr*[.]" *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)). The court is not required to discuss each of the criteria, so long as it discusses those most relevant to the particular case. *Id.*

> The *Kerr* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 539 n.1. The court must "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court considers the most relevant criteria in its analysis below.

//

//

## II. Discussion

Plaintiff's submission requests a total of $17,489.00 in attorney fees as the appropriate monetary sanction. The amount consists of hours expended by three attorneys, with the hours distributed as follows:

(1) Kenneth Fitzgerald (2.1 hours): Mr. Fitzgerald is a partner who has been practicing law since 1989 and bills out at a rate of $795. *See* ECF No. 256 at ¶ 2. The hours Mr. Fitzgerald expended on the motion consists of conferring and emailing with the other attorneys on the motion and reviewing and revising the draft motion. *Id.*, Ex. A.

(2) Robert Knaier (1.8 hours): Mr. Knaier is a partner who has been practicing law since 2003 and bills out at a rate of $795. *Id.* at ¶ 3. The hours Mr. Knaier expended on the motion consists of conferring and emailing with the other attorneys on the motion and reviewing and commenting on the draft motion. *Id.*, Ex. A.

(3) Howard Wu (28.2 hours): Mr. Wu is an associate who has been practicing law since 2010 and bills out at a rate of $490/$525. *Id.* at ¶ 4. Mr. Wu had the primary responsibility for drafting the motion, including conducting research, drafting the motion, finalizing the motion for filing, and conferring and emailing internally about the motion and with the client and opposition counsel regarding the same. He reported spending 11.9 hours on the motion, 1.8 hours conferring with the client and opposing counsel, and 14.5 hours on the reply brief. *Id.*, Ex. A.

Plaintiff's counsel submit that they are in an "alternative fee arrangement" with Plaintiff that has a "contingent fee component" so are making their fee request based on their customary billing rates. *Id.* at ¶ 2.

Regents objects to several aspects of the requested fees. First, Regents argues that the Court's order expressly "limit[ed] the sanction to only the fees Plaintiff expended in order to draft and file this motion and the reply." ECF No. 247 at 12. Therefore, Regents

asks the Court to discount hours spent on "inter-office conferences between plaintiff's counsel, plaintiff's counsel's conferences with defense counsel, plaintiff's counsel conferences with their client (plaintiff), and/or unspecified emails between plaintiff's counsel, their client (plaintiff) and/or defense counsel." ECF No. 258 at ¶ 1. However, these tasks do not fall within the exclusion previously contemplated by the Court in its order. The Court previously explained that it would not include "efforts expended in these discovery correspondences and meet and confers are unfortunately a necessary expenditure in most contentious litigation, such as this one," ECF No. 247 at 11, but the items Regents objects to here are not discovery correspondences or meet and confers about discovery. Rather, they appear to be conferences and communications "regarding" the motion to compel itself, as explicitly stated in the time entries. *See* ECF No. 256, Ex. A. The entry on January 4, 2019 referencing a phone call and email with Regents counsel does mention "outstanding discovery issues" but because Regents produced additional documents after the motion to compel was filed but before the briefing was completed, issues related to that cannot be said to be outside the scope of the motion to compel. Thus, the Court does not find it appropriate to dismiss these entries.

Second, Regents objects to Plaintiff's counsel's billing rates. ECF No. 258 at ¶ 5. Regents appears to argue that the rates are excessive in light of what it pays it own counsel, as a public entity who only employs attorneys at a defense panel rate, and in light of the complexity of the motion. *Id.* Regents also argues that the billing rates are not what Plaintiff will actually pay his counsel because of the partial contingent fee arrangement. *Id.* at ¶ 4. When it comes to what is an appropriate billing rate, the party seeking fees bears the burden of demonstrating that the rates used are in line with the prevailing market rate of the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014). The court may also, in its discretion, rely on its own knowledge and experience with the legal market. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Typically, the "relevant community" is "the forum in

4

16cv1709-JAH (NLS)

which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, in support of the billing rates requested, Plaintiff's counsel provides the following statement in his affidavit:

> I have practiced in the San Diego legal community for nearly 30 years, and my practice has included prosecuting and defending numerous complex litigation cases in this Court. I have obtained attorneys' fee awards in many cases, and I have litigated contested fee applications in those cases. I have also provided testimony regarding the reasonableness of hourly rates sought by other lawyers in the community handling business litigation matters. I regularly review fee applications, fee awards in state and federal courts, and hourly rate surveys, in order to assess what hourly rates have been found reasonable by courts in this community for litigation disputes. Finally, I receive information from clients about rates they are charged by other lawyers for litigation services. As a result, I am familiar with the billing rates for complex commercial litigation services of attorneys of comparable education, skill, experience, and reputation as those at my firm. The customary billing rates charged by Fitzgerald Knaier LLP are consistent with the rates charged for complex litigation services by lawyers in the San Diego legal community of comparable skill, experience, and reputation, particularly with respect to attorneys at national or international law firms. Our hourly rates are lower than those charged by such lawyers at national or international law firms, and comparable to or slightly higher than those typically charged by such lawyers at smaller, local law firms.

