UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON TORANTO,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>DANIEL JAFFURS, et al.,<br><br>　　　　　　　　　Defendants. | Case No. 16cv1709-JAH (NLS)<br><br>**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Doc Nos. 275, 288, 289, 291)** |

**INTRODUCTION**

Pending before the Court are Defendants Children's Hospital of Orange County ("CHOC"), Children's Hospital of Orange County Medical Staff ("CHOC Medical Staff"), Dr. Amanda Gosman and Rady Children's Hospital-San Diego ("Dr. Gosman and Rady's"), and Dr. Daniel Jaffurs' ("Dr. Jaffurs") Motions for Summary Judgment. See Doc. Nos. 275, 288, 289, 291. Plaintiff Dr. Jason Toranto ("Plaintiff" or "Dr. Toranto") filed responses in opposition. See Doc. Nos. 305, 311, 320. The Motions are fully briefed. After careful consideration of the pleadings filed by all parties, and for the reasons set forth below, this Court **DENIES** Defendants' Motions for Summary Judgment.

**FACTUAL BACKGROUND**

Dr. Toranto is a pediatric plastic surgeon and craniofacial surgeon. Doc. No. 263 at pg. 2. Dr. Toranto and Dr. Jaffurs are former colleagues from previous employment at the

1

UC Irvine School of Medicine ("UCI") and later, Children's Hospital of Orange County ("CHOC"). Id. Dr. Toranto alleges that Dr. Jaffurs made false and defamatory statements that caused CHOC Pediatric Subspecialty Faculty (the "CHOC Foundation") to deny Dr. Toranto an employment opportunity. Id. Dr. Toranto alleges that after he moved to San Diego, Dr. Jaffurs acted in concert with Dr. Amanda Gosman, the Chief of Plastic Surgery at Rady Children's Specialists of San Diego and UCSD, and continued to make false and defamatory statements to Rady Children's Hospital, Rady Children's Specialists of San Diego (the "Rady Foundation"), and the University of California, San Diego ("UCSD"). Id. at pg. 3. In addition, Dr. Toranto alleges that Dr. Maria Minon, the Chief Medical Officer at Children's Hospital Orange County, acted within the scope of her employment when making false oral statements to Rady's Children's and the Rady Children's Medical Staff. Id. at page 16, 50. Dr. Toranto alleges that Rady Children's Hospital denied his application without speaking to or meeting with him, and without going through an objective peer review process to assess his qualifications. Id. at pg. 4.

Dr. Toranto brings this case against Defendants, alleging seven causes of action: (1) conspiracy in restraint of trade; (2) monopoly; (3) retaliation pursuant to California Business & Professional Code §§ 510-512; (4) defamation; (5) violation of Labor Code § 1050 et seq.; (6) tortious interference with prospective economic advantage; and (7) unfair competition. See Doc. No. 263.

## PROCEDURAL BACKGROUND

On July 1, 2016, Dr. Toranto filed his initial complaint against CHOC Medical Group, CHOC Medical Staff, Children's Hospital of Orange County, Dr. Gosman, Dr. Jaffurs, The Regents of the University of California, and various Rady entities. See Doc. No. 1. On August 15, 2016, Dr. Toranto filed an amended complaint. See Doc. No. 21. Rady's filed a motion to dismiss on September 1, 2016, and Dr. Jaffurs filed a motion to dismiss on September 13, 2016. See Doc Nos. 21, 32. On March 21, 2018, this Court issued an Order GRANTING in part and DENYING in part Defendants' motions to dismiss. See Doc. No. 107. Dr. Toranto filed a Second Amended Complaint on July 25,