ECF No. 256 at ¶ 5. Plaintiff's counsel has not provided any further evidence or any case citations as to comparable rates. Regents does not counter these rates with evidence of the prevailing rates in the marketplace either—rather, Regents argues that the Court should employ the rates that they pay their attorneys, $285 per hour. ECF No. 258 at ¶ 5. While the Court appreciates that Regents only utilizes attorneys at its defense panel rate due to being a public entity, the rate does not necessarily dictate the prevailing market rate. Thus, the Court will independently review recent fee awards in the Southern

District of California to determine if the billing rates Plaintiff requests are reasonable. Plaintiff's counsel attended well-known and respected law schools, served as law clerks, and all practiced previously at an international law firm, and request rates of $490-$525 for a senior associate and $795 for partners. *See* ECF No. 256 at ¶¶ 2-4. While not too far outside, the Court does find that these rates fall on the higher end of the scale for rates that have been approved by courts in this district. *See, e.g.*, *G & G Closed Circuit Events, LLC. v. Flores*, No. 3:18-CV-00378-L-RBB, 2018 WL 6504118, at *2 (S.D. Cal. Dec. 11, 2018) (finding reasonable rates in the ranges of $450-$750); *Flowrider Surf, Ltd. v. Pac. Surf Designs*, *Inc.*, No. 15CV1879-BEN (BLM), 2017 WL 2212029, at *3 (S.D. Cal. May 18, 2017) (awarding $750 for partner's services and $550 for senior associate's services); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-CV-595-BAS-MDD, 2016 WL 1573319, at *2 (S.D. Cal. Apr. 18, 2016) (approving of partner rates $625-725 and associate rate of $400); *Makaeff v. Trump Univ.*, LLC, No. 10CV0940 GPC WVG, 2015 WL 1579000, at *4 (S.D. Cal. Apr. 9, 2015) (approving of rates $250 to $440 for associates and $600 to $825 for partners). Accordingly, the Court will apply a small reduction to the requested rates to bring them more inline with what is customary in the San Diego community: a $700/hour rate for Messrs. Fitzgerald and Knaier and a $450/hour rate for Mr. Wu.

As to Regents' argument regarding the contingent fee arrangement, courts have suggested that where it is difficult to determine an hourly rate, it is appropriate to use the market rate, as the Court has analyzed above. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) ("Recognizing the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements, we have advised district courts to rely on the 'next best evidence' of an attorney's market rate, namely 'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases.'"); *People Who Care v. Rockford Bd. of Educ.*, Sch. Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996) (holding same). Accordingly, the Court will not reduce the rates further based on the

contingent fee structure.

Third, Regents objects to the hours actually claimed for drafting the motion to compel and the reply as excessive. Regents argues that Mr. Wu's time entries combine "research" with "drafting" and these entries should be discounted because the motion to compel was mostly factual and should not have required much legal research. ECF No. 258 at ¶ 3. Also, Regents argues that it was unreasonable for the reply brief to have taken more time to draft than the opening brief. *Id.* Bearing these arguments in mind, the Court will also consider the substance of the motion in light of other *Kerr* factors, including the time and labor required by the motion, the novelty and difficulty of the questions involved, and the results obtained. The Court agrees with Regents that the motion was mostly factual—the issues at the heart of the dispute were what documents were produced compared to what was required by the Court's previous September 26, 2018 Order. *See* ECF No. 203. Beyond setting forth the legal standard for contempt, the motion did not appear to involve detailed case law analysis from either side. However, the Court does not find that a significant reduction in hours is warranted. While no detailed legal analysis was required, the motion did involve a lengthy factual review of the timeline of discovery correspondences to set up the argument as to compliance or lack thereof.

The Court also does not find that the Regents' other arguments warrant a significant reduction either. Because documents were produced after the opening brief was filed but before the opposition and reply briefs, the Court does not find it necessarily unreasonable that the reply brief may have taken longer than the opening brief, as Plaintiff would need to construct new arguments in response to the new production in the reply brief. And Plaintiff did here, arguing that the additional production still did not put Regents in full compliance with the Court's previous order. As for the results obtained, while the motion was granted "in part," Plaintiff did receive essentially the relief requested since the documents produced during briefing changed the relief requested and the Court ultimately concluded that the new production was still not sufficient.

7

Considering all these factors, the Court finds it appropriate to apply a small downward adjustment to the hours that Plaintiff seeks for the motion to compel. For Mr. Wu, who had the primary responsibility for drafting the motion and reply, the Court finds it appropriate to award 10 hours of attorney time for each of the opening and reply briefs, for a total of 20 hours and a total of $9000 based on the hourly rate of $450 discussed above. For Messrs. Fitzgerald and Knaier, who appear to have primarily provided consultation and review of the motion, the Court finds it appropriate to award 1 hour each of attorney time for these tasks given the scope of the motion, for a total of $1400 based on the hourly rate of $700 each as discussed above. Thus, the total award is $10,400.

## III. Conclusion

For the reasons states above and pursuant to the Court's previous February 8 order (ECF No. 247) granting monetary sanctions to Plaintiff, the Court **ORDERS** Regents to pay $10,400 to Plaintiff, which constitutes Plaintiff's reasonable attorneys' fees incurred due to Regent's failure to comply with the Court's September 26, 2018 discovery order (ECF No. 203).

**IT IS SO ORDERED.**

Dated: March 22, 2019

*/s/ Nita L. Stormes*

Hon. Nita L. Stormes
United States Magistrate Judge