2

2018 and a Third Amended Complaint on March 11, 2019. See Doc. Nos. 169, 263. On March 21, 2019, Children's Hospital of Orange County filed an Amended Motion for Summary Judgment. See Doc. No. 275. On April 15, 2019, Dr. Gosman and Rady's filed a Motion for Summary Judgment. See Doc. No. 288. On April 15, 2019, Dr. Jaffurs filed a Motion for Summary Judgment. See Doc. No. 289. On April 15, 2019, CHOC Medical Staff filed a Motion for Summary Judgment. See Doc. No. 291. Plaintiff filed a response in opposition to Rady Defendants' Motion for Summary Judgment on June 3, 2019. See Doc. No. 305. On June 4, 2019, Plaintiff filed a response in opposition to CHOC and CMS Defendants' Motion for Summary Judgment. See Doc. No. 311. Plaintiff filed a response in opposition to Defendant Dr. Jaffurs' Motion for Summary Judgment on June 10, 2019. See Doc. No. 320.

**DISCUSSION**

I. **Legal Standard**

Summary judgment is only appropriate when no genuine dispute of material fact exists. Irdeto Access, Inc. v. Echostar Satellite Corp., 383 F.3d 1295, 1299 (Fed. Cir. 2004), quoting Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

A fact is material when, under the governing substantive law, it could affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden or proof at trial. Id. at pgs. 322-23.

Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating "there is an absence of evidence to support the non-moving party's case." Id. at pg. 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the nonmoving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497 U.S. at 885 (quoting Celotex, 477 U.S. at 323). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). "The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court need not "scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); see Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.

//
//
//
//

## II. Analysis

The Court will first address CHOC and CHOC Medical Staff's Motions. CHOC Medical Staff makes the same arguments as CHOC. See Doc. No. 291-1. The Court will then address the Motion filed by Dr. Gosman and Rady's, followed by the Motion filed by Dr. Jaffurs.

### a. CHOC and CHOC Medical Staff

#### i. Agency and Respondeat Superior

CHOC argues that California law prevents lay organizations from exercising control over decisions made by physicians. Doc. No. 275-1 at pgs. 18-19. CHOC contends that the medical staff, not the hospital, controls the hiring of physicians. Id. at pg. 19. CHOC argues that respondeat superior does not apply here because one could not reasonably conclude, based upon the evidence, that Dr. Toranto was a CHOC employee. Id. at pgs. 21-24. CHOC further argues that it did not supervise Dr. Toranto, did not pay him, and never created an employer-employee relationship. Id. at pg. 24. CHOC contends that Dr. Jaffurs was never an agent of CHOC. Id. at pg. 29. CHOC argues that Dr. Toranto does not allege that Dr. Jaffurs' unlawful conduct was authorized or ratified by CHOC. Id. at pg. 30. CHOC argues that the "gravamen of [Dr. Toranto's] claims against CHOC is the conduct of Jaffurs, not CHOC."

In response, Dr. Toranto argues that Dr. Jaffurs represented himself as CHOC's agent, and CHOC assented to this representation through silence. Doc. No. 311 at pg. 18. Dr. Toranto contends that Dr. Jaffurs "exercised apparent authority as CHOC's Medical Director of Plastic Surgery when he deprived Plaintiff of clinic time at CHOC." Id. Dr. Toranto asserts that by delegating responsibilities for peer review activities to its medical staff, the hospital impliedly makes the medical staff its agent. Id. at pgs. 18-19. Dr. Toranto contends that Dr. Jaffurs and Dr. Minon are also agents of CHOC Medical Staff. Id. at pgs. 19-20. Dr. Toranto asserts that Dr. Jaffurs, as the Section Chief of Plastic Surgery, designated himself as an agent of the CHOC Medical Staff. Id. at pg. 20. Dr. Toranto contends that among Dr. Jaffurs' other duties, his responsibilities as Section Chief

included acting as a presiding officer at section meetings, participating in the administration of the section, and launching investigations into the clinical privileges of section members. Id. Dr. Toranto argues that Dr. Minon, as Vice President of Medical Affairs and Chief Medical Officer at CHOC, was also an agent of CHOC. Id. Dr. Minon was appointed by CHOC's CEO and served as an administrative liaison between hospital administrators. Id. Dr. Toranto argues that both Dr. Jaffurs and Dr. Minon were empowered and subject to removal from their positions by the CHOC bylaws. Id. Dr. Toranto argues thus, Dr. Jaffurs and Dr. Minon's communications with Rady's Hospital were done as agents on behalf of CHOC and CHOC Medical Staff. Id. at pgs. 20-24.

### ii. Professional Review

CHOC asserts that the Health Care Quality Improvement Act creates immunity from damages liability for professionals who participate in peer review activities. See Doc. No. 275-1. CHOC also asserts that the standard for such immunity covers all professional review action taken in the following situations:

"(1) in the reasonable belief that the action was in the furtherance of quality health care, (2) after reasonable effort to obtain the facts of the matter, (3) after adequate notice and hearing procedures are afforded to the physician or after such other procedures as are fair to the physician under the circumstances; and (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirements of paragraph 3." Id. at pgs. 19-20

CHOC contends that California law extends immunity to "communications made in the initiation or course of any proceedings authorized by law such as peer review/credentialing proceedings." Id. at pg. 20. CHOC asserts that California law also extends immunity to "any communication which is not a lie and is intended in good faith to aid in the evaluation of the qualifications, fitness, and/or character of a physician." Id. at pg. 21. Id. at pg. 40. CHOC contends that California law extends immunity to "communications made in the initiation or course of any proceedings authorized by law such as peer review/credentialing proceedings." Id. at pg. 20.

Dr. Toranto argues whether Rady's Hospital engaged in a "sham peer review" and the applicability of civil immunities are both contested questions of fact. Doc. No. 311 at

pgs. 24-29. Dr. Toranto asserts that the his peer review lasted 840 days compared to the average of 75 days. Id. at pg. 24. Dr. Toranto contends that the fact that Rady's requested a peer reference from someone not provided by Dr. Toranto, failing to recuse peer reviewers with biases against Dr. Toranto, and disproportionately weighing negative comments about Dr. Toranto all serve as evidence for his contention that the professional review was a sham peer review. Id. at pgs. 24-25. Dr. Toranto argues that civil immunities do not apply because there is evidence that shows CHOC knew such information "was false or otherwise lacked a good faith intent," and CHOC acted with "malice." Id. at pgs. 25-27.

### iii. Conspiracy and Restraint of Trade

CHOC argues that Dr. Toranto has always had full medical staff privileges at CHOC. Doc. No. 275-1 at pg. 39. CHOC contends that Dr. Toranto has never experienced any restraint at CHOC and can still admit and care for his patients at CHOC. Id. CHOC asserts that there is no evidence of conspiracy and Dr. Toranto's antitrust conspiracy and injury assertions are without merit. Id.

In response, Dr. Toranto asserts that there is ample evidence showing that Dr. Gosman expressly asked Dr. Jaffurs, and Dr. Jaffurs agreed, to offer negative information about Dr. Toranto so Rady's could deny Dr. Toranto's application. Doc. No. 311 at pg. 30. Dr. Toranto asserts that Dr. Jaffurs agreed to solicit negative information about Dr. Toranto from people at UC Irvine and CHOC and provide such information to Rady's. Id. Dr. Toranto contends that Dr. Minon joined in the conspiracy by proffering false and negative statements about Dr. Toranto to Rady's CMO, Irvin Kaufman. Id. Dr. Toranto argues that CHOC and CHOC Medical Staff are liable for the actions of Dr. Jaffurs and Dr. Minon under the doctrines of agency and respondeat superior. Id.

### iv. Retaliation

CHOC argues that Dr. Toranto's retaliation claim is dependent on the existence of an employment relationship. Doc. No. 275-1 at pg. 40. CHOC asserts that it has never employed Dr. Toranto or Dr. Jaffurs. CHOC contends that Dr. Toranto is not a third party

7

whom an employer retaliated, but rather Dr. Toranto is someone who allegedly suffered retaliation by someone, Dr. Jaffurs, who was not an agent of CHOC. Id.

In response, Dr. Toranto argues that CHOC's argument relies on the assumption that Dr. Jaffurs was not an agent of CHOC or CHOC Medical Staff. Doc. No. 311 at pg. 31. Dr. Toranto contends that whether Dr. Jaffurs was a CHOC agent is a disputed question of fact. Id. at pg. 32.

### v. Defamation and Tortious Interference

CHOC contends that Dr. Toranto's defamation and tortious interference claims are premised on the liability of Dr. Jaffurs and not CHOC. Doc. No. 275-1 at pgs. 40-41.

In response, Dr. Toranto argues that CHOC and CHOC Medical Staff's Motions regarding Dr. Toranto's defamation and tortious interference claims rely on the assumption that Dr. Jaffurs is not an agent of CHOC, a disputed question of fact. Doc. No. 311 at pgs. 32-34.

### vi. Unfair Competition

CHOC argues that there is no evidence that suggests CHOC was in competition with Dr. Toranto. Doc. No. 275-1 at pg. 41.

In response, Dr. Toranto contends that CHOC's argument relies on the assumption that Dr. Jaffurs was not an agent of CHOC. Doc. No. 311 at pgs. 34-35.

The Court finds for Plaintiff. If the moving party in a motion for summary judgment meets its initial burden, the nonmoving party must produce admissible evidence showing that a genuine issue of material fact exists. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (citing FED. R. CIV. P. 56(e)) (internal quotations omitted). If the nonmoving party

fails to make this showing, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. The Court finds that Plaintiff has made this showing. Plaintiff makes references to specific instances where Dr. Jaffurs and Dr. Minon plausibly held themselves out to be agents of CHOC. Doc. No. 311 at pgs. 17-20. The Court finds that whether Drs. Jaffurs and Minon acted as agents of CHOC and CHOC Medical Staff is a genuine issue of material fact. In addition, Plaintiff provides numerous instances in support of the notion that Rady's Hospital performed a sham peer review. Id. at pgs. 24-25. Plaintiff demonstrates that Dr. Jaffurs, acting as an agent of CHOC and CHOC Medical Staff, either knew such information was false, lacked good faith intent, or potentially acted with actual malice. The Court finds that these facts, along with the applicability of civil immunities, are genuine issues of material fact suitable for trial. Accordingly, Defendants CHOC and CHOC Medical Staff's Motions for Summary Judgment are **DENIED**.

### b. Dr. Amanda Gosman and Rady's
#### i. Conspiracy in Restraint of Trade and Monopoly

Dr. Gosman and Rady's contend that in order for Dr. Toranto to establish causes of action for conspiracy and monopoly under the Sherman Act, Dr. Toranto needs to establish that plaintiff and defendants were competing in the same relevant product market, and Dr. Toranto fails to do so. Doc. No. 288-1 at pgs. 16-21. Dr. Gosman and Rady's argue that the alleged anticompetitive conspiracy between Dr. Gosman and Dr. Jaffurs makes no economic sense because Dr. Gosman practices medicine in San Diego while Dr. Jaffurs practices medicine in Orange County. Id. at pg. 23. Dr. Gosman and Rady's contend that Dr. Toranto does not provide any reasoning as to why two doctors practicing medicine in two different geographic markets would agree to restrain trade. Id. at pgs. 23-24. Dr. Gosman and Rady's argue that Dr. Toranto has not offered any evidence that shows either Dr. Jaffurs or Dr. Minon had the authority to deny Dr. Toranto access to the relevant market. Id. at pg. 24. Dr. Gosman and Rady's assert that there was no "vertical relationship" between Dr. Gosman and Dr. Jaffurs or Dr. Minon. Id. Dr. Gosman and

Rady's argue that neither defendant participates in the market that Dr. Toranto claims is being monopolized. Id. at pg. 27.

In response, Dr. Toranto contends that the relevant geographic market is San Diego and the product market is complex pediatric craniofacial surgery services. Doc. No. 305 at pgs. 22-24. Dr. Toranto argues that distinguishing hospital services from surgeon services is unnecessary. Id. at pgs. 25-26. Dr. Toranto asserts that Rady's market power is a triable issue of material fact. Id. at 26. Dr. Toranto also asserts that there is ample evidence to support the notion of an agreement between Dr. Jaffurs, Dr. Gosman, and Rady's Hospital. Id. at pgs. 26- 29. Dr. Toranto specifically references direct, covert communications between Dr. Gosman and Dr. Jaffurs that were designed to prevent Dr. Toranto from obtaining privileges at Rady's. Id. at pg. 27. In one instance, Dr. Jaffurs stated, "I did everything I could to help [Dr. Gosman] with keeping [Dr. Toranto] away." Doc. No. 305-1 at pg. 40. In response, Dr. Gosman told Dr. Jaffurs, "Ugh ok thanks so much for all your help. I don't know how to stop him[.]" Id. In a separate instance, Dr. Jaffurs inquired, "Did [Dr. Gosman] manage to keep [Dr. Toranto] out?" Id.; Wu Dec. Exh. 77 (Depo. Exh. 229); Wu Dec. Exh. 2 (Jaffurs Depo. Tr.) at 203; 19-206:3.

### ii. Professional Review

Dr. Gosman and Rady's contend that Dr. Toranto cannot prove that the statements used against him in the peer review process were defamatory, but rather, the records show "a diligent and thorough investigation into [Dr. Toranto's] application…." Id. at pg. 29. Dr. Gosman and Rady's argue that they did not act with malice or fraud, and they did not attempt to prevent Dr. Toranto from working or from receiving his credentials. Id. at pg. 31. Dr. Gosman and Rady's assert that the alleged defamatory statements are protected by civil immunities found both in federal and California law because the statements were made during professional review activities. Id. at pgs. 32-41.

In response, Dr. Toranto argues that whether Rady's engaged in a sham peer review presents a triable question of material fact. Doc. No. 305 at pg. 21. Dr. Toranto defines a sham peer review as something that "involves actions taken in bad faith by a professional

review body for some purposes other than the furtherance of quality care and is disguised to look like legitimate peer review." Id. Dr. Toranto asserts that there is ample evidence to support this notion, including the length of Dr. Toranto's peer review and communication between Dr. Toranto and Defendants. Id.

### iii. Defamation

Dr. Gosman and Rady's argue that Dr. Toranto "will not be able to prove that the statements argued to be defamatory…were false, or that the Rady Defendants and Dr. Gosman knew them to be false or failed to take reasonable care to determine the truth or accuracy of the statements." Doc. No. 288-1 at pg. 29. Dr. Gosman and Rady's contend that Dr. Toranto did not suffer any harm as to any statements made by Dr. Gosman and Rady's. Id. at pg. 31. Dr. Gosman and Rady's assert that they did not act with malice, oppression, or fraud in making any of the statements. Id.

In response, Dr. Toranto asserts that his reputation was damaged as a result of these defamatory statements. Doc. No. 305 at pgs. 36-37. Dr. Toranto argues that the evidence in the record defeats any qualified immunity Dr. Gosman and Rady's would otherwise enjoy for these professional peer reviews because a sham peer review is evidence of malice. Id. at pgs. 37-41. Dr. Toranto argues that the alleged defamatory statements were false and present triable issues of material fact. Id. at pgs. 33-34. Dr. Toranto contends that there is ample evidence of defendants and cohorts ignoring the truth, recklessly disregarding the truth, and in some instances, acting with actual malice. Id. at pgs. 35-37. In one instance, Dr. Gosman reached out to the Chair of the Division of Plastic Surgery at UCSD to "have a [expletive] session this afternoon" about Dr. Toranto. See Doc. No. 305-1; Wu Dec. Exh. 35 (UCSD00224-225); Wu Dec. Exh. 36 (UCSD00228-229). In addition, Dr. Gosman sent Dr. Jaffurs a text message saying, "U called him a little [expletive] because he clearly is one[.]" Doc. No. 305 at pg. 38. Dr. Toranto argues that this shows that Defendants displayed actual malice towards him. Id.

//
//

11

### iv. Misrepresentation

Dr. Gosman and Rady's argue that Dr. Toranto is unable to prove that Dr. Gosman made a false representation to prevent him from obtaining employment. Doc. No. 288-1 at pgs. 37-38. Dr. Gosman and Rady's assert that Dr. Gosman's statements regarding Dr. Toranto were substantially true; Dr. Gosman believed the statements to be true when she made them; the statements were made in the course of fulfilling her mandated employment duties; and Dr. Gosman did not seek to prevent Dr. Toranto from gaining employment. Id.

In response, Dr. Toranto argues that Dr. Gosman's statements were false and she knew them to be false when she made the statements. Doc. No. 305 at pgs. 40-41. Dr. Toranto contends that whether Dr. Gosman's statements were made in the course of a legitimate peer review is a triable question of material fact. Id. at pg. 41. Dr. Toranto argues that whether Dr. Gosman's misrepresentation constituted an attempt to prevent Dr. Toranto from gaining employment is also a triable question of fact. Id.

The Court agrees with Plaintiff. Section 1 of the Sherman Act prohibits agreements that unreasonably restrain trade. Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc., 875 F.2d 1369, 1373 (9th Cir. 1989). Reasonableness is evaluated under either *per se* analysis or the rule of reason. Id. The *per se* rule applies to a practice that "facially appears to be one that would always or almost always tend to restrict competition and decrease output." National Collegiate Athletic Association v. Board of Regents of Univ. of Oklahoma, 468 U.S. 85, 100, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984). Restraint is presumed unreasonable for practices subject to the *per se* rule. Id. Other practices are subject to a rule of reason analysis which requires injury to competition in the relevant market. Alliance Shippers, Inc. v. Southern Pacific Trasp. Co., 858 F.2d 567, 570 (9th Cir. 1988). The Court finds that "reasonableness" is a genuine issue of fact suitable for trial. In addition, the Court finds that Plaintiff sufficiently raises a genuine issue of fact as to whether Dr. Gosman and Rady's unreasonably injured competition in a relevant market. Further, the Court finds that whether Dr. Gosman acted with knowledge of falsity when making her statements to Dr. Jaffurs is also a genuine dispute of material fact. There is evidence in the record that

Dr. Gosman "repeatedly rebuffed [Dr. Toranto's] attempts to obtain a position. For example, Dr. Gosman told Plaintiff Rady had no need for another craniofacial surgeon, even though internal Rady documents at the time showed there was such a need. Doc. No. 305 at pg. 41. The Court finds such facts and issues suitable for trial. Accordingly, Defendants Rady's and Dr. Gosman's Motion for Summary Judgment is **DENIED**.

### c. Dr. Daniel Jaffurs

#### i. Peer Review/Immunity

Dr. Jaffurs asserts that Dr. Toranto waived his right to sue Dr. Jaffurs when he signed a consent and waiver, which reads:

"I hereby release from any liability any and all individuals and organizations who provide information to the Hospital, or its Medical Staff concerning my professional competence, ethics, character and other qualifications for staff appointment and clinical privileges, and I hereby consent to release of such information."

Doc. No.289-1 at pg. 22.

Dr. Jaffurs contends that he enjoys the protection of numerous immunities. Id. Specifically, Dr. Jaffurs argues that he enjoys immunity from liability for his statements due to California state law, and Dr. Jaffurs did not act with malice, corruption, or unlawful motive. Id. at pgs. 22-24. Dr. Jaffurs asserts that his statements were instead motivated by the fact that he "had legitimate, serious concerns about [Dr. Toranto's] surgical skills and ability to interact professionally with other physicians, residents, and staff." Id. at pg. 25. Dr. Jaffurs argues that federal law also gives him immunity for liability because his statements made about Dr. Toranto should be considered 'professional peer review activity.' Id. Dr. Jaffurs argues that California state law affords him similar peer review immunity. Id. at pgs. 26-30.

In response, Dr. Toranto argues that there is ample evidence showing Dr. Jaffurs' statements about Dr. Toranto were false and made with malice. Doc. No. 320 at pgs. 19-20. Dr. Toranto argues that whether Rady's engaged in a sham peer review and the applicability of civil immunities are triable questions of fact. Id. at pgs. 29-33. Dr. Toranto asserts that the evidence shows that Dr. Toranto received "glowing" evaluations and

performance reviews. Id. at pg. 19. Dr. Jaffurs himself at one point recommended Dr. Toranto for promotion. Id. at pg. 20. Dr. Toranto contends that even while Dr. Jaffurs was defaming Dr. Toranto, Dr. Jaffurs was still praising Dr. Toranto's clinical outcomes. Id. at pg. 20. Dr. Toranto asserts that the evidence shows that Dr. Jaffurs' statements about Plaintiff's interactions with staff and residents are either false or greatly exaggerated. Id. at pgs. 21-24. Dr. Toranto offers specific instances where Dr. Jaffurs allegedly acted with malice, including derogatory, and expletive-filled statements made by Dr. Jaffurs concerning Dr. Toranto. Id. at pg. 28. Dr. Toranto asserts that the waiver that he signed does not shield Dr. Jaffurs from liability for intentional misconduct. Id. at pgs. 28-29. Dr. Toranto argues that whether Dr. Jaffurs is able to assert protection under the various immunities is a triable issue of material fact because the civil immunities assume the lack of ill will and malice. Id. at pgs. 40-43. In support of this assert, Dr. Toranto cites to various California state court cases that address the topic of actionable defamation. Id.

### ii. Antitrust Claim

Dr. Jaffurs argues that Dr. Toranto's antitrust claim fails because there was no agreement among the defendants. Doc. No. 289-1 at pgs. 31-33. Dr. Jaffurs contends that Dr. Toranto does not show that any of the defendants acted in concert with one another. Id. at pgs. 31-32. Dr. Jaffurs argues that Dr. Toranto does not offer any evidence that Dr. Jaffurs intended to harm competition, and there is no evidence of an antitrust injury. Id. at pgs. 33-37. Dr. Jaffurs contends that he never made any statement about Dr. Toranto with actual malice; the statements were not false; and Dr. Jaffurs did not act with reckless disregard as to whether the statements were false. Id. at pgs. 37-39. Dr. Jaffurs argues that his statements were not the proximate cause for any harm Dr. Toranto may have suffered. Id. at pg. 39.

In response, Dr. Toranto argues that he has adequately raised a triable issue of fact as to his antitrust claims. Doc. No. 320 at pgs. 34-37. Dr. Toranto contends that there is ample evidence of direct communication between Dr. Jaffurs and Dr. Gosman, and there is evidence of antitrust injury. Id. at pgs. 37-40. As stated, Dr. Toranto quotes Dr. Gosman,

when she told Dr. Jaffurs, "Ugh ok thanks so much for all your help. I don't know how to stop him." Id. at pg. 38.[1]

### iii. Defamation

Dr. Jaffurs argues that Dr. Toranto does not have an actionable defamation claim because Dr. Jaffurs' statements about Dr. Toranto are Dr. Jaffurs' opinions and Dr. Jaffurs' personal concerns about Dr. Toranto's clinical care. Doc. No. 289-1 at pg. 38. Dr. Jaffurs contends that none of the statements were made with actual malice, falsity, or a reckless disregard of falsity. Id. at pgs. 38-39. Dr. Jaffurs argues that his statements were not the proximate cause of Dr. Toranto's harm. Id. at pgs. 39-40.

In response, Dr. Toranto argues that whether Dr. Jaffurs' statements were false and made with malice is a triable question of material fact.[2] Doc. No. 320 at pg. 42.

### iv. Misrepresentation

Dr. Jaffurs asserts that Dr. Toranto's misrepresentation claim fails because Dr. Toranto cannot show that Dr. Jaffurs was an "employer"; the misrepresentation claim does not apply to non-employers; and the claim does not apply to internal statements. Doc. No. 289-1 at pgs. 40-42.

In response, Dr. Toranto argues that Dr. Jaffurs himself boasted that his statements prevented Dr. Toranto from being hired, and there is a triable question of fact as to whether Dr. Jaffurs' intentional actions and "preemptive smearing" cost Dr. Toranto an employment opportunity. Doc. No. 320 at pgs. 43-44.

### v. Tortious Interference with Prospective Economic Relations Claim

Dr. Jaffurs argues that Dr. Toranto's tortious interference with prospective economic relations claim and unfair competition claim both fail as a matter of law because Dr. Toranto did not have any existing or prospective economic relationship, and Dr. Jaffurs did not engage in any intentional wrongdoing. Doc. No. 289-1 at pgs. 45-49.

---

[1] Dr. Toranto's evidence presented in Section II.b.i. is applicable here.
[2] Dr. Toranto's evidence presented in Section II.b.iii. is applicable here.

15

In response, Dr. Toranto argues that there is a triable question of fact as to whether Dr. Jaffurs' misrepresentations constituted an attempt to prevent Dr. Toranto from obtaining employment with UCSD or the Rady Foundation. Doc. No. 320 at pg. 44.

### vi. Unfair Competition

Dr. Jaffurs argues that Dr. Toranto's UCL claim fails because Dr. Toranto's other claims fail as a matter of law. Doc. No. 289-1 at pg. 48.

In response, Dr. Toranto argues that "to the extent any of [Dr. Toranto's] causes of action survive summary judgment, summary judgment must be denied as to [Dr. Toranto's] claim for unfair competition as well." Doc. No. 320 at pg. 48.

The Court finds for Plaintiff. In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. V. Cities Service Co., 391 U.S. 253, 289-90 (1968)); Giles v. General Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to access the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory Committee Note to 1963 amendments). As mentioned above, Section 1 of the Sherman Act prohibits agreements that unreasonably restrain trade. Thurman Industries, 875 F.2d at 1373. Reasonableness is evaluated under either *per se* analysis or the rule of reason. Id. The *per se* rule applies to a practice that "facially appears to be one that would always or almost always tend to restrict competition and decrease output." National Collegiate Athletic Association, 468 U.S. 85, at 104. Restraint is presumed unreasonable for practices subject to the *per se* rule. Id. The Court finds that the "reasonableness" of Dr. Jaffurs' actions in allegedly restraining trade is a genuine dispute of material fact. The Court further finds that Dr. Jaffurs' motivation behind his communications with Dr. Gosman, and the potential implications Dr. Jaffurs' motivation in making those statements has on potential civil

16

immunities, present genuine issues of material facts. Accordingly, Defendant Dr. Jaffurs' Motion for Summary Judgment is **DENIED**.

## **CONCLUSION**

Based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

(1) Defendant Children's Hospital of Orange County's Motion for Summary Judgment (Doc. No.275) is **DENIED**;

(2) Defendants Rady's and Dr. Amanda Gosman's Motion for Summary Judgment (Doc. No. 288) is **DENIED**;

(3) Defendant Dr. Daniel Jaffurs' Motion for Summary Judgment (Doc. No. 289) is **DENIED**; and

(4) Defendant CHOC Medical Staff's Motion for Summary Judgment (Doc. No. 291) is **DENIED**.

**IT IS SO ORDERED**.

DATED: September 13, 2019

JOHN A. HOUSTON
United States District Judge